IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

NELSON BUMPERS, *et al.*,  )
    Plaintiffs,  )
v.  ) CIVIL ACTION 08-00155-KD-N
      )
AUSTAL, U.S.A., L.L.C.,  )
    Defendant.  )

**ORDER**

This matter is before the Court on the Defendant's partial[1] motion for summary judgment (Docs. 166, 167), the Plaintiff's Opposition (Doc. 302) and the Defendant's Reply (Doc. 350).

**I.    Factual Background**

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[2] (Doc. 1). Plaintiff Nelson Bumpers ("Bumpers") asserts claims for hostile work environment and disparate treatment (promotion) in violation of 42 U.S.C. § 1981 and Title VII. (Doc. 37 at 54-59).[3]

---

[1] Although addressed by Bumpers in response, Austal did not specifically move for summary judgment on the merits of Bumpers' promotion claim. (See Doc. 37 at 57 at ¶259). Thus, the merits of the promotions claim have not been discussed.

[2] While initiated as a purported class action, this is no longer a class action case. (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII and Section 1981 claims.

[3] Originally, Bumpers alleged separate claims for retaliation and discriminatory termination (Doc. 37 at 56-58 at ¶¶257, 261, 264, 266-268), as well as claims for denial of training (Id. at 56 at ¶¶258, 271). Bumpers now represents that he "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay and promotions" under Section 1981 and Title VII. (Doc. 302 at 2 (emphasis added)). Accordingly, the Court construes Bumpers' intentional exclusion of the retaliation, termination, and denial of training claims as a concession of these claims. Thus, it is **ORDERED** that summary judgment as to Bumpers' denial of training, termination, and retaliation (Continued)

1

### A. Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 167 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4). Job classifications within the Fabrication Departments include Trade Assistant (trainee position), Apprentice, Welders, Fitters and Fabricators. (Id. at 4).

### B. Bumpers' Employment

Nelson Bumpers began work for Austal on November 13, 2000 as a Welder in the Aluminum Fabrication Department at the rate of $12/hour. (Doc. 167-1 (Dep. Bumpers at 48, 77); Doc. 167-2 at 6 (Decltn. Lindley)). Prior to being hired by Austal, Bumpers was a first class flux core Welder. (Doc. 285-7 (Dep. Bumpers at 83-84)). Once hired, Bumpers went to school at Austal to become a first class welder in aluminum and subsequently became a shipfitter/welder. (Id. (Dep. Bumpers at 82-84)). During his employment he received pay raises

---

claims, is **GRANTED.** Also, pursuant to the parties' joint stipulation, Bumpers' disparate impact claim has been dismissed. (Doc. 366).

Moreover, Austal also contends that Bumpers alleged claims for receiving lower evaluations and for "threats" made against him by Austal employees, but that he has abandoned these claims. However, Bumpers did not specifically allege such claims against Austal in the Third Amended Complaint. Likewise, while Austal also moves for summary judgment on disparate pay claims, Bumpers does not specifically allege a disparate pay claim against Austal in the Third Amended Complaint (that either he was paid less/did not receive proper pay raises). Accordingly, these claims are simply not at issue in this case and thus, it is **ORDERED** that Austal's motion for summary judgment on these claims is **MOOT.**

dated January 27, 2005 (from $14.50/hour to $15.25/hour; "consistently puts in"); April 22, 2005 (from $15.25/hour to $16/hour); January 3, 2006 (From $16/hour to $16.50/hour); April 4, 2006 (from $16.50/hour to $17/hour; "one of Jeremy's best guys"); and May 22, 2006 (from $17/hour to $19/hour). (Doc. 167-1 at 46-50; Doc. 167-1 (Dep. Bumpers at 77-78)). By June 2006, Bumpers earned $19/hour. (Doc. 167-1 (Dep. Bumpers at 77-78); Doc. 167-2 at 6 (Decltn. Lindley)). On June 21, 2006, Bumpers was fired for misconduct -- fighting on the job. (Doc. 167-1 at 52-53; Doc. 167-1 (Dep. Bumpers at 12, 13, 27-28, 35); Doc. 285-7 (Dep. Bumpers at 89)); Doc. 167-2 at 6 (Decltn. Lindley)).

## II. **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

3

> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

### III. Timeliness of Claims

#### A. Title VII

A plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama,

the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008). A failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. Id.

Bumpers started working at Austal on November 13, 2000, he signed his EEOC Charge on November 13, 2006, and it was received on November 20, 2006. (Doc. 286-13). Calculating from the November 20, 2006 date, Austal contends that only those "discrete discriminatory acts" occurring between May 24, 2006 and November 20, 2006 – within the 180 days prior to November 20, 2006 -- are timely. From this, Austal asserts that:

> [a]ll alleged acts occurring between Bumpers' hire date of November 13, 2000, and the beginning of the statutory period date of May 24, 2006, are time-barred under Title VII. Based on the foregoing, Bumpers' claim that Harley Combs ("Combs"), a less-qualified Caucasian employee, was selected for training in 2003 or 2004 is time-barred….all allegations that Austal employees threatened Bumpers with termination prior to May 24, 2006 are also time-barred….any allegation that a similarly situated Caucasian employee received a higher evaluation and/or was paid more from November 2000 to May 24, 2006 is untimely…

(Doc. 167 at 6).

Concerning Bumpers' Title VII claims, Bumpers contends that Austal's interpretation – restricting his claims to only those acts between May 24, 2006 and November 20, 2006 -- is incorrect and contrary to well established law, because while many acts upon which plaintiff's

5

Title VII claims rely may have occurred outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 302 at 13 (citing McKenzie v. Citation Corp., LLC, 2007 WL 1424555 (S.D. Ala. 2007)).

Bumpers' hostile work environment claim is of a continuing nature. The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations whose "very nature involves repeated conduct." See generally National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period." Id. at 117. However, the continuing violation doctrine is inapplicable to "discrete acts" of discrimination occurring on a particular day (such as "termination, failure to promote, denial of transfer, or refusal to hire[]"), and applies only to discriminatory conduct that takes place "over a series of days or perhaps years." Id. at 114-115. As explained in Smiley v. Alabama Dept. of Transp., Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Bumpers' EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment." These allegations are sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the

6

litigation so that Austal could have investigated the details during discovery.

Turning to the specific purported "discrete acts," Austal is correct that acts before May 24, 2006 and after November 20, 2006 are not timely. Thus, Bumpers' Title VII promotion claims which are based on promotions that occurred during the excluded time frames are **DISMISSED**.

B.      Section 1981

On summary judgment, Austal did not take issue with the timeliness of Bumpers' Section 1981 claims. And while Austal raises an argument, for the first time in its Reply (Doc. 350 at 3-4) concerning the time-barred nature of Bumpers' Section 1981 claims, the Court will not consider these "new" claims because Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth by this Court in New Hampshire Ins. Co. v. Wiregrass Const. Co., Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

> *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).
>
> The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they are impermissible and will not be considered. See also e.g., Abrams v. Ciba Specialty Chemicals Corp., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments

are impermissible in reply briefs"); Evans v. Infirmary Health Services, Inc., 634 F. Supp. 2d 1276, 1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

### IV. Section 1981/Title VII – Hostile Work Environment (Race)

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[4] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Bumpers' evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Bumpers makes no allegations and presents no evidence that the

---

[4] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Bumpers failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

A.      **Severe or Pervasive**

As to whether the conduct was severe and pervasive, Bumpers points to the following evidence.[5]  Regarding racial comments, Bumpers asserts that some time after 2005, he heard a Caucasian supervisor "Big Joe" in conversation with "one of them Australian guys" (a Caucasian co-worker) both use the phrase "blue gums." (Doc. 167-1 (Dep. Bumpers at 54-58)).  Bumpers reported the incident to his supervisor Jeremy Gainous (the racial comment and that they were talking about "blue gums, black people and stuff like that[]").  (Id. (Dep. Bumpers at 55-58)).  Supervisor Gainous told Bumpers "he'd look into it[]" and that "blue gum" was a reference to black people.  (Id. (Dep. Bumpers at 57, 59-60)).  Bumpers never heard back from Gainous.  (Id. (Dep. Bumpers at 58)).

---

[5] Bumpers also relies on the allegations of the other 22 plaintiffs (Doc. 302 at 18-19, 22) to support that an overall racially charged work atmosphere exists at Austal (*i.e.*, viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations). "To rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterprises, Inc., Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. See, e.g., Yeomans v. Forster and Howell, Inc., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). The Court has only considered the evidence of which Bumpers testified that he was aware.

On a different occasion, Supervisor "Big Joe" approached Bumpers laughing and "asked me did I know there was a tree called blue gum[]" and "I told him no." (Doc. 167-1 (Dep. Bumpers at 58); Doc. 285-7 (Dep. Bumpers at 59)). Bumpers was offended because "Big Joe" "told me about it[]" -- he "said it was something about black people gums or something not being pink or something." (Doc. 167-1 (Dep. Bumpers at 58, 60); Doc. 285-7 (Dep. Bumpers at 59)). Bumpers did not report this comment. (Doc. 167-1 (Dep. Bumpers at 60)).

Bumpers was subjected to displays of the Confederate flag, which he finds racially offensive. (Doc. 167-1 (Dep. Bumpers at 113-114)). Bumpers saw the flag displayed on Caucasian co-workers' "shirts and all kind of stuff[]" and nothing was ever done about it. (Id.); Doc. 285-7 (Dep. Bumpers at 110)).

Bumpers has been subjected to racially offensive graffiti in the bathrooms. (Doc. 167-1 (Dep. Bumpers at 55, 110)). Bumpers saw racial slurs on the walls "all the time." (Id.) Bumpers reported the graffiti to Caucasian supervisors Ricky McQueen and "Big Joe." (Id. (Dep. Bumpers at 55)). While Austal would "blacken[] the wall out" the graffiti would just appear again. (Id. (Dep. Bumpers at 110)). Bumpers was also aware that a noose was found on May 1, 2008 in the breakroom at work. (Id. (Dep. Bumpers at 46)).

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the

discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

There is sufficient evidence, if believed by a jury, that Bumpers subjectively perceived his work environment to be racially hostile. Thus, the Court need only determine whether Bumpers' perception was objectively reasonable.

When viewing the facts in the light most favorable to Bumpers, a reasonable jury could not find that all of the harassing conduct alleged was frequent and severe.[6] According to Bumpers, during his almost six (6) years of employment between 2000-2006, he heard Caucasian co-workers, including his supervisor, refer to African Americans as "blue gums" twice, and heard about a noose being found only once. As for consistent or regular incidents which were potentially humiliating, images of the Confederate flag were displayed and/or worn on Caucasian co-workers' shirts and Bumperss frequently encountered racial graffiti in the bathrooms. However, while Bumpers may have regularly encountered Confederate imagery and graffiti, he has not established that any of this repeated conduct was severe, physically threatening or that it unreasonably interfered with his job performance. Eleventh Circuit

---

[6] The Court has considered the evidence presented by each plaintiff in isolation. Accordingly, on the claim of hostile work environment there are different determinations amongst plaintiffs based on the specificity and quantity of evidence presented by each plaintiff.

precedent mandates that courts consider "the totality of the circumstances" such that the absence of one factor is not dispositive. See, e.g., Miller, 277 F.3d at 1277.

In this case, Bumpers has not submitted sufficient evidence demonstrating that the conduct – apart from the graffiti and flag imagery -- was frequent, severe, physically threatening, humiliating, demeaning and/or interfered with his job. Moreover, Bumpers did not report the second "blue gum" comment by supervisor "Big Joe," and the regular display of Confederate flag imagery. While there is "not simply some magic number of racial or ethnic insults" that preclude summary judgment, it is repeated incidents of...harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." Miller, 277 F.3d at 1276 (citation and quotation omitted). In sum, under the totality of the circumstances and considering the allegations in the light most favorable to Bumpers, he has not produced sufficient evidence – if believed by a jury – to create an issue of fact as to whether he was subjected to racial harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. See, e.g., Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (concluding that evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker,'" as well as several threats to "kick plaintiff's 'black ass'" or threats that if he looked at a white girl he was going to get "cut," and the use of racial epithets including "nigger," "boy," and "black boy," reflected conduct that was "isolated," "sporadic," and "random" and did not amount to "severe and pervasive harassment[]"); Quarles v. Con-Way Freight, Inc., 2008 WL 1994916, *6-7 (M.D. Fla. 2008) (granting summary judgment for the employer, finding that "six instances of racially-related

conduct over a period of a few years" witnessed by the plaintiff and "approximately four other instances that were reported to him" were insufficient as a matter of law to support a claim for hostile work environment. The evidence included use by a supervisor and co-worker of offensive racial terms, showing a stuffed animal gorilla that was captioned with the name of a black employee, and being told of a noose that had been shown to another black employee. The court held that this conduct fell "well short of the required level of severity and frequency to support a hostile environment claim[]"). See also Penn v. USF Holland, Inc., 2010 WL 6185610, *13-14 (N.D. Ala. Nov. 16, 2010).

As a result, because Bumpers has failed to satisfy this fourth element of his prima facie case for hostile work environment, the Court need not reach the fifth element (employer liability) and summary judgment is **GRANTED** in favor of Austal on this claim.

## V.     Punitive Damages

Bumpers seeks an award of punitive damages against Austal. Upon consideration, the Court finds that resolution of the punitive damages issue is a matter better suited for trial. Thus, it is **ORDERED** that Austal's motion for summary judgment regarding Bumpers' punitive damages claim is **CARRIED TO TRIAL.**

## VI.    Conclusion

Accordingly, it is **ORDERED** that Austal's partial motion for summary judgment is hereby **GRANTED** as to Bumpers' hostile work environment claim; **GRANTED** as to Bumpers' denial of training claim; **GRANTED** as to Bumpers' retaliation claim; and **GRANTED** as to Bumpers' termination claim. It is further **ORDERED** that Bumpers' failure to promote claim, for which Austal did not move for summary judgment, and his request for

punitive damages, is **CARRIED TO TRIAL.**

**DONE** and **ORDERED** this the **26th** day of **May 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**