IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RAHMAN K. PRATT, *et al.*,  )
    Plaintiffs,  )
v.  )    CIVIL ACTION 08-00155-KD-N
  )
AUSTAL, U.S.A., L.L.C.,  )
    Defendant.  )

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Docs. 184, 205), Plaintiff's Opposition (Doc. 296), and Defendant's Reply (Doc. 337).

### I.    Factual Background

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1] (Doc. 1). Rahman K. Pratt ("Pratt") asserts claims for hostile work environment based on race in violation of Title VII and 42 U.S.C. § 1981. (Doc. 37 at 98-103).[2]

---

[1] While initiated as a purported class action, this is no longer a class action case. (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.

[2] Originally, Pratt alleged a separate claim for retaliation (Doc. 37 at 100, 102 at ¶¶505, 514-515, 517-519) and training (Id. at 100-101, 103 ¶¶506-509, 522). Pratt did not address these claims in response to Austal's motion and moreover, in his opposition brief he now specifically represents that he "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay" under Title VII and Section 1981. (Doc. 296 at 2 (emphasis added)). Accordingly, the Court construes Pratt's intentional exclusion of his retaliation and training claims as a concession of these claims. Thus, it is **ORDERED** that Austal's motion for summary judgment, as to Pratt's retaliation and training claims, is **GRANTED.**

Additionally, while Pratt initially alleged disparate impact claims against Austal, said claims have been dismissed from this litigation. (Doc. 366).

Moreover, Austal has moved for summary judgment on claims not included in the Third (Continued)

1

### A. **Austal**

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 184-1 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4).

### B. **Pratt's Employment**

Rahman Pratt was hired by Austal on April 4, 2006 and began working on April 24, 2006 as a Trades Assistant ("TA") in the Aluminum Department at the rate of $12/hour. (Doc. 205-1 (Dep. Pratt at 17-18); Doc. 295 at 30 (Exhibit 105-Sealed)). During his employment, Pratt received one (1) pay raise dated May 22, 2006 (from $12/hour to $13/hour). (Doc. 295 at 30 (Exhibit 105-Sealed)). On November 17, 2006, Pratt was terminated. (Id.)

## II. **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine

---

Amended Complaint. (Doc. 184-1 at 16-17). Pratt also address disparate pay discrimination claims that were not alleged in the Third Amended Complaint. In Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998), the Court held that the "parties frame the scope of the litigation at the time the complaint is filed." Moreover, in Davis v. Coca-Cola Bottling Co., Consol., 516 F.3d 955 (11th Cir. 2008), the court highlighted the difficulty in appellate review of voluminous pleadings involving multiple defendants. In so doing it is clear that the 11th Circuit expects the District Court to "strip the case down and identify each claim and defense." Id. at 982. In an effort to do so the court must rely on the claims asserted in the Third Amended Complaint. Thus, claims asserted in depositions and not included in the complaint have not been considered and will not be addressed. See Smith v. Books-A-Million, 398 Fed. Appx. 437 (11th Cir. 2010) (Claims not included in the complaint were not required to be considered by the District Court).

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.
R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and
provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing

on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

### III. Section 1981/Title VII – Hostile Work Environment (Race)

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[3] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). See also e.g., Mendoza v.

---

[3] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Pratt's evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Pratt makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Pratt failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

### A.  **Severe or Pervasive**

As to whether the conduct was severe and pervasive, Pratt points to the following evidence.[4] Regarding racially and hostile discriminatory comments, Pratt testified that "no white employee made a racially discriminatory comment directly toward – to me, personally, but I heard little comments being made…among them about black people, in general." (Doc. 205-1 (Dep. Pratt at 50-51)). Once, Pratt was walking by three (3) Caucasian co-workers and he overheard one of them say "[h]ow him and the nigger got into it yesterday, and he'll hang that nigger and shoot that nigger, and all that kind of stuff. Just going on and on. And….calling them

---

[4] Pratt also relies on the allegations of the other 22 plaintiffs (Doc. 296 at 2-4, 9, 13-15, 17-18) to support that an overall racially charged work atmosphere exists at Austal (*i.e.*, viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations). "To rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterprises, Inc., Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. See, e.g., Yeomans v. Forster and Howell, Inc., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). The Court has only considered the evidence of which Pratt testified that he was aware.

'monkeys' and stuff like that." (Id. (Dep. Pratt at 51, 54, 75-76)). Pratt reported the racial comments he overheard to his supervisor Chris Robinson "and his supervisor, and his supervisor[;]" Robinson asked Pratt if he knew the names of those who made the comments; Pratt responded "no" but added he can "show you who it was" and Robinson said he would get Scott Pearson and then "go" but was unable to find Pearson and so nothing happened. (Id. (Dep. Pratt at 51-52, 54); Doc. 285-17 (Dep. Pratt at 52-53)). Pratt asked Robinson why he could not handle it; Robinson responded there "really ain't nothing I can do. I have to go get…somebody over me." (Doc. 285-17 (Dep. Pratt at 54)). Robinson never returned with Pearson to address the situation for Pratt. (Id.) Pratt did not hear any comments again, but he was made aware of racial comments by his coworkers "telling me little comments they made." (Doc. 205-1 (Dep. Pratt at 55)).

Pratt was also subjected to displays of the Confederate flag on "several" Caucasian co-workers' t-shirts and bandannas. (Id. (Dep. Pratt at 76-78)). While he "seen others," specifically, once Pratt saw a co-worker wearing an undershirt that had the Confederate flag on it and displaying a Confederate flag bandanna in his back pocket. (Id.) Pratt reported the Confederate flag imagery being worn/displayed to supervisor Chris Robinson, who told him that he "can't do nothing about it[]" but that if he saw anyone wearing a bandana with the imagery, he would tell them to stuff it in their pocket. (Id.) Austal did nothing in response to the complaints about the Confederate flag imagery.

Further, Pratt saw racial epithets in graffiti on bathroom walls and stalls and toolboxes. (Doc. 205-1 (Dep. Pratt at 59-60, 65, 70, 72); Doc. 285-17 (Dep. Pratt at 59-63, 69-70)). The racial graffiti that Pratt saw included: "how many niggers do you see here wearing white hats"

6

and "why don't niggers use aspirin, because they don't want to pick the cotton out of the top," (Id.) Pratt reported the graffiti several times to supervisor Chris Robinson, coordinator Scott Pearson and manager Harley Combs; they told Pratt it would be painted over "one of these days."[5] (Doc. 285-17 (Dep. Pratt at 59-60, 71-73, 75)). The walls were subsequently painted over. (Doc. 205-1 (Dep. Pratt at 65)).

Pratt testified that a few Caucasian co-workers wrote racial comments on some of his co-workers' toolboxes, but not his; these comments were "[l]ike, stop feeding the monkeys, and stuff like that[.]" (Doc. 285-17 (Dep. Pratt at 61-63)).

Pratt witnessed a Caucasian co-worker writing on the bathroom wall in September 2006: he drew a small circle and wrote on the top "Nigger brain" and a large circle and wrote on the top "Cracker brain." (Doc. 285-17 (Dep. Pratt at 66-67)). Pratt reported this to his supervisor Chris Robinson who responded "that's messed up, but I…can't do nothing about that. The only thing…that can be done about that is the wall is just going to get painted. That…been going on before I was here, and its going to be going on after I'm here." (Id. (Dep. Pratt at 67)). Pratt then went to coordinator Scott Pearson who responded "we can't do nothing about that, but paint…over the walls. It's going to be painted over." (Id. (Dep. Pratt at 67-68)). Pratt told Pearson that he was offended and that something should be done such as the co-worker be written up; Pearson responded that the graffiti had been going on "for so long. We can't do nothing but paint the walls[]" and Pratt suggested at least "have a big meeting with all the employees, let them know, anybody get caught writing on the wall, they're fired or anything like

---

[5] Pratt also saw racial graffiti directed towards Caucasians but he did not report this graffiti. (Doc. 205-1 (Dep. Pratt at 75)).

that[,]" but nothing like that was done. (Id. (Dep. Pratt at 68)). The co-worker was not disciplined. (Id. (Dep. Pratt at 68-69)).

The record reveals that starting in August 2007, Austal responded to complaints about the graffiti by cleaning the bathrooms and painting black over the graffiti on a regular basis. (Doc. 205-1 (Dep. Pratt at 59-60, 65); Doc. 285-2 (Dep. Browning at 16, 110). According to Pratt, the graffiti was not painted black while he was employed at Austal, and moreover, if the graffiti was painted over, it would not be done "immediately" but instead would be done once every month after the racial graffiti "after it piled up[]" with a "whole wall of graffiti." (Doc. 285-17 (Dep. Pratt at 65, 70-71)). Nevertheless, the painting did not deter the offending scribblers, as the walls would soon be filled again with racially offensive graffiti. (Doc. 285-17 (Dep. Pratt at 70-71); Doc. 284-4 (Dep. Lindley II at 95-96, 166-168, 188-190, 195-196, 202-203); Doc. 284-5 (Dep. Lindley III at 254); Doc. 284-11 (Dep. O'Dell at 74-75); Doc. 284-7 (Dep. Friedlieb I at 84)).

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods,

121 F.3d 642, 647 (11th Cir. 1997) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." <u>Reeves</u>, 395 Fed. Appx. at 546.

There is sufficient evidence, if believed by a jury, that Pratt subjectively perceived his work environment to be racially hostile. Thus, the Court need only determine whether Pratt's perception was objectively reasonable.

When viewing the facts in the light most favorable to Pratt, a reasonable jury could not find that the harassing conduct alleged was frequent and severe. According to Pratt, he was not regularly subjected to racially discriminatory comments or conduct; he only overheard racial comments (not directed to him) on one occasion. While Pratt regularly encountered offensive racial graffiti during his employment in the workplace bathrooms and reported same, the graffiti was painted over by Austal. Additionally, while Pratt testified that he saw Confederate flag imagery on a t-shirt and bandana of one co-worker, his testimony focused on that co-worker's display of such imagery on one day. Pratt did not provide testimony as to any other co-workers' display of the imagery and/or frequency of seeing such imagery, etc.

While much of the repeated conduct may not have been physically threatening, it is not unreasonable to infer from Pratt's allegations that some of the conduct was racially demeaning, humiliating and degrading. <u>McKenzie v. Citation Corp., LLC</u>, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Moreover, Pratt has provided evidence of regularly encountering racially offensive graffiti at Austal. However, he has not established that any of the repeated conduct unreasonably interfered with his job performance. Pratt only testified that the environment was "bothering me" and "[i]t was too stressful[,]" "[c]oming home with headaches, mad and upset

9

from the things that was going on at that job that was bothering me[]" (Doc. 205-1 (Dep. Pratt at 80, 112)).

Eleventh Circuit precedent mandates that courts consider "the totality of the circumstances" such that the absence of one factor is not dispositive. <u>See</u>, <u>e.g.</u>, <u>Miller</u>, 277 F.3d at 1277. In this case, Pratt has not submitted sufficient evidence from which a reasonable jury could find that the conduct was frequent, severe, physically threatening, humiliating, demeaning and/or unreasonably interfered with his job.[6] <u>See</u>, <u>e.g.</u>, <u>Barrow v. Georgia Pacific Corp</u>., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (concluding that evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker,'" as well as several threats to "kick plaintiff's 'black ass'" or threats that if he looked at a white girl he was going to get "cut," and the use of racial epithets including "nigger," "boy," and "black boy," reflected conduct that was "isolated," "sporadic," and "random" and did not amount to "severe and pervasive" harassment). While there is "not simply some magic number of racial or ethnic insults" that preclude summary judgment, it is repeated incidents of...harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." <u>Miller</u>, 277 F.3d at 1276 (citation and quotation omitted). In sum, under the totality of the circumstances and considering the allegations in the light most favorable to Pratt, he has not produced sufficient evidence – if believed by a jury – to create an issue of fact as to whether he was subjected to racial harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working

---

[6] The Court has considered the evidence presented by each plaintiff in isolation. Accordingly, on the claim of hostile work environment there are different determinations amongst plaintiffs based on the specificity and quantity of evidence presented by each plaintiff.

environment.

As a result, because Pratt has failed to satisfy this fourth element of his prima facie case for hostile work environment, the Court need not reach the fifth element (employer liability) and summary judgment is **GRANTED** in favor of Austal on this claim.[7]

## V.    Conclusion

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **GRANTED** as to Pratt's hostile work environment claim; **GRANTED** as to Pratt's training claim; and **GRANTED** as to Pratt's retaliation claim. Pratt's punitive damages request is thus **MOOT**.

**DONE** and **ORDERED** this the **27th** day of **July 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[7] Pratt also alleges that he was constructively discharged. Austal contends that Pratt abandoned his employment. In any event, "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001). See also e.g., Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 59 (11th Cir. 2005). Accordingly, Austal's motion for summary judgment is **GRANTED** on Pratt's claim of constructive discharge.