# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

FREDERICK CARTER, *et al.*,      )
     Plaintiffs,           )
v.                        )      **CIVIL ACTION 08-00155-KD-N**
                            )
AUSTAL, U.S.A., L.L.C.,      )
     Defendant.          )

## ORDER

This matter is before the Court on Defendant's motion for summary judgment (Docs. 177, 201, 216), Plaintiff's Opposition (Doc. 312), and Defendants' Reply (348); and Defendant's Motion to Strike (Doc. 347) and Plaintiff's opposition thereto (Doc. 353).

## I.    <u>Factual Background</u>

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1] (Doc. 1). Plaintiff Frederick Carter ("Carter") asserts claims for hostile work environment and disparate treatment (promotion discrimination) based on race, in violation of 42 U.S.C. § 1981 and Title VII. (Doc. 37 at 59-64).[2]

---

[1] While initiated as a purported class action, this is no longer a class action case. (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII and Section 1981 claims.

[2] Originally, Carter alleged a separate claim for retaliation, (Doc. 37 at 61, 63-64 at ¶¶284, 294, 295, 297, 298-299). Carter also alleged failure to adequately train. (<u>Id</u>. at 64 at ¶302). Carter now represents that he "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay and promotions" under Section 1981 and Title VII. (Doc. 312 at 2 (emphasis added)). Accordingly, the Court construes Carter's intentional exclusion of his retaliation and failure to adequately train claims, as concessions of these claims. Thus, it is **ORDERED** that Austal's motion for summary judgment as to Carter's retaliation and training claims, is **GRANTED.** Additionally, while Austal contends that Carter abandoned his disparate treatment claims concerning (Continued)

A.    <u>**Austal**</u>

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama.   (Doc. 201 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)).   The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)).   (Doc. 283-48 at 3-4).   The Operations Division includes several other departments such as Purchasing; the Warehouse Department falls under the Purchasing Department. (<u>Id</u>.)

B.    <u>**Carter's Employment**</u>

Frederick Carter was hired to work for Austal in late January 2003, and began working

---

evaluations and discipline (Doc. 348 at 2), Carter did not allege such claims in the Third Amended Complaint.   As such, Austal's motion, to the extent it seeks summary judgment on these claims, is **MOOT.**   Moreover, while Carter initially alleged disparate impact claims against Austal, said claims have been dismissed from this litigation.  (Doc. 366).

Further, in his opposition brief Carter alleges a new disparate pay claim (higher starting hourly wages) (Doc. 312 at 8).  Carter did not allege such a claim in the Third Amended Complaint.  As such, Carter cannot assert this new disparate pay claim on summary judgment.

Finally, while Carter did allege a disparate pay claim for pay cuts in conjunction with transfers to departments (Doc. 37 at 62 at ¶291) -- he "was told that if he wanted to advance and change departments he would have to take a pay cut…white employees Chris Knight, Rachel Sullivan, Nathaniel Freeman, and Derrick Harvard all changed departments without taking pay cuts[]" --- Carter has abandoned this claim on summary judgment.  Notably, Carter specifies in his opposition brief that he is pursuing a claim for disparate treatment in regard to pay citing paragraphs 286 and 290 and his "statement of facts above" (excluding the class action paragraphs cited) of the Third Amended Complaint.  (Doc. 312 at 36).  Neither cited paragraphs nor his statement of facts discuss pay cuts tied to transfers. Carter also does not discuss this claim in his opposition brief.  Thus, it is **ORDERED** that Austal's motion for summary judgment as to Carter's disparate pay claim under both Title VII and Section 1981 for pay cuts tied to department transfers, is **GRANTED.**

for Austal as a Storekeeper (clerk) in the Warehouse Department at the rate of $9/hour. (Doc. 216-1 (Dep. Carter at 75-76); Doc. 216-2 at 7 (Decltn. Lindley); (Doc. 295 at 7 (Exhibit 105-Sealed); Doc. 216-1 at 48). Carter was "on probation" for the first 12 weeks. (Doc. 285-8 (Dep. Carter at 76)). While employed at Austal, Carter received pay raises dated March 10, 2003 (from $9/hour to $11.50/hour "as per our original agreement with Mr. Carter we will increase pay on a performance basis for the 1st 90 days of employment"); April 28, 2003 (from $11.50/hour to $12/hour); July 21, 2003 (from $12/hour to $13.50/hour); October 13, 2003 (from $13.50/hour to $15.50 hour as "temporary raise while performing duties as warehouse/supervisor only. This raise may be rescinded after"); August 19, 2005 (from $14.50/hour to $15/hour); May 22, 2006 (from $15/hour to $15.50/hour); January 3, 2007 (from $15.50/hour to $16/hour); March 21, 2007 (a raise to $17/hour in conjunction with being given the management position of Shipping and Receiving Supervisor, "performance review will be conducted after 90 day probationary period"); July 2, 2007 (from $17/hour to $18.50/hour); November 5, 2007 (from $18.50/hour to $19/hour, "no back pay"); February 11, 2008 (from $19/hour to $20/hour); and August 30, 2008 (from $20/hour to $22/hour). (Doc. 216-1 at 50-53, 55-57, 59, 61-62; Doc. 295 at 7 (Exhibit 105-Sealed)). Notably, on October 13, 2003, Carter was temporarily made Warehouse Supervisor; and effective March 26, 2007, Carter was promoted to Shipping and Receiving Supervisor.[3] (Doc. 216-1 at 52, 59); Doc. 216-2 at 7 (Decltn. Lindley); Doc. 285-8 (Dep. Carter at 101-102)). On October 22, 2008, Carter was terminated for "insufficient performance of duties." (Doc. 216-1 (Dep. Carter at 11); Doc. 216-2 at 7 (Decltn. Lindley); Doc. 216-3 at 2).

---

[3] Carter received this promotion with a pay raise after his EEOC Charge was filed. (Doc. 285-5 (Dep. Carter at 101-102)).

## II.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010).  The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.  Timeliness of Claims

### A.  Title VII

A plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008).  A failure to file a

timely charge with the EEOC results in a bar of the claims contained in the untimely charge. Id.

Carter started working at Austal in January 2003, and he signed his EEOC Charge on November 13, 2006 and it was "received" on November 20, 2006. (Doc. 216-3 at 14-16). Calculating from the November 20, 2006 date, Austal contends that only those "discrete discriminatory acts" occurring between May 24, 2006 and November 20, 2006 – the 180 days prior to November 20, 2006 -- are timely. Austal asserts that "[a]ll alleged acts occurring between Carter's hire date of January 2003, and the beginning of the statutory period date of May 24, 2006, are time-barred under Title VII. Based on the foregoing, Carter's claim that he was overlooked for the warehouse coordinator job in 2004/2005 is time barred." (Doc. 201 at 8).

Carter contends that Austal's interpretation is incorrect and contrary to well established law, as although many acts upon which plaintiff's Title VII claims rely may have occurred outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 312 at 14 (citing McKenzie v. Citation Corp., LLC, 2007 WL 1424555 (S.D. Ala. 2007)). Carter is correct as it relates to his hostile work environment claim. The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations. See generally National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period." Id. at 117. As explained in Smiley v. Alabama Dept. of Transp., Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims
> may be litigated so long as at least one of the events contributing to the hostile

environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Carter's EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery. Indeed, on his EEOC Charge, Carter checked the "Continuing Action" Box. (Doc. 216-3 at 14). Accordingly, Carter's hostile work environment claim is not time barred.

Concerning failure to promote under Title VII and relevant to Austal's time-barred argument, Carter contends that throughout his employment he was continuously denied promotional opportunities including the positions of Warehouse Supervisor (once) and Warehouse Coordinator (three times). Based on the record, it appears that the Warehouse Supervisor position at issue occurred in October 2004. At that time, Carter was offered the Warehouse Supervisor position at a salary of $32,000/year. Carter did not accept this specific promotion which was offered to him because it did not pay a certain salary.[4] In any event because the situation occurred before May 24, 2006, the claim is time barred. Accordingly, Austal's motion, as to the October 2004 Warehouse Supervisor promotion claim under Title VII,

---

[4] (Doc. 285-8 (Dep. Carter at 83)). Carter alleges that he declined a promotion to Warehouse Supervisor because he was only offered $32,000/year (meaning he would be making less per hour/annually than he was as a general warehouse employee (Carter testified that after overtime was applied he made around $38,000/year)). (Id. (Dep. Carter 83-88). Carter would have accepted the position if he had been offered more than $32,000/annually. (Id. (Dep. Carter 85-88)).

is **GRANTED.**

Concerning the promotions to Warehouse Coordinator, Carter alleges that he was denied a promotion to this position not once, but three (3) times, in June 2005, Summer 2006, and in 2007. Austal contends that "Carter's claim that he was overlooked for the warehouse coordinator job in 2004/2005 is time barred[]" under Title VII because it occurred before May 24, 2006. However, Carter alleges that the promotions were not separate discrete acts but a continuous denial of the same promotion *(i.e.*, a continuing violation). In <u>Morgan</u>, the U.S. Supreme Court drew a distinction between discrete acts of discrimination and hostile work environment claims, noting that "discrete acts such as…failure to promote….are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." <u>Morgan</u>, 536 U.S. at 114. Courts in the Eleventh Circuit have noted that while <u>Morgan</u> was decided within the context of the requisite period for filing EEOC charges, "it is also instructive on the scope of the concept of a 'continuing violation'…." <u>See</u>, <u>e.g.</u>, <u>Marshall v. Daleville City Bd. of Educ.</u>, 2006 WL 2056581, *3 (M.D. Ala. Jul. 24, 2006). Additionally, the Eleventh Circuit has held that the denial of a promotion is one time violation, the present consequences of which only are felt at the present time, and not a continuing violation. <u>Id</u>. (citing <u>Roberts v. Gadsden Memorial Hosp.</u>, 835 F.2d 793 (11th Cir. 1988), *modified*, 850 F.2d 1549 (11th Cir. 1988) and <u>Price v. M & H Valve Co.</u>, 2006 WL 897231, *7 (11th Cir. Apr. 7, 2006) (unpublished)). Bearing this in mind, the Court finds that Carter's claim of failure to promote in June 2005 is time barred. Accordingly, Austal's motion, as to the June 2005 Warehouse Coordinator promotion claim under Title VII, is **GRANTED.**

Additionally, to the extent Austal's motion (which asserts that "all acts" before May 24,

2006 are time barred under Title VII) can be construed to include the "Summer 2006" promotion claim to Warehouse Coordinator, Austal's motion is **DENIED** because Austal has not presented any evidence of record as to what month the "Summer 2006" promotion occurred (*i.e.*, whether before or after May 24, 2006).

**B.    Section 1981**

Austal makes no time-barred argument in its motion for summary judgment concerning Section 1981.  Rather, Austal asserts these (and other) new arguments in its Reply.  (Doc. 348 at 2-4).  The Court will not consider these "new" claims because Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth recently by this Court in New Hampshire Ins. Co. v. Wiregrass Const. Co., Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

> *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).
>
> The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, In*c., 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they will not be considered.  See also e.g., Abrams v. Ciba Specialty Chemicals Corp., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments are impermissible in reply briefs"); Evans v. Infirmary Health Services, Inc., 634 F. Supp. 2d 1276,

1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

**IV.     Section 1981/Title VII – Hostile Work Environment (Race)**

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.  See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[5] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability.  See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Carter's evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Carter makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day

---

[5] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.  The Court notes this same rule applies to other Fed. Appx. cases cited herein.

basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Carter failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

Upon review of the record the Court finds there is sufficient evidence, if believed by a jury, that Carter subjectively perceived his work environment to be racially hostile. The Court also finds sufficient evidence that a jury could find that Carter's perception was objectively reasonable. Thus, the Court turns to element five: employer liability.

This last element of Carter's proof requires a basis for employer liability. In Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), the U.S. Supreme Court held that employer liability is automatic when the supervisor's harassment culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 807, 808; Ellerth, 524 U.S. at 762, 763. Where no such action has occurred, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 745. An employer may avoid vicarious liability by raising as an affirmative defense that it: 1) exercised reasonable care to prevent and correct promptly any harassing behavior, and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, 524 U.S. at 807, 809; Miller, 277 F.3d at 1278. This is known as the Faragher defense. "Both elements must be satisfied…and the defendant bears the burden of proof on both elements." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1313 (11th Cir. 2001) (citations omitted).

Moreover, Austal is directly liable for co-worker harassment if Austal knew (actual notice) or should have known (constructive notice) of the harassing conduct but failed to take prompt remedial action. See, e.g., Miller, 277 F.3d at 1278; Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000). Once notice is established, a plaintiff must show that the employer "failed to take immediate and appropriate corrective action." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1261 (11th Cir. 2003). See also Frederick, 246 F.3d at 1314; Minix v. Jeld-Wen, Inc., 237 Fed. Appx. 578 (11th Cir. 2007). The prompt remedial action must be

12

"reasonably likely to prevent the misconduct from recurring." See, e.g., Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1305 (11th Cir. 2007); Kilgore v. Thompson & Brock Mgt., Inc., 93 F.3d 752, 754 (11th Cir. 1996); Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1333 (S.D. Ala. 1998). Specifically, the employer's action must be "effective action" and "must be 'reasonably calculated to end the harassment,' and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the…harassment ended after the remedial action was taken." Munn v. Mayor and Aldermen of City of Savannah, Ga., 906 F. Supp. 1577, 1583 (S.D. Ga. 1995). See also Saville v. Houston Cty. Healthcare Auth., 852 F. Supp. 1512, 1528 (M.D. Ala. 1994).

Throughout Carter's employment (January 2003-October 2008) Austal maintained in its Hourly Employee Handbooks a Non-Discrimination and Anti-Harassment policy which all employees are required to read and sign. (Doc. 216-2 at 3 (Decltn. Lindley); Doc. 285-2 (Dep. Browning at 56-57); Doc. 283-55 (Austal's April 2004-Issue D Hourly Employee Orientation Booklet); Doc. 283-56 (Austal's November 2005-Issue E Hourly Employee Orientation Booklet); Doc. 216-2 at 15-66 (Austal's April 2006-Issue F Hourly Employee Orientation Booklet and Austal's November 2007-Issue A Employee Handbook)). During his employment, Carter received one (1) manual[6] and read and fully understood its contents. (Doc. 285-8 (Dep. Carter at 107)).

---

[6] There is no evidence of record indicating which of the Handbooks Carter received and signed during his employment. Presumably, given Lindley's Declaration that each employee received a handbook and signed same during orientation right after being hired, and as Carter was hired in January 2003, he would have signed a 2003 version. However, as neither party has submitted a 2003 Hourly Employee Handbook on summary judgment, the Court presumes that the Handbook was the same as the April 2004 Handbook.

Nevertheless, Austal's April 2004, November 2005, April 2006 and November 2007 anti-harassment policies inform employees about the grievance procedure for reporting incidents of discrimination and harassment.  (Doc. 283-55 at 13-14; Doc. 283-56 at 25-26; Doc. 216-2 at 36-37, 50-51).  The April 2004, November 2005 and April 2006 policies provide, in relevant part: 1) employees are "urged to inform" their Supervisor of suspected violations of the policy, and the Supervisors are then required to report same to the Department Manager and 2) if for any reason the employee does not feel comfortable discussing the situation with his or her immediate Supervisor, he or she should report the matter to the Departmental Manager.  (Doc. 283-55 at 13; Doc. 283-56 at 25; Doc. 216-2 at 37).  The Revised Handbook issued in November 2007, further provides that an employee should report incidents of harassment to his Supervisor, but if not comfortable doing so, may talk to the Department Coordinator or Manager and then if still needing to talk with someone after completing both of those steps, may contact HR.  (Doc. 216-2 at 50).

Taking the facts in the light most favorable to Carter, it is clear that Carter complied with Austal's reporting policy[7] and that that Austal had notice of the harassing behavior.  However, there remains a genuine issue of material fact as to whether Austal exercised reasonable care to correct promptly the harassing behavior; an element of the defense to liability for both supervisory and co-employee harassment.  Specifically, Carter has presented evidence that even after he reported the racially offensive graffiti and Confederate flags, the work environment

_____

[7] Austal's contention that Carter "waived his right" to include certain "misconduct" as a basis for his claims because he "elected not to report" same "in accordance with Austal's policy" as "he failed to report any of the alleged incidents to Human Resources," lacks any merit as he clearly was not required to report the incident to HR.  This finding applies also to Carter's complaints about supervisor's and co-workers' conduct.

14

remained unchanged with the exception that bathroom walls were periodically painted and after this litigation commenced the bathrooms were monitored. These facts, combined with Austal's admissions regarding failure to train[8] its supervisors on Austal's harassment policy prior to the Summer of 2008,[9] create an issue of fact for the jury as to whether Austal should be held liable for the actions of its employees.  As such, Austal's motion for summary judgment on Carter's hostile work environment claim is **DENIED.**

## V.      Section 1981/Title VII – Disparate Treatment (Race)

Carter contends that he was intentionally discriminated against with respect to "terms and conditions of his employment" because of his race in violation of Title VII and Section 1981. Austal moves for summary judgment on Carter's Title VII/Section 1981 promotion claims that he was not offered the Warehouse Coordinator job in Summer 2006 and 2007; and Carter's Section 1981 promotion claim concerning the October 2004 Warehouse Supervisor position.

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race." Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  Under this framework, the

---

[8]  Doc. 284-3 (Dep. Lindley I at 174); Doc. 284-9 (Dep. Carver I at 60); Doc. 284-11 (Dep. O'Dell at 210); Doc. 285-1 (Dep. Keeler at 47, 65, 97); Doc. 285-2 (Dep. Browning at 56-57)).

[9]  (Doc. 284-3 (Dep. Lindley I at 174); Doc. 284-4 (Dep. Lindley II at 74-75).

plaintiff must establish a prima facie case of intentional race discrimination.[10] Id. at 802. See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful discrimination. Id. at 1272-1273.

To establish a prima facie case of failure to promote, a plaintiff must show that: 1) he is a member of a protected class; 2) who sought and was qualified for positions that the employer was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class. See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)). A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case. Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 at n. 11 (11th Cir. 1997). Where an employer has an informal promotion procedure (i.e., job openings are not posted or applications are not required), however, an employee may establish this element by showing that the position was available and that the employer had some reason or duty to consider him for same. Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-1134 (11th Cir. 1984).

---

[10] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII." DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

## A. Warehouse Coordinator Job – Summer 2006 and 2007

### 1. Carter's Allegations

Carter contends the position of Warehouse Coordinator was repeatedly given to equally or less qualified Caucasian employees, as promotions, instead of to Carter. Specifically, Carter alleges that he should have been promoted to the Warehouse Coordinator position in the Summer of 2006, and in 2007.[11]

First, Carter alleges that sometime in the Summer of 2006, he discussed his interest in the Warehouse Coordinator position with Caucasian Warehouse Manager Erin Regan and was interviewed for the position, but she offered the position to Caucasian employee Harry Parker. (Doc. 285-8 (Dep. Carter 88-91)). According to Carter, Parker declined the position and told Regan that Carter was already doing the job and "know[s] the job." (Id. (Dep. Carter at 91-92, 94)). Carter had trained Parker. (Id. (Dep. Carter at 146)). Carter talked with Regan (and a Production Manager) about the position ("I told them that I came because I was interested in the job. I ran the job before[]"); however, Regan never offered Carter the position even though Carter had "worked the job already." (Id. (Dep. Carter 94-99)). Austal hired Caucasian employee Tom Bishop in April 2007 as the Warehouse Coordinator. (Id. Dep. Carter at 99-101, 141, 144)). Carter complained to his supervisors Harry Parker and Wilbur Lee, that he thought the decision had been made due to his race; Carter felt that Parker "knew what I was talking about and we left it at that." (Doc. 285-8 (Dep. Carter 141-144)). Bishop subsequently "came to" Carter and told him that "Austal management wanted me to train him to do the Coordinator job." (Doc. 285-9

---

[11] As detailed *supra*, Carter's Title VII claim as to the June 2005 promotion for this position has been deemed time-barred.

17

(Decltn. Carter at ¶10)). Bishop quit Austal in September 2007. (Id.).

Second, in 2007 after Bishop quit the Warehouse Coordinator position, Austal again did not offer the job to Carter. (Doc. 285-9 (Decltn. Carter at ¶10).  Instead, Austal hired Caucasian supervisor Jerrod Bradford as Warehouse Coordinator, even though he had no warehouse experience. (Id.) After being promoted to the position, Bradford requested that Carter "train him on how to do his job." (Id.) Carter complained to Bradford about training him, refusing to do so, because "Austal knows I know the job but won't give me the job." (Id.)

### 2.    **Austal's Contentions**

Austal contends that Carter has failed to establish a prima facie case of discrimination based on failure to promote him because Carter has not demonstrated that he was qualified and applied for the promotion or that the employee promoted was equally or less qualified than Carter and that Carter failed to submit sufficient information to demonstrate that he was similarly situated in all relevant respects.  Specifically, Austal asserts while Carter contends he should have been promoted to Warehouse Coordinator in the Summer 2006 and 2007, he has not offered any evidence regarding the experience, qualifications and skills of his alleged comparators to establish that they were similarly situated employees.  (Doc. 201 at 18).

### 3.    **Discussion**

As noted *supra*, to establish a prima facie case of failure to promote, a plaintiff must show that: 1) he is a member of a protected class; 2) who sought (or should have been informed of the position) and was qualified for positions that the employer was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class.

Austal does not dispute any of the elements for a prima facie case of disparate promotion, apart from simply asserting that Carter's proposed comparators are not similarly situated. (Doc. 201 at 20-21). Austal conflates the prima facie requirements of a discriminatory pay claim with the prima facie requirements to establish a failure to promote claim. Similarly situated comparators are not necessary to establish a prima facie claim of failure to promote, rather plaintiff must only show that the position was filled with a person outside his protected class. See Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872-873 (11th Cir. 2007) (providing that "[t]he elements are different for disparate pay and promotion claims….").

Carter is a member of a protected class. There is no evidence that he applied for each of the promotions at issue, however, that deficiency is overcome by the unrebutted evidence, cited by Carter, of the informality of the promotion process at Austal and the evidence that he was qualified for the promotions within the Warehouse Department (particularly given that he had to train the individuals hired for the position on how to do the job). Moreover, the record reveals that Carter specifically expressed his interest (and in his opinion applied) for the Summer of 2006 opening. The Court finds that there is sufficient evidence that Austal had reason to consider Carter for the Summer 2006 and 2007 Warehouse Coordinator promotions within the Warehouse Department that he was denied and that Carter was qualified for the promotions in this department which were filled with individuals outside of Carter's protected class. Thus, Carter has made his prima facie case. Because Austal has failed to present any legitimate non-discriminatory reason for its decision, the motion for summary judgment on this claim of failure

to promote is **DENIED** in part.[12]

B.    **Warehouse Supervisor Position**

At the outset, summary judgment has been granted on Carter's Title VII warehouse supervisor claim such that only Carter's Section 1981 warehouse supervisor claim is at issue.

1.    **Carter's Allegations**

Carter contends that while he was offered the promotion to "$32,000/year salary Warehouse Supervisor" in October 2004, he turned down the position because he was only offered $32,000/year salary. (Doc. 285-8 (Dep. Carter at 83-88)).  According to Carter, accepting the promotion would mean that he would be making less per hour and/or annually than he was as a general warehouse employee (Carter testified that after overtime was applied he made around $38,000/year). (Id. (Dep. Carter 83-88).

2.    **Austal's Contentions**

Austal contends that it offered Carter the Warehouse Supervisor position but that he turned it down, explaining to Austal that he could make more money per year if he could be compensated for overtime as an hourly employee.  (Doc. 201 at 21).

3.    **Discussion**

As noted *supra*, to establish a prima facie case of failure to promote, a plaintiff must show that: 1) he is a member of a protected class; 2) who sought (or should have been informed of the position) and was qualified for positions that the employer was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill

_____

[12] Previously granted in part, on the time-barred nature of Carter's Warehouse Supervisor promotion and on the June 2005 Warehouse Coordinator claim, under Title VII.  See *supra*.

the positions or in fact filled the positions with persons outside the plaintiff's protected class.

Carter is a member of a protected class. The record reveals that Carter should have been informed of the position and in fact, that Carter was sought out by Austal for the promotion. Additionally, the record indicates that Carter was qualified for the job. Moreover, Austal did ultimately fill the position with a person outside of Carter's protected class. However, Carter was not rejected by Austal for the Warehouse Supervisor promotion. Austal sought out Carter for the promotion, offered him the promotion and Carter rejected the promotion. Specifically, even though Carter claims he "didn't turn the job down" but he "turned down the money[]" (Doc. 285-8 (Dep. Carter at 84-86)), the evidence reveals that he, in fact, did turn down the promotion. Carter testified that he specifically told Austal that he would only accept the promotion if Austal would pay him $38,000, as that was the amount of money he made in the prior year. (Doc. 285-8 (Dep. Carter at 85-88)).[13] After Carter rejected the $32,000/year annual Warehouse Supervisor promotion, Austal hired Caucasian employee Harry Parker as Warehouse Supervisor and paid him $34,000/year. (Doc. 285-9 at 4 (Decltn. Carter at ¶9)). Thus, Carter has not established that he was rejected for a promotion for which he was qualified. Rather, the evidence is that Carter rejected the offer and would have rejected the offer at $34,000.

---

[13] In the pending Motion to Strike (Doc. 347), Austal contends that Carter's deposition testimony (that he told Austal he would take the supervisor position offered to him only if would pay him $38,000 as he made in the prior year (Doc. 347-1 at 4-6 (Dep. Carter at 85-87)) contradicts his Declaration statement of "I told Austal that I would at least need to make what I made last year [$34,000] to take the job[]" (Doc. 285-9 (Decltn. Carter at ¶9)). The Court has reviewed the cited deposition pages and finds the deposition testimony inconsistent with the cited sentence of Carter's Declaration. Thus, Austal's Objection is **SUSTAINED** as to the amount "$34,000" as contained in Paragraph 9.

Additionally, Carter's sworn deposition testimony contradicts the allegations in the Third Amended Complaint (Doc. 37 at 62 at ¶288). In the complaint, Carter alleges that he "asked to receive the same salary as Parker, $34,000 per year, but the Defendant refused." (Id.)

Accordingly, Austal's motion for summary judgment on Carter's Section 1981 promotion claim for the Warehouse Supervisor position is **GRANTED.**

**VI.**     **Punitive Damages**

Carter seeks an award of punitive damages against Austal. Upon consideration, the Court finds that resolution of the punitive damages issue is a matter better suited for trial. Thus, it is **ORDERED** that Austal's motion for summary judgment regarding Carter's punitive damages claim is **CARRIED TO TRIAL.**

**VII.**     **Conclusion**

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **DENIED** as to Carter's hostile work environment claim; **GRANTED as** to Carter's failure to adequately train claim; **GRANTED** as to Carter's disparate pay claims; **GRANTED in part** and **DENIED in part** as to Carter's disparate promotion claims, as detailed herein; and **GRANTED** as to Carter's retaliation claim. Carter's punitive damages request is **CARRIED TO TRIAL.**

**DONE** and **ORDERED** this the **27th** day of **July 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**