**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GLORIA SULLIVAN,** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION 08-00155-KD-N** |
| | ) | |
| **AUSTAL, U.S.A., L.L.C.,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Docs. 185, 186, 214), Plaintiff's Opposition (Doc. 313) and Defendant's Reply (Doc. 335); and Defendant's Motion to Strike (Doc. 347) and Plaintiff's opposition thereto (Doc. 353).

**I.    Factual Background**

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1]  (Doc. 1).  Gloria Sullivan ("Sullivan") asserts claims for hostile work environment and discrimination (promotion) based on race in violation of Title VII and 42 U.S.C. § 1981.  (Doc. 37 at 124-129).[2]

---

[1]    While initiated as a purported class action, this is no longer a class action case.  (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.

[2]    Originally, Sullivan alleged a separate claim for retaliation (Doc. 37 at 126 -128 at ¶¶656, 664-665, 667-669) and training (Id. at ¶657, 672). Sullivan did not address these claims in response to Austal's motion and moreover, in her opposition brief now specifically represents that she "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay and promotions" under Title VII and Section 1981. (Doc. 313 at 2 (emphasis added)). Accordingly, the Court construes Sullivan's intentional exclusion of her retaliation and training claims as a concession of these claims.   Likewise, while Sullivan alleges a failure to promote claim that Austal hired "Jason" after November 20, 2006 to work in Inventory instead of her (Doc. 214-1 (Dep. Sullivan at 49-56)), Sullivan has not addressed this claim in response to Austal's motion and thus, the Court construes Sullivan's intentional exclusion of this particular failure to promote claim as a concession of said claim.   Thus, it is **ORDERED** that Austal's motion for summary judgment, as to Sullivan's (Continued)

## A.  Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama.  (Doc. 186 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)).  The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)).  (Doc. 283-48 at 3-4).

## B.  Sullivan's Employment

Gloria Sullivan began working at Austal on September 15, 2003 as a Warehouse Assistant in the Warehouse Department at the rate of $9/hour.  (Doc. 214-1 (Dep. Sullivan at 23); Doc. 214-1 at 111; Doc. 295 at 36 (Exhibit 105-Sealed); Doc. 214-2 at 11 (Decltn. Lindley)).  During her employment, Sullivan received ten (10) pay raises dated December 15, 2003 (from $9/hour to $10/hour); August 19, 2004 (from $10/hour to $11/hour); February 8,

---

retaliation claim, training claims, and failure to promote claim concerning "Jason," is **GRANTED.**

Additionally, while Sullivan initially alleged disparate impact claims against Austal, said claims have been dismissed from this litigation.  (Doc. 366).

Moreover, Austal has moved for summary judgment on claims not included in the Third Amended Complaint (Doc. 186 at 5, 25-29).  Sullivan also address disparate pay discrimination claims that were not alleged in the Third Amended Complaint.  In Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998), the Court held that the "parties frame the scope of the litigation at the time the complaint is filed."  Moreover, in Davis v. Coca-Cola Bottling Co., Consol., 516 F.3d 955 (11th Cir. 2008), the court highlighted the difficulty in appellate review of voluminous pleadings involving multiple defendants.  In so doing it is clear that the 11th Circuit expects the District Court to "strip the case down and identify each claim and defense."  Id. at 982.  In an effort to do so the court must rely on the claims asserted in the Third Amended Complaint.  Thus, claims asserted in depositions and not included in the complaint have not been considered and will not be addressed.  See Smith v. Books-A-Million, 398 Fed. Appx. 437 (11th Cir. 2010) (Claims not included in the complaint were not required to be considered by the District Court).

2005 (From $11/hour to $12/hour); August 19, 2005 (from $12/hour to $13.50/hour); May 22, 2006 (from $13.50/hour to $14/hour); January 3, 2007 (from $14/hour to $15/hour); July 2, 2007 (from $15/hour to $16/hour); June 16, 2008 (from $16/hour to $18/hour for "step up for week"); June 30, 2008 (from $16/hour to $16.48/hour for cost of living adjustment); and September 2010 (to $18.57/hour). (Doc. 214-1 at 113, 115, 117, 119, 121, 122, 124); Doc. 222-1); Doc. 295 at 36 (Exhibit 105-Sealed); Doc. 214-2 at 11 (Decltn. Lindley)). Sullivan is presently employed with Austal as a Logistics Associate II. (Doc. 214-2 at 11 (Decltn. Lindley)).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or

oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.   Timeliness of Claims

### A.   Title VII

A plaintiff may not sue under Title VII unless she first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of

South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010) (unpublished); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008) (unpublished). A failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. Id.

Sullivan signed her first[3] EEOC Charge (for race, retaliation and "continuing action") on November 13, 2006 and it was "received" on November 20, 2006. (Doc. 214-4 at 2-4). Calculating from the November 20, 2006 date, Austal contends that only those discrete discriminatory acts occurring within the 180 days prior (between May 25, 2006 and November 20, 2006) are timely. From this, Austal seeks summary judgment on: 1) "[a]ll alleged acts" occurring between Sullivan's hire date of September 15, 2003 and May 25, 2006; 2) Sullivan's July 7, 2004 promotion claim concerning Wilbert Lee; and 3) Sullivan's April 11, 2005 promotion claim concerning Harry Parker.[4]

Sullivan contends that Austal's interpretation is incorrect and contrary to well established

---

[3] Sullivan filed a second EEOC Charge on February 19, 2010. (Doc. 286-10).

[4] While Austal also moves for summary judgment on the untimely nature of Sullivan's unwarranted counseling claims and failure to provide training claims (Doc. 186 at 9), summary judgment has already been granted in favor of Austal on the training claims and Sullivan has not alleged unwarranted counseling claims in the Third Amended Complaint.

law, as although many acts upon which a plaintiff's Title VII claims rely may occur outside the 180 filing period, "they are part of the same actionable hostile environment claim."  (Doc. 313 at 13-14 (citing <u>McKenzie v. Citation Corp., LLC</u>, 2007 WL 1424555 (S.D. Ala. 2007)).  Sullivan is correct as it relates to her hostile work environment claim.  The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations.  <u>See</u> <u>generally</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002).  Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period."  <u>Id</u>. at 117.  As explained in <u>Smiley v. Alabama Dept. of Transp.</u>, Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Sullivan's EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery.  Accordingly, Austal's motion for summary judgment on this hostile work environment claim is **DENIED.**

As for Sullivan's July 7, 2004 promotion claim concerning Wilbert Lee and April 11, 2005 promotion claim regarding Harry Parker, promotion claims are "discrete acts."  <u>See</u>, <u>e.g.</u>,

Morgan, 536 U.S. at 114: "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Id. (emphasis added). In Morgan, the U.S. Supreme Court drew a distinction between discrete acts of discrimination and hostile work environment claims, noting that "discrete acts such as…failure to promote….are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114. Additionally, the Eleventh Circuit has held that the denial of a promotion is one time violation, the present consequences of which only are felt at the present time, and not a continuing violation. See, e.g., Roberts v. Gadsden Memorial Hosp., 835 F.2d 793 (11th Cir. 1988), *modified*, 850 F.2d 1549 (11th Cir. 1988) and Price v. M & H Valve Co., 177 Fed. Appx. 1 (11th Cir. Apr. 7, 2006) (unpublished)). Austal is correct that these promotion claims, relating to Lee and Parker, before May 25, 2006, are not timely. Thus, regarding Austal's claim that "[a]ll alleged acts" of failure to promote occurring between Sullivan's September 15, 2003 hire date and May 25, 2006 are barred under Title VII, this would include Sullivan's alleged denials of promotions before May 25, 2006 – as these would also have been discrete discriminatory acts. See e.g., Morgan, *supra*. Accordingly, Austal's motion for summary judgment as to Sullivan's Title VII failure to promote claims prior to May 25, 2006, is **GRANTED** and such claims are hereby **DISMISSED.**

**B.    Section 1981[5]**

Austal contends that Sullivan's failure to promote claims concerning the 2004 Wilbur Lee promotion and the 2005 Harry Parker promotion, see *supra*, are also untimely under Section 1981 as barred by the two (2) year statute of limitations for such claims.  See, e.g., McCray v. Wal-Mart Stores, Inc., Slip Copy, 2009 WL 734138, *9 (M.D. Ala. Mar. 17, 2009).  Based on the statute of limitations and the date the original complaint was filed in this case (March 20, 2008), Austal asserts that only those failure to promote claims which allegedly occurred between March 20, 2006 and March 20, 2008 are actionable.  Austal is correct.  Accordingly, Austal's motion for summary judgment as to Sullivan's Section 1981 promotion claims prior to March 20, 2006, based on the statutory time period, is **GRANTED** and Sullivan's Section 1981 promotion claims concerning Lee and Parker are **DISMISSED.**

**IV.    Austal's "Reply" Claims**

Austal asserts new "untimely" Title VII and Section 1981 arguments in its Reply.  (Doc. 335 at 2-4).  The Court will not consider these "new" claims because Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth recently by this Court in New Hampshire Ins. Co. v. Wiregrass Const. Co., Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

> See Park City Water Authority v. North Fork Apartments, L.P., 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005)

---

[5]    While Austal also moves for summary judgment on the untimely nature of Sullivan's pay, discipline, training and counseling claims (Doc. 186 at 10), summary judgment has already been granted in favor of Austal on Sullivan's training claim and Sullivan did not allege pay, discipline and/or counseling claims in the Third Amended Complaint such that those claims are not at issue here.

("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc*., 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they are impermissible and will not be considered. See also e.g., Abrams v. Ciba Specialty Chemicals Corp., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments are impermissible in reply briefs"); Evans v. Infirmary Health Services, Inc., 634 F. Supp. 2d 1276, 1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

## V.     Section 1981/Title VII – Hostile Work Environment (Race)

### A.     Motion To Strike[6]

Austal objects to certain portions of the Declaration of Gloria Sullivan (Doc. 285-24). Specifically, Austal objects to certain portions of Paragraph 3, Paragraph 4, Paragraph 8 and

---

[6] As noted in the Court's prior Order (Doc. 357), Austal's Motion to Strike is construed as a Rule 56(c)(2) Objection. With the December 1, 2010 rules change to Rule 56, it no longer appears that motions to strike exhibits submitted on summary judgment are appropriate. Revised Rule 56(c)(2) provides instead, that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED.R.CIV.P. 56(c)(2). The Advisory Committee Notes specify further as follows: "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. **There is no need to make a separate motion to strike**. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial."  FED.R.CIV.P. Adv.Comm.Notes (2010 Amendments (emphasis added)).

Paragraph 9 of her Declaration, asserting that these portions contain conclusory and speculative statements not based on personal knowledge, and which are highly prejudicial.

First, one sentence in Paragraph 3 of Sullivan's Declaration states "Human Resources never interviewed or got a statement from me or anyone else regarding this noose incident." Austal objects to this sentence as conclusory and not within her personal knowledge. However, this statement is based on Sullivan's knowledge insofar as Sullivan is declaring that *she* was never interviewed by HR and never gave a statement to HR. The only portion of this sentence which is objectionable is Sullivan's statement "or anyone else." Sullivan would not be privy to what HR did or did not do with other employees. And Sullivan has not established that she has personal knowledge of HR's actions concerning this noose incident. As such, Austal's Objection is **SUSTAINED** only as to the portion of this sentence "or anyone else."

Second, the sentence "Austal never met with the employees to discuss the incident[,]" contained in Paragraph 4 of Sullivan's Declaration, presents a similar situation such that Austal's Objection to this sentence is **SUSTAINED.** The Court finds as such, particularly given that Sullivan simultaneously declares in the same paragraph that HR "called" her co-worker Jerome Pettibone "to HR" and HR talked with him about the incident. According to Sullivan, HR met with at least one employee, Jerome Pettibone.

Third, Austal objects to one sentence in Paragraph 8 of Sullivan's Declaration: "Wilbur Lee, white supervisor, would also discuss how he liked to have sex and the sexual positions he preferred like his wife "being on her knees" in front of me." The Court finds that this sentence of Paragraph 8 is irrelevant to Sullivan's *race discrimination* claims, such that Austal's Objection as to this sentence of Paragraph 8 is **SUSTAINED.**

Fourth, Austal objects to the first sentence of Paragraph 9 of Sullivan's Declaration: "Jason Clarke, white co-worker, told me he heard I "could be a bitch."" Again, this sentence is irrelevant to Sullivan's *race discrimination* claims as there is no indication that this statement was based on Sullivan's race -- such that Austal's Objection to this sentence of Paragraph 9 is **SUSTAINED.**

B.    <u>Hostile Work Environment</u>

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. <u>See</u>, <u>e.g.</u>, <u>Freeman v. City of Riverdale</u>, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[7] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. <u>See</u>, <u>e.g.</u>, <u>Reeves v. DSI Sec. Servs., Inc</u>., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010); <u>McCann v. Tillman</u>, 526 F.3d 1370, 1378 (11th Cir. 2008); <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002). <u>See</u> <u>also</u> <u>e.g.</u>, <u>Mendoza v. Borden, Inc</u>., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Sullivan's evidence of sporadic and isolated incidents of racially

_____

[7] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Sullivan makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Sullivan failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

### A.    Severe or Pervasive

As to whether the conduct was severe and pervasive, Sullivan points to the following evidence.[8]    Regarding racially and hostile discriminatory comments,[9] Sullivan has heard "throughout" her employment Caucasian co-workers refer to African American co-workers as

---

[8] Sullivan also relies on the allegations of the other 22 plaintiffs (Doc. 313 at 2-4, 16-17, 19, 23, 27, 30-33) to support that an overall racially charged work atmosphere exists at Austal (*i.e.*, viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations). "To rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterprises, Inc., Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. See, e.g., Yeomans v. Forster and Howell, Inc., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). The Court has only considered the evidence of which Sullivan testified that she was aware.

[9] To support her hostile work environment claim, Sullivan also alleges that her removal from the Conex window in the warehouse in 2003 was racially offensive (Doc. 214-1 (Dep. Sullivan at 147)); Caucasian supervisor John Highland sent her a request slip for toilet tissue "to wipe his ass" yet the warehouse did not carry toilet tissue (Id. (Dep. Sullivan at 208-209); Caucasian co-worker Jason Clarke told her that he heard she "could be a bitch[]"  (Id. (Dep. Sullivan at 228-229); and that the tearing of plastic down in the area where she worked by a co-worker was racially motivated (Id. (Dep. Sullivan at 239)). Such statements and conduct, however, are not indicative of racial animus to support a hostile work environment claim. For example, Sullivan explained in her testimony that the only reason she thought Jason Clarke's comment to her was racially motivated was because "it was coming from a white man to a black woman." (Doc. 214-1 (Dep. Sullivan at 230)). While the comments and/or conduct may have been unpleasant to Sullivan, there is no indication of a racial element.

"boy;" once a Caucasian supervisor Leland Daughtry called African American employee Carlos Johnson "boy;" and Caucasian supervisor Wilbur Lee called African American employee Franklin Thomas "boy" and "Darth Vader" on "several different occasions." (Doc. 214-1 (Dep. Sullivan at 214); Doc. 285-24 at 3 at ¶¶7-8 (Decltn. Sullivan)). Sullivan complained about Lee's comments to Thomas, to her supervisor, but "his racial comments and actions still continue to this day." (Doc. 285-24 at 3 at ¶8 (Decltn. Sullivan)).

Sullivan alleges that Caucasian supervisor Erin Andrews "would barely talk to us, far as blacks….it's been times that she would walk by us, you know, somebody was white standing there, she would speak to the white and wouldn't speak to the blacks." (Doc. 285-23 (Dep. Sullivan at 131)). There is no indication in the record that this conduct was racially motivated.

According to Sullivan, she was made aware by other employees that Caucasian supervisor John Highland may have used the word "nigger" and "he don't like blacks on his crew." (Doc. 214-1 (Dep. Sullivan at 209, 211-212)). Sullivan did not report that she had heard that Highland may have used the word "nigger." (Id. (Dep. Sullivan at 212)).

Sullivan "[m]aybe in a joking manner[]" has heard someone (maybe Caucasian maybe African American) use the word "nigger" at work six years ago, but she was "not 100 percent sure." (Doc. 214-1 (Dep. Sullivan at 212-213)). Sullivan added that "[b]lacks do it [use the word "nigger"] all the time[]" and while she has heard it from African Americans, it is not offensive to her "coming from the black[s]." (Id. (Dep. Sullivan at 213-214)). Sullivan testified "[i]t's not an everyday thing." (Id. (Dep. Sullivan at 214)).

Sullivan was subjected to displays of the Confederate flag on co-workers' clothing; she finds the flag offensive as "it's something bad toward black peoples." (Doc. 214-1 (Dep.

Sullivan at 225-226)). Sullivan only reported the flag imagery to Fred Carter, about "the [one] guy that was walking across the yard with the Confederate flag on and …supervisor at Austal seen him and didn't do nothing about it." (Id. (Dep. Sullivan at 226-227)). According to Sullivan, ""[s]houldn't have to[]" complain to the supervisors. (Id. (Dep. Sullivan at 227)). Sullivan, however, elaborated in her Declaration that she personally witnessed Caucasian employees and supervisors "wearing shirts and other clothing" displaying the flag "frequently" and saw the flags "displayed all over the Austal facility, including, the back of trucks, white employee's tool boxes, white employee's welding hats, and also on the bathroom walls." (Doc. 285-24 (Decltn. Sullivan at 4 at ¶13)). There is no indication that Sullivan reported the Confederate flag imagery. Austal took no action regarding Confederate flag imagery in the workplace.

Sullivan has been shown some of the racial graffiti which has appeared on the men's' bathroom walls and stalls, as photographed by camera phones by fellow co-workers. (Doc. 214-1 (Dep. Sullivan at 215-216, 220-222, 224) (Doc. 285-23 (Dep. Sullivan at 223, 256-257). At her deposition, Sullivan could not recall the racial graffiti that she was shown by others, except generally more use of the word "nigger." (Doc. 214-1 (Dep. Sullivan at 221)). Sullivan did not report the racial graffiti that she was shown to Austal. (Id. (Dep. Sullivan at 222)). Sullivan "may" have also seen the phrase "White Power" and the graffiti "how many niggers do you see around here wearing white hats," but she is "not 100 percent sure." (Id.) In sum, Sullivan does not recall everything that she saw on her co-workers' cell phones: "I don't recall exactly what it was[;]" and "I saw racial remarks on the cell phone. I don't recall exactly what it was." (Doc. 285-23 (Dep. Sullivan at 223-224)). Sullivan was also shown a drawing of African American

co-worker Franklin Thomas, that possibly had a noose around his neck, on a camera phone. (Doc. 214-1 (Dep. Sullivan at 218)).

Based on her January 31, 2011 Declaration, Sullivan has recalled more specifics regarding the racial graffiti. (Doc. 285-24 at 2 at ¶2 (Decltn. Sullivan)). Namely, Sullivan states that since 2003 she has seen and is aware of: "nigger," "KKK," "White Power," "kill all the niggers," "KKK rules," "black people only work in cotton fields," "before you know it niggers are going to run Austal. I hate them" have been found in the bathrooms; a co-worker told her he saw racial epithets including "all the monkeys need to go back to Africa" and "what's the difference between a nigger and a monkey"; and as recently as January 2011, Sullivan was told be another co-worker that he had seen "Austal would be a better place without any niggers." (Id.)

The record reveals that starting in August 2007, Austal responded to complaints about the graffiti by cleaning the bathrooms and painting black over the graffiti on a regular basis. (Doc. 285-2 (Dep. Browning at 16, 110). Nevertheless, the painting did not deter the offending scribblers, as the walls would soon be filled again with racially offensive graffiti. (Doc. 284-4 (Dep. Lindley II at 95-96, 166-168, 188-190, 195-196, 202-203); Doc. 284-5 (Dep. Lindley III at 254); Doc. 284-11 (Dep. O'Dell at 74-75); Doc. 284-7 (Dep. Friedlieb I at 84)). As noted by Sullivan, "[t]hey tried at one time to paint the walls, but the slurs and graffiti just go right back up on the walls." (Doc. 285-24 at 2 at ¶2 (Decltn. Sullivan)).

Sullivan was made aware that her co-workers discovered a noose in the Austal warehouse during one weekend in 2008, and the noose was still hanging in the warehouse the following Monday. (Doc. 285-24 at 2 at ¶3 (Decltn. Sullivan)). There is no indication in the record that

Sullivan actually saw the noose and/or reported the noose. Sullivan was also made aware of a noose discovered by her co-workers in the Austal breakroom in May 2008. (Doc. 285-24 at 3 at ¶4 (Decltn. Sullivan)). There is no indication in the record that Sullivan actually saw the noose and/or reported the noose. Sullivan was made aware of a third noose "on the HSF side in or about 2008." (Doc. 285-24 at 3 at ¶5 (Decltn. Sullivan)). There is no indication in the record that Sullivan actually saw the noose and/or reported the noose.

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." <u>Miller</u>, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. <u>McCann</u>, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. <u>Reeves</u>, 395 Fed. Appx. at 546. <u>See</u> <u>also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-788 (1998); <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 647 (11th Cir. 1997) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." <u>Reeves</u>, 395 Fed. Appx. at 546.

There is sufficient evidence, if believed by a jury, that Sullivan subjectively perceived her work environment to be racially hostile. Thus, the Court need only determine whether Sullivan's perception was objectively reasonable.

When viewing the facts in the light most favorable to Sullivan, a reasonable jury could not find that the harassing conduct alleged was frequent and severe. According to the evidence, Sullivan was not subjected to any, much less regular, racially discriminatory comments or conduct, and moreover, apart from hearing her co-workers be called "boy," she was only told about certain racial comments (which were not directed to her) on a handful of occasions. Sullivan did not actually encounter offensive racial graffiti during her employment in the workplace bathrooms – she was only shown photographs of such graffiti by her co-workers, by viewing the photographs they had taken on their cell phones. The same is true for the three (3) nooses; Sullivan did not personally see them but was only told about them and did not report them to Austal. Additionally, while Sullivan testified that she saw Confederate flag imagery on clothing, the back of trucks, tool boxes, welding hats, and on the bathroom walls, Sullivan did not report the flag imagery or testify as to the frequency of seeing such imagery, etc.

While much of the repeated conduct may not have been physically threatening, it is not unreasonable to infer from Sullivan's allegations that some of the conduct was racially demeaning, humiliating and degrading. McKenzie, 2007 WL 1424555 at *13. However, there is no indication in the record that Sullivan was exposed to regular/daily racial comments or conduct, Confederate imagery; and/or that she actually encountered any, much less regular/daily racial graffiti. At best, Sullivan has provided evidence of being shown racially offensive graffiti by her co-workers, overhearing her co-workers being called "boy" and being told about three (3) nooses being found (which she never actually saw herself). Further, she has not established that any of the repeated conduct was severe, physically threatening or that it unreasonably interfered with her job performance. Even though Sullivan stated in her Declaration – in conclusory

fashion – that being made aware of the graffiti, nooses and comments by others "has had a negative effect on my employment" (Doc. 285-24 at 3 at ¶3 (Decltn. Sullivan)), she has not indicated what that negative effect has been and moreover, Sullivan has received ten (10) pay raises since she was hired in 2003 and remains employed at Austal. See *supra*. Thus, a jury could not reasonably find that the incidents alleged were severe and pervasive.[10]

Eleventh Circuit precedent mandates that courts consider "the totality of the circumstances" such that the absence of one factor is not dispositive. See, e.g., Miller, 277 F.3d at 1277. In this case, Sullivan has not submitted sufficient evidence demonstrating that any of the allegedly discriminatory comments and/or conduct was frequent (apart from the graffiti which she herself never encountered in the bathrooms), severe, physically threatening, humiliating, demeaning and/or unreasonably interfered with her job. See, e.g., Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (concluding that evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker,'" as well as several threats to "kick plaintiff's 'black ass'" or threats that if he looked at a white girl he was going to get "cut," and the use of racial epithets including "nigger," "boy," and "black boy," reflected conduct that was "isolated," "sporadic," and "random" and did not amount to "severe and pervasive" harassment). While there is "not simply some magic number of racial or ethnic insults" that preclude summary judgment, it is repeated incidents of...harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." Miller, 277 F.3d at

---

[10] The Court has considered the evidence presented by each plaintiff in isolation. Accordingly, on the claim of hostile work environment there are different determinations amongst plaintiffs based on the specificity and quantity of evidence presented by each plaintiff.

1276 (citation and quotation omitted).  In sum, under the totality of the circumstances and considering the allegations in the light most favorable to Sullivan, she has not produced sufficient evidence – if believed by a jury – to create an issue of fact as to whether she was subjected to racial harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

As a result, because Sullivan has failed to satisfy this fourth element of her prima facie case for hostile work environment, the Court need not reach the fifth element (employer liability) and summary judgment is **GRANTED** in favor of Austal on this claim.

## VI.    Section 1981/Title VII – Disparate Treatment (Race)

Sullivan contends that she was intentionally discriminated against with respect to "terms and conditions of her employment" because of her race in violation of Title VII and Section 1981.  Austal moves for summary judgment on Sullivan's disparate treatment claims for failure to promote.

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race." Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  Under this framework, the

plaintiff must establish a prima facie case of intentional race discrimination.[11] Id. at 802. See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful discrimination. Id. at 1272-1273.

To establish a prima facie case of failure to promote, a plaintiff must show that: 1) he is a member of a protected class; 2) who sought and was qualified for positions that the employer was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class. See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)). A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case. Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 at n. 11 (11th Cir. 1997). Where an employer has an informal promotion procedure (i.e., job openings are not posted or applications are not required), however, an employee may establish this element by showing that the position was available and that the employer had some reason or duty to consider him for same. Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-1134 (11th Cir. 1984).

---

[11] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII." DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

Sullivan's failure to promote claims consist of the following: 1) in January 2009 Terry Anderson was promoted over her to a warehouse management job; 2) on September 1, 2009, Calvin Lett received a promotion over her; and 3) Austal hired "Mason" in August 2009 as a Supervisor over Sullivan.[12]   At the outset, Plaintiff's failure to promote claims regarding Terry Anderson and Calvin Lett fail because there is no evidence to contradict Austal's assertion that Anderson and Lett are African American. (Doc. 335-10 at 4 -5 at ¶¶9-10 (Decltn. Combs); Doc. 295 at 22 (Exhibit 105-Sealed); Doc. 286-10 at 2 (Sullivan's 2/19/10 EEOC Charge)).   As African Americans, neither Anderson nor Lett are outside of Sullivan's protected class in order for her to establish a prima facie case of failure to promote.   Accordingly, Austal's motion for summary judgment on Sullivan's failure to promote claims, relating to Anderson and Lett, is **GRANTED.**

Concerning Sullivan's failure to promote claim that Austal hired "Mason" in August 2009 as a Supervisor instead of her, Sullivan has failed to provide any evidence or information concerning  "Mason" – even any evidence indicating that he is Caucasian and thus outside of her protected class.   Additionally, according to Sullivan's testimony, the position was a foreman's position for logistics for the new "MMF" building.   (Doc. 285-23 (Dep. Sullivan at 46)).   Moreover, the job qualifications included the requirement of being able to "lift 50-75 pounds. They had to be able to work the laydown yard, the shipping and receiving, and stores, and be able to supervise and report back to the manager." (Id. (Dep. Sullivan at 47)).   Sullivan testified

---

[12]   While Sullivan's January 31, 2011 Declaration  states that in 2008, Mike Leachman was given a supervisor position over Shipping and Receiving, and if the position had been posted she would have applied, (Doc. 285-24 at 4 (Decltn. Sullivan)), Sullivan has failed to address this claim in response to Austal's motion for summary judgment.   Thus, the Court finds that this particular failure to promote claim, as to Leachman, has been abandoned.

that she did not complain to anyone at Austal (apart from her co-workers) about the position which was given to "Mason." (Doc. 214-1 (Dep. Sullivan at 56-57)). Sullivan's testimony indicates further, that she did not even apply for this position because of the weight lifting requirements "and the laydown yard,. But mainly the weight." (Doc. 285-23 (Dep. Sullivan at 47)). Finally, when asked about Mason, Sullivan testified that she does not know anything about his qualifications or work experience. (Id. (Dep. Sullivan at 49)). In sum, the record reveals that Sullivan has failed to establish her prima facie case of failure to promote as to "Mason." Thus, Austal's motion for summary judgment on this claim is **GRANTED.**

## VII. <u>Conclusion</u>

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **GRANTED** as to Sullivan's hostile work environment claim; **GRANTED** as to Sullivan's failure to promote claims; **GRANTED** as to Sullivan's training claim; and **GRANTED** as to Sullivan's retaliation claim. Sullivan's punitive damages request is thus **MOOT.**

**DONE** and **ORDERED** this the **29**th day of **August 2011.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**