IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FREDERICK WILLIAMS, *et al.*, | ) |
|     Plaintiffs, | ) |
| v. | )    CIVIL ACTION 08-00155-KD-N |
| | ) |
| AUSTAL, U.S.A., L.L.C., | ) |
|     Defendant. | ) |

**ORDER**

This matter is before the Court on Defendant's partial motion for summary judgment (Docs. 200, 215), Plaintiff's Opposition (Doc. 310) and Defendant's Reply (Doc. 328).

**I.   Factual Background**

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1] (Doc. 1). Frederick Williams ("Williams") asserts claims for hostile work environment and disparate treatment (promotion and discipline) based on race in violation of Title VII and 42 U.S.C. § 1981. (Doc. 37 at 137-142).[2]

---

[1] While initiated as a purported class action, this is no longer a class action case. (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.

[2] Originally, Williams alleged a separate claim for retaliation (Doc. 37 at 139, 141 at ¶¶734, 747-748, 750-752). Williams did not address this claim in response to Austal's motion and moreover, in his opposition brief now specifically represents that he "is pursuing claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay and promotions" under Title VII and Section 1981. (Doc. 310 at 2 (emphasis added)). Accordingly, the Court construes Williams' intentional exclusion of his retaliation claim as a concession of that claim. Thus, it is **ORDERED** that Austal's motion for summary judgment, as to Williams' retaliation claim, is **GRANTED.**

Additionally, while Williams initially alleged disparate impact claims against Austal, said claims have been dismissed from this litigation. (Doc. 366).

(Continued)

1

### A. Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 200-1 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4).

### B. Williams' Employment

Frederick Williams began working at Austal on January 9, 2006, as a Welder in the Aluminum Department at the rate of $13.50/hour. (Doc. 295 at 41 (Exhibit 105-Sealed); Doc. 215-1 (Dep. Williams at 13-14); Doc. 215-1 at 59; Doc. 215-2 at 12 (Decltn. Lindley)). During his employment, Williams received three (3) pay raises dated April 4, 2006 (from $13.50/hour to $14/hour ("end of probation good worker")); May 22, 2006 (from $14/hour to $16/hour); and December 15, 2006 (from $16/hour to $16.50/hour). (Doc. 215-1 at 61, 63-64); Doc. 295 at 41 (Exhibit 105-Sealed); Doc. 328-1 (Decltn. Combs at 3)). In March 2007, Williams resigned his employment claiming that he was constructively discharged because the Austal environment was

---

Moreover, Austal has moved for summary judgment on claims not included in the Third Amended Complaint such as discriminatory pay, job assignments and evaluations. In Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998), the Court held that the "parties frame the scope of the litigation at the time the complaint is filed." Moreover, in Davis v. Coca-Cola Bottling Co., Consol., 516 F.3d 955 (11th Cir. 2008), the court highlighted the difficulty in appellate review of voluminous pleadings involving multiple defendants. In so doing it is clear that the 11th Circuit expects the District Court to "strip the case down and identify each claim and defense." Id. at 982. In an effort to do so the court must rely on the claims asserted in the Third Amended Complaint. Thus, claims asserted in depositions and not included in the complaint have not been considered and will not be addressed. See Smith v. Books-A-Million, 398 Fed. Appx. 437 (11th Cir. 2010) (Claims not included in the complaint were not required to be considered by the District Court).

too hostile due to racial discrimination. (Doc. 215-1 (Dep. Williams at 37); (Doc. 285-28 (Dep. Williams at 15-16, 22)). Austal contends that Williams resigned. (Doc. 215-2 at 12 (Decltn. Lindley)).

## II. **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of

3

informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

### III. Timeliness of Claims under Title VII

A plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also

4

Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010) (unpublished); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008) (unpublished). A failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. Id.

Williams signed his EEOC Charge (for race, retaliation and "continuing action") on November 13, 2006 and it was "received" on November 20, 2006. (Doc. 286-28). Calculating from the November 20, 2006 date, Austal contends that only those discrete discriminatory acts occurring within the 180 days prior (between May 24, 2006 and November 20, 2006) are timely. From this, Austal seeks summary judgment on "[a]ll alleged [discriminatory] acts" occurring between Williams' hire date of January 9, 2006 and May 24, 2006. (Doc. 200-1 at 7).

Williams contends that Austal's interpretation is incorrect and contrary to well established law, as although many acts upon which a plaintiff's Title VII claims rely may occur outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 310 at 14 (citing McKenzie v. Citation Corp., LLC, 2007 WL 1424555 (S.D. Ala. 2007)). Williams is correct as it relates to his hostile work environment claim. The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations. See generally National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period." Id. at 117. As explained in Smiley v. Alabama Dept. of Transp., Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Williams' EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery. Accordingly, Austal's motion for summary judgment on Williams' hostile work environment claim based on untimeliness is **DENIED.**

## IV.     Title VII/Section 1981 – Hostile Work Environment (Race)

Racial harassment is actionable under Section 1981 where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[3] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir.

---

[3] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Williams' evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Williams makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Williams failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

A.  **Severe or Pervasive**

As to whether the conduct was severe and pervasive, Williams points to the following evidence.[4] Regarding racially and hostile discriminatory comments, Williams alleges that once, some time after November 13, 2006 (when he signed his EEOC Charge) his Coordinator Scott Pearson (Caucasian) "got in my face, less than an inch from my lips, screaming and hollering at me, telling me that he wasn't a goddam racist[.]" (Doc. 215-1 (Dep. Williams at 33-34, 82)).

---

[4] Williams also relies on the allegations of the other 22 plaintiffs (Doc. 310 at 2-4, 16, 19-23), to support that an overall racially charged work atmosphere exists at Austal (*i.e.*, viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations). "To rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment." See, e.g., Melton v. National Dairy, LLC, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original). See also e.g., Head v. Pitts Enterprises, Inc., Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007). Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. See, e.g., Yeomans v. Forster and Howell, Inc., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010). The Court has only considered the evidence of which Williams testified that he was aware.

Williams reported the incident to HR later that day. (Doc. 285-28 (Dep. Williams at 34-37)).

Additionally, Williams saw one (1) Caucasian co-worker wear a t-shirt (more than once) which displayed the Confederate flag, photographed that co-worker, and reported the flag t-shirt to his supervisor Chris Roberson who "didn't say or do anything[]" in response. (Doc. 215-1 (Dep. Williams at 97, 101-102); Doc. 285-28 (Dep. Williams at 98-99, 101-103); Doc. 283-15). Austal took no action regarding Confederate flag imagery in the workplace.

Moreover, Williams has seen racial graffiti in the bathroom walls and stalls at Austal. (Doc. 285-28 (Dep. Williams at 17-23, 80-81, 85-86, 88-103); Doc. 283-14). The racial graffiti included: "why don't niggers use aspirin because the don't want to pick the cotton out of the top," "how many niggers do you see around here with white hats," "White Power" with a picture of a hooded Klansman, "KKK," "see, niggers travel in packs just like monkeys," a swastika, and "how many niggers do you see around here wearing white hats." (Doc. 215-1 (Dep. Williams at 94); Doc. 285-28 (Dep. Williams at 20, 88-95)). Williams reported the graffiti to his supervisor Chris Robinson and HR within two (2) weeks of working at Austal; HR (per Andrew Carver) told him that he would "check into it." (Doc. 285-28 (Dep. Williams at 19-20). Roberson told "it's always been like that and that if I didn't like it to quit[]" and subsequently, just "did nothing[]" and told Williams to stop using the bathroom "[d]on't go in there." (Doc. 215-1 (Dep. Williams at 89, 94-95)). Williams also photographed some of the graffiti and showed it to his supervisor Robinson, who did not respond or take any action. (Doc. 285-28 (Dep. Williams at 90-93)). Williams complained about the racial graffiti to Coordinator Scott Pearson, HR (Andrew Carver and Jeff O'Dell), as well as supervisor Robinson. (Id. (Dep. Williams at 22-23, 83, 99-103)). Austal did not take any action to remove the graffiti in response to his complaints.

8

(Id. (Dep. Williams at 20-22, 83, 88)).

The record reveals that starting in August 2007, Austal responded to complaints about the graffiti by cleaning the bathrooms and painting black over the graffiti on a regular basis. (Doc. 285-2 (Dep. Browning at 16, 110). Williams does not recall the graffiti being removed or painted over during his employment, but only more graffiti was continuously added to the walls/stalls. (Doc. 285-28 (Dep. Williams at 88, 90-91, 95-96)). Nevertheless, the painting did not deter the offending scribblers, as the walls would soon be filled again with racially offensive graffiti. (Doc. 284-4 (Dep. Lindley II at 95-96, 166-168, 188-190, 195-196, 202-203); Doc. 284-5 (Dep. Lindley III at 254); Doc. 284-11 (Dep. O'Dell at 74-75); Doc. 284-7 (Dep. Friedlieb I at 84)).

Further, Williams witnessed his Caucasian supervisor Robinson write "porch monkeys" on a wall of one of the ships at Austal; Williams questioned him about it and Robinson sanded it off the ship. (Doc. 215-1 (Dep. Williams at 17, 51-52)). Some time later, Williams reported the incident to HR. (Doc. 285-28 (Dep. Williams at 19)).

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546.

9

See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

There is sufficient evidence, if believed by a jury, that Williams subjectively perceived his work environment to be racially hostile. Thus, the Court need only determine whether Williams' perception was objectively reasonable.

When viewing the facts in the light most favorable to Williams, a reasonable jury could not find that the harassing conduct alleged was frequent and severe. According to the evidence, Williams himself was not personally subjected to regular, racially discriminatory comments or conduct. The only consistent or regular racial comments that Williams encountered consists of the racial graffiti in the workplace bathrooms. Additionally, Williams only saw one (1) Caucasian co-worker display Confederate flag imagery on a t-shirt with unspecified frequency. While much of the repeated conduct may not have been physically threatening, it is not unreasonable to infer from Williams' allegations that some of the conduct (via racial graffiti) was racially demeaning, humiliating and degrading. McKenzie, 2007 WL 1424555 at *13. Moreover, there is evidence of record that even though Williams received three (3) pay raises while employed, he believed that the environment unreasonably interfered with his job performance and made him feel unsafe. (Doc. 215-1 (Dep. Williams at 37); (Doc. 285-28 (Dep. Williams at 15-16, 22, 84)).

Eleventh Circuit precedent mandates that courts consider "the totality of the circumstances" such that the absence of one factor is not dispositive. See, e.g., Miller, 277 F.3d

at 1277. In this case, Williams has not submitted sufficient evidence demonstrating that any of the allegedly discriminatory conduct was frequent (apart from the graffiti in the bathrooms), severe, physically threatening (apart from his general allegation), humiliating, demeaning and/or unreasonably interfered with his job. See, e.g., Barrow v. Georgia Pacific Corp., 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (concluding that evidence of "displays of the rebel flag on tool boxes and hard hats, the letters 'KKK' on a bathroom wall and on a block-saw console, and a noose in another employee's locker,'" as well as several threats to "kick plaintiff's 'black ass'" or threats that if he looked at a white girl he was going to get "cut," and the use of racial epithets including "nigger," "boy," and "black boy," reflected conduct that was "isolated," "sporadic," and "random" and did not amount to "severe and pervasive" harassment). While there is "not simply some magic number of racial or ethnic insults" that preclude summary judgment, it is repeated incidents of...harassment that continue despite the employee's objections [that] are indicative of a hostile work environment." Miller, 277 F.3d at 1276 (citation and quotation omitted). In sum, under the totality of the circumstances and considering the allegations in the light most favorable to Williams, he has not produced sufficient evidence – if believed by a jury – to create an issue of fact as to whether he was subjected to racial harassment that was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.[5]

As a result, because Williams has failed to satisfy this fourth element of his prima facie case for hostile work environment, the Court need not reach the fifth element (employer liability)

---

[5] The Court has considered the evidence presented by each plaintiff in isolation. Accordingly, on the claim of hostile work environment there are different determinations amongst plaintiffs based on the specificity and quantity of evidence presented by each plaintiff.

and summary judgment is **GRANTED** in favor of Austal on this claim.

## V.     Title VII/Section 1981 Disparate Treatment[6]

Williams contends that he was intentionally discriminated against with respect to "terms and conditions of his employment" because of his race in violation of Title VII and Section 1981. Austal moves for summary judgment on Williams' disparate treatment claims for failure to promote and discriminatory discipline.

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race." Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006). See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies. Under this framework, the plaintiff must establish a prima facie case of intentional race discrimination.[7] Id. at 802. See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. Id. Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful

---

[6] As noted *supra* footnote three, Austal also moved for summary judgment on claims not included in the Third Amended Complaint (Doc. 200-1 at 16). Such claims merit no discussion here.

[7] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII." DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

discrimination. Id. at 1272-1273.

   A.   **Promotion**

To establish a prima facie case of failure to promote, a plaintiff must show that: 1) he is a member of a protected class; 2) who sought and was qualified for positions that the employer was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class. See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)). A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case. Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 at n. 11 (11th Cir. 1997). Where an employer has an informal promotion procedure (*i.e.*, job openings are not posted or applications are not required), however, an employee may establish this element by showing that the position was available and that the employer had some reason or duty to consider him for same. Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-1134 (11th Cir. 1984).

Williams contends that Austal selects less qualified Caucasian employees as supervisors and lead persons over more qualified African American employees and did so when Chris Robinson selected William Weaver as lead person in 2006.[8] (Doc. 310 at 10; Doc. 285-28 (Dep.

---

[8] Williams asserts that Austal selected a Caucasian employee "Chuck" (LNU) to serve as a lead person on a crew, to support his failure to promote claim. *However*, a review of Williams' deposition testimony relating to "Chuck" indicates that Williams does not contend that "Chuck" was promoted over him for a lead person position, but rather that "Chuck" was promoted over *another* employee Beverly Thomas. (Doc. 285-28 (Dep. Williams at 70)). Specifically, Williams testified that Chuck had been at
(Continued)

Williams at 63-71)). Specifically, Williams alleges that he asked his supervisor Robinson to be considered for the position of lead man or fill-in supervisor, and during the time that position was vacant, Williams took on the roles and responsibilities of the position at his supervisor's request, yet he was denied the promotion which was instead given to Caucasian William Weaver. (Doc. 37 at 139). Williams alleges that he and Weaver had the same supervisor, worked the same job, and were in the same department and that he had been working on the crew for 11 months whereas Weaver had only been working on the crew for three (3) months. (Id. at 140). Williams testified that "close to the end" of 2006, Robinson walked up to Weaver and said "you the lead man[]" and told Williams to "just keep doing what you're doing." (Doc. 285-28 (Dep. Williams at 64)). According to Williams, "Weaver did not have the experience that I had." (Id. (Dep. Williams at 67)).

Austal contends that Williams is unable to establish a prima facie case of discriminatory promotion. Specifically Austal argues that Williams has wholly failed to provide any evidence that he was treated less favorably than a Caucasian employee who was "nearly identical" in all relevant respects including experience, background and disciplinary history. As to the prima facie case, Austal conflates the prima facie requirements of a discriminatory pay claim with the

---

Austal 1-2 months when he was placed in a lead man position (made lead man over a whole welding crew) even though he "was not even a welder. Chuck has no knowledge of building a ship ever[]" – claiming that "I trained him how to weld." (Doc. 285-28 (Dep. Williams at 67-70)). Williams and "Chuck" were incarcerated at the same prison and worked together as part of work release, during which they welded; according to Williams, "he would ask me how to do this, how to do that. He would specifically ask me to teach him what he needed to know." (Id. (Dep. Williams at 68-69)). According to Williams, "Chuck" "didn't know anything[]" and "[t]he person that was applying for *that* welding position was Beverly Thomas[]" and it is Williams' position that she should have been made the lead person over a particular crew instead of "Chuck." (Id. (Dep. Williams at 70-71) (emphasis added)). Accordingly, Austal's summary judgment motion as to Williams' failure to promote claim concerning "Chuck" is **GRANTED.**

prima facie requirements to establish a failure to promote claim. (Doc. 200-1 at 19). Similarly situated comparators are not necessary to establish a prima facie claim of failure to promote, rather plaintiff must only show that the position was filled with a person outside his protected class. See Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872-873 (11th Cir. 2007) ("The elements are different for disparate pay and promotion claims…").

The Court finds that Williams has established a prima facie case. However, Austal has articulated a legitimate non-discriminatory reason for promoting Weaver to the lead man or step-up position over Williams: Williams lacked the same qualifications (based on work experience for the promotion) as Weaver. (Doc. 200-1 at 18). As support, Austal relies upon the Declaration of its Rule 30(b)(6) corporate representative, which provides that when Austal promoted Weaver to the step-up supervisor position, Weaver was an A-Class welder, while Williams was not; and Weaver also had prior work experience as a welder for Northrop Grumman and so had more welding experience than Williams. (Doc. 215-2 at 13 (Decltn. Lindley)). Additionally, according to Manager Harley Combs, Weaver applied for a welder position in 2006 and had prior work experience at Northrop Grumman as a welder for over eight (8) years in mild steel, aluminum and stainless steel as well as two (2) years of training at Jefferson Davis Community College. (Doc. 328-1 at 3 at ¶8 (Decltn. Combs)). See also (Doc. 328-1 at 17, 19). Supervisor Robinson testified that Williams was a "mediocre" welder and "a little bit less experienced A class welder" even though he started out at Austal as an A class welder. (Doc. 328-3 (Dep. Robinson at 165, 184)). According to Robinson, Weaver "was a better welder and understood[]" – "he had more experience and….set a better pace. He was always working hard." (Id. (Dep. Robinson at 184)). Before working at Austal, Weaver had

also worked in other shipyards and performed aluminum welding. (Id. (Dep. Robinson at 185)). When Weaver "walked in the door" at Austal he "automatically did his" Class A welding training: "I believe he actually walked in the door and took his A class test." (Id. (Dep. Robinson at 189)).

In sum, Weaver still had over eight (8) years of welding experience. In contrast, Williams' employment application reveals that he had no prior work experience as a welder. (Doc. 328-1 at 6). At the time he applied, he was attending Build Mobile Technology program, studying welding, for a career in pipe welding. (Id. at 5).

Austal's stated reasons for promoting Weaver over Williams, *i.e*., that Weaver had more welding and work experience and was A-Class certified welder at Austal, "are not implausible or inconsistent and might motivate a reasonable employer." Sridej v. Brown, 361 Fed. Appx. 31, 35 (11th Cir. 2010) (unpublished) (citing Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)). See also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268-69 (11th Cir. 2001) (affirming summary judgment in favor of employer who promoted candidate it believed was more qualified); Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 527 (11th Cir. 1983) (stating that "[t]he defendants successfully rebutted the [prima facie] presumption through evidence that they selected [the successful applicant] due to his superior qualifications for the position[]").

Williams, then, must prove that Austal's proffered reason is pretextual by showing that the disparities between his qualifications and those of Weaver are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009) (unpublished) (citing Brooks v. County

16

Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006)). See also e.g., Sridej, 361 Fed. Appx. at 34 (citing Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006)). Williams has not presented any evidence showing that Austal's articulated reasons for promoting Weaver over him were pretextual. Nor has Williams shown that his qualifications for the position were superior to those of Weaver. Chapman, 229 F.3d at 1030 (stating that, to show pretext, plaintiff must rebut "head on" employer's proffered non-discriminatory reasons). As such, Austal's motion for summary judgment as to Williams' failure to promote claim concerning Weaver is **GRANTED.**

### B. Discipline

Williams claims he suffered disparate treatment on account of his race when he received a write-up for being late for work. To establish a prima facie case of disparate treatment, the plaintiff must show: 1) he is a member of a protected class; 2) he was subjected to adverse employment action; 3) his employer treated similarly situated employees outside of his class more favorably; and 4) he was qualified to do the job. See, e.g., McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008); *accord* Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). The Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Burke-Fowler v. Orange Cty., Fla, 447 F.3d 1319, 1323 (11th Cir. 2006); Maniccia, 171 F.3d at 1368. Additionally, to determine whether employees are similarly situated, courts evaluate "whether the employer subjected differently ranked employees to the same or different employment policies." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1326 (11th Cir. 2011). "[D]ifferences in job ranks...are not, in and of themselves, dispositive as to

whether the two individuals may be compared for the purposes of evaluating a discrimination claim[]"….but they can matter. Id. (citation omitted)).

Key to any discriminatory discrimination claim, is that the plaintiff must demonstrate that he suffered an adverse employment action. See, e.g., McCray v. Wal-Mart Stores, Inc., 377 Fed. Appx. 921, 925 (11th Cir. 2010) (unpublished) (citing Crawford v. Carroll, 529 F.3d 961, 970-971 (11th Cir. 2008); Mathis v. Wachovia Bank, 255 Fed. Appx. 425, 429-430 (11th Cir. 2007) (unpublished). Austal contends that Williams' singular write-up does not constitute an adverse employment action because it did not cause a significant change in Williams' employment and/or benefits – *i.e.*, it had no negative effect on his pay. (Doc. 200-1 at 16). Austal is correct. "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action" and to prove an adverse employment action "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001). To support that claim "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way" and thus to provide an adverse employment action, a plaintiff "must show a serious and material change in the terms, conditions, and privileges of employment." Id. at 1239 (emphasis in original). Moreover, the employee's subjective view is not controlling. Id. Williams has not provided any evidence indicating that the one (1) write-up negatively impacted his employment and/or benefits. See, e.g., Miller-Goodwin v. City of Panama City Beach, Fla., 385 Fed. Appx. 966, 970-971 (11th Cir. 2010) (unpublished); Melton v. National Dairy, LLC, 705 F. Supp. 2d. 1303, 1339-1340 (M.D. Ala. 2010). As such, because Williams cannot establish his prima facie case of discriminatory discipline, Austal's motion for summary

judgment on Williams' discriminatory discipline claim is **GRANTED.**

VI. <u>**Conclusion**</u>

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **GRANTED** as to Williams' hostile work environment claim; **GRANTED** as to Williams' promotion claim; **GRANTED** as to Williams' discipline claim; and **GRANTED** as to Williams' retaliation claim. Williams' punitive damages request is thus **MOOT.**

**DONE** and **ORDERED** this the **6th** day of **September 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**
