**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JERMEL MATTHEWS,** *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION 08-00155-KD-N** |
| | ) | |
| **AUSTAL, U.S.A., L.L.C.,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Docs. 178, 179, 206), Plaintiff's Opposition (Doc. 315) and Defendant's Reply (Doc. 344).

**I.    Factual Background**

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1]  (Doc. 1).  Jermel Matthews ("Matthews") asserts claims for hostile work environment and discrimination (pay and promotion), based on race in violation of Title VII and 42 U.S.C. § 1981.  (Doc. 37 at 87-93).[2]

---

[1] While initiated as a purported class action, this is no longer a class action case.  (Doc. 293).  Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.

[2] Originally, Matthews alleged a separate claim for retaliation (Doc. 37 at 89, 92 at ¶¶445, 458-459, 461-463), discipline (write-ups) (Id. at 90-91 at ¶¶449-451) and training (Id. at 90, 93 at ¶¶446-447, 466).  Matthews did not address these claims in response to Austal's motion and moreover, in his opposition brief he now specifically represents that he "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards to pay and promotions" under Title VII and Section 1981. (Doc. 315 at 2 (emphasis added)).  Accordingly, the Court construes Matthews' intentional exclusion of his retaliation, discipline and training claims as a concession of these claims except to the extent the failure to train claim is part of his failure to promote claim (the Court notes that Matthews specifically framed his failure to promote claim in conjunction with his failure to train claim in the Third Amended Complaint).  Thus, it is **ORDERED** that Austal's motion for summary judgment, as to Matthews' retaliation, discipline and training claims, is **GRANTED.**
(Continued)

### A.    Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 179 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4).

### B.    Matthews' Employment

Matthews began working for Austal on December 6, 2004 as a Ship Fitter[3] in the Fabrication Department at the rate of $12.50/hour. (Doc. 295 at 24 (Exhibit 105-Sealed); Doc. 285-15 (Dep. Matthews at 31, 49) Doc. 206-1 (Dep. Matthews at 85); Doc. 206-2 at 10 (Decltn. Lindley)). Matthews received at least seven (7) pay raises dated March 7, 2006 (from $12.50/hour to $13.50/hour "showing good improvement"); May 22, 2006 (from $13.50/hour to $14.50/hour); October 9, 2006 (from an unknown hourly rate to $16.00/hour); January 1, 2007 (from $16/hour to $16.50/hour); January 21, 2008 (recorded February 4, 2008) (from $16.50/hour to $18.00/hour, at which time his job position changed from TA to Welder, and it was noted "Jermel hasn't had a raise since June of '06. He is 'A' class certified and I think he deserves better[]"); June 30, 2008 (from $18/hour to $18.55/hour); and in late September/early

---

Moreover, any and all disparate impact claims against Austal have been dismissed from this litigation. (Doc. 366).

[3] Lindley's Declaration states that Matthews was hired as a Ship Fitter and Matthews testified that he was hired as a Ship Fitter.  Doc. 285-15 (Dep. Matthews at 31, 49)).

October 2009 (to $19/hour). (Doc. 206-1 at 58, 59, 61); Doc. 295 at 24 (Exhibit 105-Sealed); Doc. 206-1 (Dep. Matthews at 92)). Matthews is currently employed as a Welder A-Class earning $21.86/hour.  (Doc. 206-2 at 10 (Decltn. Lindley); Doc. 295 at 24 (Exhibit 105-Sealed)).

## II.     **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).  Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.   Timeliness of Title VII Claims[4]

A plaintiff may not sue under Title VII unless he first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if

---

[4] Austal did not move for summary judgment on the untimeliness of any of Matthews' Section 1981 claims for disparate treatment as to pay and/or promotions.

it were lawful." <u>City of Hialeah, Fla. v. Rojas</u>, 311 F.3d 1096, 1102 (11th Cir. 2002). <u>See</u> <u>also</u> <u>Sheffield v. United Parcel Service, Inc.</u>, 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010) (unpublished); <u>Jordan v. City of Montgomery</u>, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008) (unpublished).   A failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge.  <u>Id</u>.

Matthews signed his EEOC Charge (for race, retaliation and "continuing action") on November 17, 2006 and it was "received" on November 24, 2006.  (Doc. 286-19).  Calculating from November 24, 2006, Austal contends that "[a]ll alleged acts" occurring between Matthews' hire date of December 6, 2004 and May 28, 2006 (180 days prior to November 24, 2006) are time barred under Title VII.  (Doc. 170 at 6-7).

Matthews contends that Austal's interpretation is incorrect and contrary to well established law, as although many acts upon which a plaintiff's Title VII claims rely may occur outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 315 at 14-15 (citing <u>McKenzie v. Citation Corp., LLC</u>, 2007 WL 1424555 (S.D. Ala. 2007)).  Matthews is correct as it relates to his hostile work environment claim.   The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations.  <u>See</u> <u>generally</u> <u>National R.R. Passenger Corp. v.</u> <u>Morgan</u>, 536 U.S. 101 (2002).  Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period."  <u>Id</u>. at 117.  As explained in <u>Smiley v.</u> <u>Alabama Dept. of Transp.</u>, Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Matthews' EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery.  Accordingly, Austal's motion for summary judgment on the untimeliness of this Title VII hostile work environment claim is **DENIED.**

Concerning the failure to promote claims, Matthews contends that four (4) Caucasian co-workers -- Chris Robinson, Jared Kerr, Kevin Lewis and Marcus Henson -- were promoted to supervisor positions over more qualified African American employees (including Matthews). (Doc. 315 at 9-10).  Failure to promote claims are "discrete acts."  See, e.g., Morgan, 536 U.S. at 114: "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Id. (emphasis added). In Morgan, the U.S. Supreme Court drew a distinction between discrete acts of discrimination and hostile work environment claims, noting that "discrete acts such as…failure to promote….are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114.  Additionally, the Eleventh Circuit has held that the denial of a promotion is a one time violation, the present consequences of which only are felt at the present time, and not a

continuing violation.  See, e.g., Roberts v. Gadsden Memorial Hosp., 835 F.2d 793 (11ᵗʰ Cir.

1988), *modified*, 850 F.2d 1549 (11ᵗʰ Cir. 1988) and Price v. M & H Valve Co., 177 Fed. Appx.

1 (11ᵗʰ Cir. Apr. 7, 2006) (unpublished)).

At the outset, Matthews alleges that Jared Kerr was promoted to a supervisor position on

November 28, 2005.  Austal does not dispute this promotion date.  As such, Matthews' Title VII

claim as to Kerr's promotion (a discrete act), is untimely, as this promotion occurred between

December 6, 2004 and May 28, 2006. Thus, Austal's motion on this claim, based on

untimeliness, is **GRANTED.**  As for Kevin Lewis (promoted on August 21, 2006) and Marcus

Henson (promoted on January 4, 2007), these promotions – discrete acts the dates of which are

undisputed by Austal -- occurred *after* May 28, 2006 and after Matthews filed his EEOC Charge,

and thus, they are timely.   As such, Austal's Title VII motion on these claims, based on

untimeliness, is **DENIED.**   Regarding Chris Robinson, while Matthews' does not allege a

specific promotion date, Robinson testified that he was promoted to the supervisor position some

time in 2005 or 2006, and that he earned $20/hour once he stepped down from the supervisor

position (for which he earned $21.50/hour). (Doc. 285-3 (Dep. Robinson at 7, 46, 74)). Austal

has produced no evidence regarding a different promotion date for Robinson. Additionally, the

record reveals that Robinson earned $21.50 (*i.e.*, when he was made supervisor -- based on his

testimony) starting on February 1, 2006.  (Doc. 295 at 31 (Exhibit 105-Sealed).  As such, taking

February 1, 2006 as the date that Robinson was made a supervisor, his promotion occurred

between December 6, 2004 and May 28, 2006 such that Matthews' Title VII claim as to

Robinson's promotion (a discrete act) is untimely.  As such, Austal's motion on this claim, based

on untimeliness, is **GRANTED.**

Next, concerning Matthews' pay claim, the Court finds as follows. Based on the record and the facts – *as alleged by Matthews* – his disparate pay claim consists of the following: 1) Caucasian employees with less experience received pay raises sooner than Matthews and in higher amounts (pay raise claim); and 2) "[w]hite employees are hired in making more money…for performing same or similar work[;]" (starting pay claim). (Doc. 37 at 91 at ¶¶453-455). Thus, the Title VII disparate pay claim is framed by Matthews as a discriminatory compensation decision claim (*i.e.*, paychecks received as a periodic implementation of a previously made discriminatory employment decision).[5] As such, Austal's motion as to this Title VII disparate pay claim, based on untimeliness, is **DENIED.**

## IV.   <u>Austal's Reply</u>

Austal asserts new arguments, for the first time in its Reply, concerning the untimeliness of certain Section 1981 claims. (Doc. 344 at 3-4). The Court will not consider these "new" claims. Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth recently in <u>New Hampshire Ins. Co. v. Wiregrass Const. Co.</u>, Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

> *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

---

[5] As set forth in 29 U.S.C.A. § 626(d)(3): "….an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, In*c., 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they are impermissible and will not be considered. See also e.g., Abrams v. Ciba Specialty Chemicals Corp., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments are impermissible in reply briefs"); Evans v. Infirmary Health Services, Inc., 634 F. Supp. 2d 1276, 1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

## V.   <u>Section 1981/Title VII – Hostile Work Environment (Race)</u>

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. App. 863, 865 (11th Cir. 2009).[6] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of

---

[6] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

vicarious or direct liability.  See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010) (unpublished); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Matthews' evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time she was employed do not meet the severe or pervasive threshold; 2) Matthews makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Matthews failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

## A.    __Severe or Pervasive__[7]

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive."  Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted).  In other words, the severe or pervasive element has an objective and

---

[7] Matthews also relies on the allegations of the other 22 plaintiffs (Doc. 315 at 2-4, 13, 17, 19-21, 23-24, 27-28, 30-33, 40, 42) to support that an overall racially charged work atmosphere exists at Austal (i.e., viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations).  "To rely on the evidence, each [plaintiff] must show that he was aware of those incidents at the relevant time he alleges the hostile work environment."  See, e.g., Melton v. National Dairy, LLC, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing Edwards Wallace Comm. College, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original).  See also e.g., Head v. Pitts Enterprises, Inc., Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); McKenzie v. Citation Corp., LLC, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007).  Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. See, e.g., Yeomans v. Forster and Howell, Inc., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010).  The Court has only considered the evidence of which Matthews testified that he was aware.

subjective component.  McCann, 526 F.3d at 1378.  To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance.  Reeves, 395 Fed. Appx. at 546.  See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  "The conduct is considered cumulatively instead of in isolation."  Reeves, 395 Fed. Appx. at 546.

After consideration of the evidence presented by Matthews, the Court finds that there is sufficient evidence, if believed by a jury, that he subjectively perceived his work environment to be racially hostile.  Moreover, the Court finds when viewing the facts in the light most favorable to Matthews, that there is an issue of fact whether the harassment was severe and pervasive.[8]  The Court also finds that there are issues of fact remaining as to whether Austal is responsible for the alleged hostile environment.  Accordingly, summary judgment is **DENIED** on this claim.

## VI.   Title VII/Section 1981 – Disparate Treatment (Race)

Matthews contends that he was intentionally discriminated against with respect to the "terms and conditions of his employment" because of his race in violation of Title VII and Section 1981.  Specifically, Matthews alleges that: 1) Caucasian employees with less experience received pay raises sooner; and 2) "[w]hite employees are hired in making more money than

---

[8] The Court has considered the evidence presented by each plaintiff in isolation.  Accordingly, on the claim of hostile work environment there are different determinations amongst plaintiffs based on the specificity and quantity of evidence presented by each plaintiff.

Matthews for performing same or similar work[;]" (starting pay claim).  (Doc. 37 at 91 at ¶¶453-455).  Austal contends that Matthews' disparate pay claims fail "because he does not identify a comparator who was similarly situated to himself – *i.e*., nearly identical in all relevant respects at the time the alleged adverse employment action occurred…the failure to identify an adequate comparator is fatal to a plaintiff's claim."  (Doc. 179 at 19-20).

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race."  Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  Under this framework, the plaintiff must establish a prima facie case of intentional race discrimination.[9]  Id. at 802.  See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful discrimination.  Id. at 1272-1273.

### A.    Pay

In order to establish a prima facie case of disparate pay, Matthews must establish that he

---

[9] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII."  DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

held a position "similar to that of a higher paid employee who is not a member of [his] protected class." Crawford v. Carroll, 529 F.3d 961, 974-975 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)).  The employee whom the plaintiff identifies as a comparator "must be similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  See also e.g., Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009) (unpublished).  It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091. See also e.g., Head v. Pitts Enterp., Inc., Slip Copy, 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake-Sims, 380 Fed. Appx. at 803; Sylva-Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5-6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they were not similarly situated in all relevant respects).

Matthews does not submit any evidence or argument regarding subjective similarity of the comparators, such as experience, education, previous salary, or salary demand. Rather, Matthews relies on Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (finding that the plaintiff established a prima facie case of sex discrimination under Title VII by demonstrating that she is female and the job she occupied was similar to higher paying jobs occupied by males) and Mulhall v. Advance Sec., Inc., 19 F.3d 586 (11th Cir. 1994).  Based on these cases, Matthews contends that he has met his burden of producing evidence of similarly situated comparators "through evidence that job titles are the same [or identical] or that plaintiff

performed the same types of tasks [and job duties] as his/her comparator." (Doc. 315 at 34-35).

However, as the Eleventh Circuit has counseled "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." Wilson, 376 F.3d at 1087.  In more recent Eleventh Circuit precedent, we have seen the application of this flexibility.  Specifically, the Court has pointed to the absence of relevant similarities amongst comparators, outside of job similarity, and held that plaintiff failed to meet his/her prima facie case.   For example, in Cooper, 390 F.3d 695,  the Court determined that the comparators for purpose of a disparate pay claim were not appropriate, *i.e.* similarly situated, when the plaintiff did not establish: 1) "that the proposed comparators had similar levels of experience or education" id. at 745; 2) "similar levels of seniority" id. at 743; and 3) similar disciplinary records, id. at 741.

When the Eleventh Circuit has reached beyond job similarities in its similarly situated analyses, unrebutted evidence was in the record to show that there existed a relevant factor (*e.g.*, experience, education, starting pay demand) which rendered the comparators dissimilar.  For example, in Mack v. ST Mobile Aerospace Eng., Inc., 195 Fed. Appx. 829 (11th Cir. 2006) (unpublished), the court stated "[w]e affirm the court's entry of summary judgment as to this claim because MAE produced uncontroverted evidence that Frye and Wicks were paid more than Mack because each had specialized experience and training in aeronautics and avionics, while Mack had only general electronic training. Consequently, Mack failed to show that they were 'similarly situated in all relevant respects.'" Id. at 843.  Thus, although the burden of production at the prima facie stage does not shift to the defendant to produce any evidence, the failure of the defendant to point to other traits that are "relevant" to the particular employment situation

dictates that the Court should look strictly to job similarities. Therefore, the Court will first examine the record to determine if Matthews has submitted evidence of basic job similarities, and if so, whether there is evidence that the comparators are dissimilar in other relevant respects.

Matthews was hired as a Ship Fitter on December 6, 2004 in the Fabrication Department at the rate of $12.50/hour. (Doc. 295 at 24 (Exhibit 105-Sealed); Doc. 206-1 at 58).  According to Matthews, when he was "hired on" he had B-Class welder experience as he had gone "through the class" for welding training (one month) before starting at Austal.  (Doc. 285-15 (Dep. Matthews at 181-183)). Matthews had no welding experience apart from the training class that Austal provided.  (Id. (Dep. Matthews at 182-183)).  Matthews received at least seven (7) pay raises dated March 7, 2006 (from $12.50/hour to $13.50/hour--"showing good improvement"); May 22, 2006 (from $13.50/hour to $14.50/hour); October 9, 2006 (from an unknown hourly rate to $16.00/hour); January 1, 2007 (from $16/hour to $16.50/hour); January 21, 2008 (recorded February 4, 2008) (from $16.50/hour to $18.00/hour, at which time his job position changed from TA to Welder, and it was noted "Jermel hasn't had a raise since June of '06. He is 'A' class certified and I think he deserves better[]"); June 30, 2008 (from $18/hour to $18.55/hour); and in late September/early October 2009 (to $19/hour).  (Doc. 206-1 at 58, 59, 61); Doc. 295 at 24 (Exhibit 105-Sealed); Doc. 206-1 (Dep. Matthews at 92)). Matthews is currently employed as a Welder A-Class earning $21.86/hour.  (Doc. 206-2 at 10 (Decltn. Lindley); Doc. 295 at 24 (Exhibit 105-Sealed)).

## 1.   <u>Pay Raises</u>

Matthews contends that he was hired as a Ship Fitter and was denied a pay raise due to his race for one (1) year and seven (7) months (in 2005 and 2006).  (Doc. 285-11 (Dep.

15

Matthews at 186-187, 210-211)).   Specifically, Matthews alleges that two (2) Caucasian co-workers Jeremy Guy ("Guy") and Bradley Chunn ("Chunn") received raises when he did not. [10] (Doc. 315 at 9).

Concerning Guy, Matthews alleges that Guy received a raise immediately after becoming A-Class certified, but that he did not.   Specifically, Guy showed him a check stub indicating that he received a raise "up to $17[/hour]…top pay then."   (Doc. 206-1 (Dep. Matthews at 86)).

The record reveals that Guy was hired at Austal on June 20, 2005 at $11/hour; _his starting job position is unknown_.   (Doc. 295 at 15 (Exhibit 105-Sealed)).   Guy had prior experience as a pipe welder at two (2) companies, and additional work experience welding aluminum, chrome and stainless steel, amounting to approximately ten (10) years of welding experience when he applied at Austal in June 2005.   (Doc. 344-3 at 4 (Decltn. Combs); Doc. 344-3 at 15-18).   Guy applied to be a welder and requested a starting salary of $15/hour.   (Doc. 344-3 at 15).   Guy's hourly rate at his prior job was $13/hour when he applied.   (Id. at 16).   A notation on his Employment Application states "$11.00 need more training."   (Id. at 18).   Guy received his first raise to $13/hour on November 14, 2005, about five (5) months after being hired (a $2/hour raise); a raise to $14/hour on January 2, 2006 ($1/hour raise); and a raise to $15/hour on March 13, 2006 ($1/hour raise).   (Doc. 295 at 15 (Exhibit 105-Sealed)).

Guy is not an appropriate comparator for purposes of Matthews' claim that his pay raises (or timing and/or lack thereof) were discriminatory because even if Guy received raises sooner than Matthews (and in higher amounts), the only position noted in connection with Guy is the

---

[10] While Matthews testified about pay raises for Michael Sweatt, a co-worker, (Doc. 285-15 (Dep. Matthews 210-211)), he did not address this claim on summary judgment.

job title of Welder in the Fabrication Department.  (Doc. 295 at 15 (Exhibit 105-Sealed)).[11]  No evidence has been presented that Matthews' starting position as a Ship Fitter and that of a Welder are substantially similar jobs. Moreover, while Matthews' claim is based on his allegation that Guy showed him his check stub indicating $17/hour (Doc. 206-1 (Dep. Matthews at 86)), there is no evidence showing that Guy was ever paid that hourly rate (Guy's highest rate is $15/hour (Doc. 295 at 15 (Exhibit 105-Sealed)).

As for Chunn, Matthews alleges that he received a raise even though he had "never worked at a shipyard," "came from McCallister's [deli]," and started at Austal later than Matthews.  (Doc. 206-1 (Dep. Matthews at 89-90)).  According to Matthews, based on what Chunn told him, "[he] was saying he was getting paid like 15. He came in making more like 14 and then got a raise to 15, something like that."  (Id. (Dep. Matthews at 90); Doc. 285-15 (Dep. Matthews at 91)).  Essentially, Matthews contends that Chunn received his first raise sooner.

The record reveals that when he applied, Matthews desired salary was "open" and he applied for a welding position or "open" position.  (Doc. 344-4 at 2).  Matthews graduated from MT Blount High School and had attended one (1) year at Bishop Community College; however, his most recent job before Austal was working as a cook at The Olive Garden where he earned $11/hour. (Id. at 3-4). Matthews' Employment Application reveals no work experience at shipyards, in construction, with welding, fitting and/or machinery.  (Id. at 2-5). In contrast, when Chunn applied, he requested $15/hour for "any position" and in his most recent prior job at Sara Lee, had earned $14.50/hour as a maintenance mechanic.  (Doc. 344-3 at 19-20).  Additionally, Chunn did not ever earn $15/hour as Matthews alleges, and Combs' Declaration reveals that

---

[11] Exhibit 105 only delineates the last position held by the employee.

Matthews' belief that Chunn "came from a deli" (in terms of his work experience) is incorrect. Moreover, unlike Matthews, Chunn had prior welding experience as well as work experience with tools (drills, saws and grinders), auto mechanics and as a maintenance mechanic for plant machinery.  (Doc. 344-3 at 4 (Decltn. Combs)).  Thus Matthews has failed to submit sufficient evidence that Chunn is an appropriate comparator.  Thus, Austal's motion on these claims is **GRANTED.**

        **2.**      **<u>Starting Hourly Wage</u>**

Matthews alleges that Caucasian employees are hired in for the same initial job – Ship Fitter -- making more money ($13-14/hour) for performing the same or similar work. (Doc. 285-15 (Dep. Matthews at 133-135)).  As comparators, Matthews offers four (4) Caucasian co-workers Michael Sweatt ("Sweatt"), Brad Chunn ("Chunn"), Jared Kerr ("Kerr") and Kevin Lewis ("Lewis").  (Doc. 315 at 8-9).  Specifically, Matthews alleges that Sweatt was hired on June 26, 2006 as a Fitter at $17/hour; Chunn was hired on August 21, 2006 at $14.50/hour (for an unknown starting position); Kerr was hired on May 2, 2005 (at an unknown hourly rate and starting position); and Lewis was hired on June 27, 2005 at $15.25/hour (for an unknown starting position).  (<u>Id</u>.)

Matthews' claim regarding Sweatt, Kerr, Lewis  and Chunn as comparators -- that these Caucasian individuals were "hired in" for the position of Ship Fitter in the Fabrication Department at a higher hourly wage -- is not supported by the evidence.  While Sweatt's starting pay was $17/hour, there is no evidence of record as to his starting job position or department.  In other words, Matthews has not produced evidence that Sweatt was initially hired as a Ship Fitter in the Fabrication Department.  (Doc. 295 at 36 (Exhibit 105-Sealed)).  Moreover, the record

18

also reveals that Sweatt had almost 25 years of prior work experience with welding and fabrication of aluminum, stainless steel and carbon steel, when hired.  (Doc. 344-2  at 4 (Decltn. Combs)).

Likewise, for Kerr, there is no evidence of record as to his starting pay[12] and/or starting position, and the evidence reveals only that Kerr is <u>now</u> a Supervisor and that he initially applied to be a welder.  (Doc. 295 at 20 (Exhibit 105-Sealed); Doc. 344-3 at 23).  Thus, Matthews has not produced evidence that Kerr was initially hired as a Ship Fitter in the Fabrication Department.  The record also reveals that Kerr had more than five (5) years of work experience in welding, machining and metal fabrication, when hired.  (Doc. 344-2 at 4 (Decltn. Combs)).

Similarly, concerning Lewis, there is no evidence of record as to his starting pay[13] and/or starting position, and the evidence reveals only that Lewis is <u>now</u> a LCS Foreman.  (Doc. 295 at 22 (Exhibit 105-Sealed)). Thus, Mathews has failed to produce evidence that Lewis was initially hired as a Ship Fitter in the Fabrication Department. The record reveals as well, that Lewis had prior work construction experience, was able to read drawings and blueprints, and that he had attended Faulkner Community College for Industrial Electricity.   (Doc. 344-3 at 4 (Decltn. Combs)).   As such, Sweatt, Kerr and Lewis are not proper comparators for Matthews' starting pay claim, such that Austal's motion for summary judgment is **GRANTED** on same.

Regarding Chunn, as noted *supra*, Matthews has failed to produce evidence that Chunn was initially hired as a Ship Fitter in the Fabrication Department.  Indeed, the only position noted

---

[12] There is only a notation of $14.00 on his Employment Application, and that he requested a starting wage of $15/hour "and up." (Doc. 344-3 at 23, 26).

[13] There is only a notation $15.25 on his Employment Application. (Doc. 344-3 at 30).

in connection with Chunn is that of Trades Assistant.  Moreover, the evidence establishes Chunn had relevant work experience (as a welder, experience with tools and as a maintenance mechanic for plant machinery (Doc. 344-3 a 4 (Decltn. Combs))).  Further, when he applied, Chunn requested $15/hour whereas Matthews' did not request a desired salary.  In sum, Matthews has failed to submit evidence that he and Chunn are similar in all relevant respects but yet Chunn was treated more favorably in terms of pay.  Accordingly, Austal's motion as to Matthews' starting hourly wage claim when compared to Chunn, is **GRANTED.**[14]

### B.   Promotion[15]

Matthews alleges that he was denied promotions to supervisor positions in the Fabrication Department which were given to Caucasian co-workers Chris Robinson (Section 1981), Jared Kerr (Section 1981), Kevin Lewis (Title VII/Section 1981) and Marcus Henson (Title VII/Section 1981).[16]  (Doc. 315 at 9-10).

To establish a prima facie case of failure to promote, Matthews must show that: 1) he is a member of a protected class; 2) who sought and was qualified for positions that the employer

---

[14] The only other relevant evidence submitted by Adams in opposition to summary judgment on the disparate pay issue, consists of the depositions of Austal's HR employees and CEO Browning, as well as Austal's Rule 30(b)(6) representative Lindley.  These depositions address the overall lack of a written pay structure at the company and the fact that the HR Director was prompted to conduct a study and establish a pay structure to ensure fair pay among employees.  This evidence is not sufficient to support an inference of race discrimination as to the pay issue.

[15] The Court notes that Matthews initially framed his failure to promote claim as a denial of training claim in the Third Amended Complaint, for which Austal moved for summary judgment.  However, in his Opposition Matthews framed his failure to promote claim as just that, concerned only with promotions and not allegations of lack of training.  As such, the Court has addressed those purported denials of promotion here.

[16] The Court has granted Austal's motion as to Matthews' Title VII failure to promote claims as to Robinson and Kerr and thus, only Matthews' Section 1981 claims survive as to these comparators.

was attempting to fill; 3) despite his qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class. See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980) (unpublished)).   A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case.   Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 at n. 11 (11th Cir. 1997).   Where an employer has an informal promotion procedure (i.e., job openings are not posted or applications are not required), however, an employee may establish this element by showing that the position was available and that the employer had some reason or duty to consider him for same. Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-1134 (11th Cir. 1984).

Austral contends that Matthews is unable to establish a case of discrimination because he has failed to provide any evidence concerning his proposed comparators.  Austal explains that Matthews has failed to identify Caucasian employees who are "nearly identical" in all relevant respects including experience, background, and disciplinary history.

As to the prima facie case, Austal conflates the prima facie requirements of a discriminatory pay claim with those for a failure to promote claim.   Similarly situated comparators are not necessary to establish a prima facie claim of failure to promote, rather plaintiff must only show that the position was filled with a person outside his protected class. See Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872-873 (11th Cir. 2007)

(providing that "[t]he elements are different for disparate pay and promotion claims…") (unpublished).

The Court finds that Matthews has established a prima facie case for these comparators. However, Austal has articulated a legitimate non-discriminatory reason for promoting Robinson, Kerr, Lewis and Henson to supervisory positions in the Fabrication Department over Matthews: Matthews lacked the same qualifications (based on work experience for the promotion).  (Doc. 344 at 13).  As support, Austal relies upon the Declaration of Manager Harley Combs which reveals as follows: Robinson had prior experience in the apprentice program at Austal; Kerr had more than five (5) years' experience in welding, machining and fabrication; Lewis had prior construction experience and was able to read drawings and blueprints; and Henson had prior carpentry experience.  (Doc. 344-3 at 3-4 (Decltn. Combs)).  In contrast, Matthews' prior experience was that of working as a cook at the Olive Garden.  (Doc. 344-4 at 4).  Austal's stated reasons for promoting these comparators to supervisor positions over Matthews, "are not implausible or inconsistent and might motivate a reasonable employer."  Sridej v. Brown, 361 Fed. Appx. 31, 35 (11th Cir. 2010) (unpublished) (citing Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).  See also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268-69 (11th Cir. 2001) (affirming summary judgment in favor of employer who promoted candidate it believed was more qualified); Clark v. Huntsville City Bd. of Educ., 717 F.2d 525, 527 (11th Cir. 1983) (stating that "[t]he defendants successfully rebutted the [prima facie] presumption through evidence that they selected [the successful applicant] due to his superior qualifications for the position[]").

Matthews, then, must prove that Austal's proffered reasons are pretextual by showing

that the disparities between his qualifications and those of the comparators are "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009) (unpublished) (citing Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1162 (11th Cir. 2006)). See also e.g., Sridej, 361 Fed. Appx. at 34 (citing Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006)). Matthews has not presented any evidence showing that Austal's articulated reasons for promoting these comparators over him were pretextual. Nor has Matthews shown that his qualifications for the position were equal or superior to those of the comparators. Chapman, 229 F.3d at 1030 (stating that, to show pretext, plaintiff must rebut "head on" employer's proffered non-discriminatory reasons). As such, Austal's motion for summary judgment, as to Matthews failure to promote claims for Robinson, Kerr, Lewis and Henson, is **GRANTED.**

## VII.   Punitive Damages

Matthews seeks an award of punitive damages against Austal. Upon consideration, the Court finds that resolution of the punitive damages issue is a matter better suited for trial. Thus, it is **ORDERED** that Austal's motion for summary judgment regarding Matthews' punitive damages claim is **DENIED** as his request for punitive damages is **CARRIED TO TRIAL.**

## VIII.   Conclusion

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **DENIED** as to Matthews' hostile work environment claim; **GRANTED** as to Matthews' failure to promote claims; **GRANTED** as to Matthews' pay claims; and **GRANTED** as to Matthews'

retaliation, discipline and training claims.  It is further **ORDERED** that Matthews' punitive damages request is **CARRIED TO TRIAL.**

        **DONE** and **ORDERED** this the **21**[st] day of **September 2011.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**