**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JERMAINE ROBERSON,** *et al.*, ) | |
|     **Plaintiffs,** ) | |
| **v.** ) | **CIVIL ACTION 08-00155-KD-N** |
| ) | |
| **AUSTAL, U.S.A., L.L.C.,** ) | |
|     **Defendant.** ) | |

**ORDER**

This matter is before the Court on Defendant's partial[1] motion for summary judgment (Docs. 194, 196, 203), Plaintiff's Opposition (Doc. 314) and Defendant's Reply (Doc. 339).

**I.**     <u>**Factual Background**</u>

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[2] (Doc. 1). Jermaine Roberson ("Roberson") asserts claims for hostile work environment and discrimination (pay and promotions) based on race in violation of Title VII and 42 U.S.C. § 1981. (Doc. 37 at 109-116).[3]

---

[1] Austal did not specifically move for summary judgment on Roberson's failure to promote claim (Doc. 37 at 112 at ¶¶572, 575). But even if Austal's motion could be construed otherwise, Austal did not adequately address Roberson's contention relating to the promotion received by Chris Johnson.

[2] While initiated as a purported class action, this is no longer a class action case. (Doc. 293). Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.

[3] Originally, Roberson alleged a separate claim for retaliation (Doc. 37 at 113-115 at ¶¶ 578, 586-587, 589-591), constructive discharge (<u>Id.</u> at 109-110, 113-114 at ¶563, 582-583), denial of equipment (his own welding machine) (<u>Id.</u> at 112 at ¶572), training (<u>Id.</u> at 112-113, 115 at ¶¶574, 579-581, 594) and evaluations (<u>Id.</u> at 113 at ¶¶579-580). Roberson did not address these claims in response to Austal's motion and moreover, in his opposition brief Roberson now specifically represents that he "is *pursuing* claims against Austal for *only* hostile work environment and discrimination on the basis of race in regards (Continued)

### A.   Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama.   (Doc. 196 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)).   The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)).  (Doc. 283-48 at 3-4).

### B.   Roberson's Employment

Roberson began working for Austal on July 5, 2006 as a Fitter Trades Assistant ("Fitter/TA") in the Aluminum Fabrication Department, at the rate of $14/hour. (Doc. 295 at 31 (Exhibit 105-Sealed); Doc. 203-1 (Dep. Roberson at 54-56, 194); (Doc. 203-1 at 71, 73); Doc. 203-2 (Decltn. Lindley at 10)). Roberson received three (3) pay raises dated November 1, 2006 (to $14.50/hour), July 2, 2007 (to $15.50/hour) and October 9, 2007 (to $16.50/hour).  (Doc. 295 at 31 (Exhibit 105-Sealed); Doc. 203-1 at 71, 73)).   Roberson was employed at Austal until March 12, 2008; Roberson contends that he was constructively discharged, whereas Austal asserts that his FMLA leave expired without him returning to work.   (Id.; Doc. 203-1 (Dep.

---

to pay and promotions" under Title VII and Section 1981. (Doc. 314 at 2 (emphasis added)). Accordingly, the Court construes Roberson's intentional exclusion of his retaliation, constructive discharge, denial of equipment (his own welding machine), training and evaluations claims as a concession of these claims.  Thus, it is **ORDERED** that Austal's motion for summary judgment, as to Roberson's retaliation  constructive discharge, denial of equipment (his own welding machine), training and evaluations claims, is **GRANTED.**

Moreover, any and all disparate impact claims against Austal have been dismissed from this litigation. (Doc. 366).

Roberson at 65-66, 68, 73, 75, 277-278); Doc. 339-1).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010).   The recently amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).  Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.

1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party

fails to make "a sufficient showing on an essential element of her case with respect to which she

has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S.

at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short

of weighing the evidence and making credibility determinations of the truth of the matter.

Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992),

cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.   Timeliness of Claims

A plaintiff may not sue under Title VII unless he first exhausts administrative remedies

by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v.

Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  "In a non-deferral state such as Alabama,

the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of

South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See

also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an

employer's unlawful employment practice does not file a timely complaint, the unlawful practice

ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if

it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also

Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010)

(unpublished); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008)

(unpublished).  A failure to file a timely charge with the EEOC results in a bar of the claims

contained in the untimely charge.  Id.

Roberson signed his EEOC Charge (for race, retaliation and "continuing action") on February 26, 2007[4] and it was "received" on February 28, 2007.  (Doc. 203-3).  Calculating from the February 28, 2007 date, Austal contends that "[a]ll alleged acts" occurring between Roberson's hire date of July 5, 2006 and September 1, 2006[5] (180 days prior to February 28, 2007), are time barred under Title VII.  (Doc. 196 at 7).

Roberson contends that Austal's interpretation is incorrect and contrary to well established law, as although many acts upon which a plaintiff's Title VII claims rely may occur outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 314 at 14-15 (citing McKenzie v. Citation Corp., LLC, 2007 WL 1424555 (S.D. Ala. 2007)).  Roberson is correct as it relates to his hostile work environment claim.  The U.S. Supreme Court has clarified that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations.  See generally National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period."  Id. at 117.  As explained in Smiley v. Alabama Dept. of Transp., Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

---

[4]   The EEOC Charge is signed 2/26/06, but this appears to be a scrivener's error as the allegations encompass a timeframe after February 2006 and the "latest date discrimination took place" is defined as 02/26/07.  (Doc. 203-3 at 1). Also, the EEOC's stamp bears the year 2007.

[5]   Austal actually uses the date of August 30, 2006; however, 180 days prior to the date the EEOC charge was "received' (the filing date), is September 1, 2006.

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Roberson's EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery. Accordingly, Austal's motion for summary judgment on this hostile work environment claim is **DENIED.**

Concerning all other "any alleged acts" for which Austal has moved for summary judgment – disparate treatment (starting pay and pay raises) – the Court finds as follows. As for Roberson's pay claim, this claim is tied to Roberson's starting salary when hired ($14/hour) and the pay raises that he received (or did not) thereafter, as compared to that of certain Caucasian employees, and thus is framed by Roberson as a discriminatory compensation decision claim (*i.e.*, paychecks received as a periodic implementation of a previously made discriminatory employment decision).[6] Accordingly, Roberson's Title VII pay claims are not untimely and Austal's motion for summary judgment based on the untimeliness of this claim is **DENIED.**

---

[6] As set forth in 29 U.S.C.A. § 626(d)(3): "….an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

**IV.    Austal's "Reply" Claims**

Austal asserts new arguments in its Reply concerning Roberson's failure to promote claims (claims for which Austal did not move for summary judgment).  (Doc. 339 at 13-14).  The Court will not consider these "new" claims.  Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth recently in New Hampshire Ins. Co. v. Wiregrass Const. Co., Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

> See Park City Water Authority v. North Fork Apartments, L.P., 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. E.g., Herring v. Secretary, Department of Corrections, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted). The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." Hardy v. Jim Walter Homes, Inc., 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they are impermissible and will not be considered.  See also e.g., Abrams v. Ciba Specialty Chemicals Corp., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments are impermissible in reply briefs"); Evans v. Infirmary Health Services, Inc., 634 F. Supp. 2d 1276, 1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

**V.    Section 1981/Title VII – Hostile Work Environment (Race)**

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive

working environment.  See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009) (unpublished).[7]  To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability.  See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010) (unpublished); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Austal contends that: 1) Roberson's evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Roberson makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with her ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Roberson failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

---

[7]  This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.  The Court notes this same rule applies to other Fed. Appx. cases cited herein.

A.      <u>Severe or Pervasive</u>[8]

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." <u>Miller</u>, 277 F.3d at 1276 (internal citation and quotation marks omitted).  In other words, the severe or pervasive element has an objective and subjective component.  <u>McCann</u>, 526 F.3d at 1378.  To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance.  <u>Reeves</u>, 395 Fed. Appx. at 546.  <u>See also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-788 (1998); <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 647 (11th Cir. 1997) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)).  "The conduct is considered cumulatively instead of in isolation."  <u>Reeves</u>, 395 Fed. Appx. at 546.

After consideration of the evidence presented by Roberson, the Court finds that there is sufficient evidence, if believed by a jury, that Roberson subjectively perceived his work

_____

[8] Roberson also relies on the allegations of the other 22 plaintiffs (Doc. 314 at 2-4, 17, 20-22, 24-25, 28, 32) to support that an overall racially charged work atmosphere exists at Austal (*i.e.*, viewed through the lens of the plaintiffs' collective allegations versus each plaintiff's specific allegations).  "To rely on the evidence, each [plaintiff] must show that he *was aware* of those incidents at the relevant time he alleges the hostile work environment."  <u>See</u>, *e.g.*, <u>Melton v. National Dairy, LLC</u>, 705 F. Supp. 2d 1303, 1342 (M.D. Ala. 2010) (citing <u>Edwards Wallace Comm. College</u>, 49 F.3d 1517, 1522 (11th Cir. 1995)) (emphasis in original).  <u>See also</u> *e.g.*, <u>Head v. Pitts Enterprises, Inc.</u>, Slip Copy, 2010 WL 2773376, *8 (M.D. Ala. Jul. 14, 2010); <u>McKenzie v. Citation Corp., LLC</u>, 2007 WL 1424555, *13 (S.D. Ala. May 11, 2007).  Courts in the Eleventh Circuit may consider statements not directed at a plaintiff and even hearsay statements, so long as the plaintiff was aware of the statements at the time he was employed. <u>See</u>, <u>e.g.</u>, <u>Yeomans v. Forster and Howell, Inc</u>., Slip Copy, 2010 WL 3716394, *5-6 (M.D. Ala. Sept. 10, 2010).  The Court has only considered the evidence of which Roberson testified that he was aware.

environment to be racially hostile.  Moreover, the Court finds when viewing the facts in the light most favorable to Roberson, that there is an issue of fact whether the harassment was severe and pervasive.  The Court also finds that there are issues of fact remaining as to whether Austal is responsible for the alleged hostile environment.  Accordingly, Austal's motion for summary judgment is **DENIED** on this claim.

## VI.   Section 1981/Title VII – Disparate Treatment (Race)

Roberson contends that he was intentionally discriminated against with respect to "terms and conditions of his employment" because of his race in violation of Title VII and Section 1981. Specifically, Roberson alleges that: 1) Caucasian employees who held the same initial job, Trades Assistant – namely Chris Johnson, Kenneth Allison, Michael Scarborough and William Rowell, were hired at a hiring starting hourly wage; and 2) Caucasian employees received raises sooner than he did and in higher amounts, including Chris Johnson, Kenneth Allison and William Rowell.

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race."  Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  Under this framework, the

10

plaintiff must establish a prima facie case of intentional race discrimination.[9]  Id. at 802.  See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful discrimination.  Id. at 1272-1273.

In order to establish a prima facie case of disparate pay, Roberson must establish that he held a position "similar to that of a higher paid employee who is not a member of [her] protected class."  Crawford v. Carroll, 529 F.3d 961, 974-975 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)).  The employee whom the plaintiff identifies as a comparator "must be similarly situated in all relevant respects."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  See also e.g., Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009) (unpublished).  It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer."  Wilson, 376 F.3d at 1091.  See also e.g., Head v. Pitts Enterp., Inc., Slip Copy, 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake-Sims, 380 Fed. Appx. at 803; Sylva-Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5-6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they

---

[9] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII."  DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

were not similarly situated in all relevant respects).

Roberson does not submit any evidence or argument regarding subjective similarity of the comparators, such as experience, education, previous salary, or salary demand.  Rather, Roberson relies on Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (finding that the plaintiff established a prima facie case of sex discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males) and Mulhall v. Advance Sec., Inc., 19 F.3d 586 (11th Cir. 1994), and argues that he meets his burden of producing evidence of a similarly situated comparator by pointing to Caucasian employees who held jobs with identical titles (*i.e*., Trades Assistant in the Aluminum Fabrication Department).

However, as the Eleventh Circuit has counseled "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation."  Wilson, 376 F.3d at 1087.  In more recent Eleventh Circuit precedent, we have seen the application of this flexibility.  Specifically, the Court has pointed to the absence of relevant similarities amongst comparators, outside of job similarity, and held that plaintiff failed to meet his/her prima facie case.   For example, in Cooper, 390 F.3d 695,  the Court determined that the comparators for purpose of a disparate pay claim were not appropriate, *i.e.* similarly situated, when the plaintiff did not establish: 1) "that the proposed comparators had similar levels of experience or education" id. at 745; 2) "similar levels of seniority" id. at 743; and 3) similar disciplinary records, id. at 741.

When the Eleventh Circuit has reached beyond job similarities in its similarly situated

12

analyses, unrebutted evidence was in the record to show that there existed a relevant factor (e.g., experience, education, starting pay demand) which rendered the comparators dissimilar.  For example, in <u>Mack v. ST Mobile Aerospace Eng., Inc</u>., 195 Fed. Appx. 829 (11th Cir. 2006) (unpublished<u>)</u>, the court stated "[w]e affirm the court's entry of summary judgment as to this claim because MAE produced uncontroverted evidence that Frye and Wicks were paid more than Mack because each had specialized experience and training in aeronautics and avionics, while Mack had only general electronic training. Consequently, Mack failed to show that they were 'similarly situated in all relevant respects.'" <u>Id</u>. at 843.  Thus, although the burden of production at the prima facie stage does not shift to the defendant to produce any evidence, the failure of the defendant to point to other traits that are "relevant" to the particular employment situation dictates that the Court should look strictly to job similarities. Therefore, the Court will first examine the record to determine if Roberson has submitted evidence of basic job similarities, and if so, whether there is evidence that the comparators are dissimilar in other relevant respects.

### A.    <u>Starting Pay: Initial Hourly Wage</u>

Roberson alleges that Caucasian co-workers Chris Johnson, Kenneth Allison, Michael Scarborough and William Rowell, were hired in as Trades Assistant in the Aluminum Fabrication Department at a starting hourly wage that was higher than his initial starting hourly wage ($14/hour). (Doc. 203-1 (Dep. Roberson at 103-105); Doc. 285-20 (Dep. Roberson at 227-228)). As noted *supra*, Roberson was hired on July 5, 2006, as a Fitter/Trades Assistant in the Aluminum Fabrication Department, at the initial starting wage rate of $14/hour.  (Doc. 295 at 31 (Exhibit 105-Sealed)).  Roberson contends that "white Austal employees with similar or identical job titles or tasks earned more."  (Doc. 314 at 38).

13

Roberson's initial pay rate claim regarding Allison (hired on 7/31/06), Johnson (hired on 2/27/06), Scarborough (hired on 7/24/06) and Rowell (hired on 5/7/07),[10] is not supported by the evidence.  Specifically, Roberson cites Exhibit 106 as evidence of starting pay for comparators Allison, Scarborough and Rowell.  A review of Exhibit 106 (which purports to be a summary of pay data contained in Exhibit 105) shows no support for Roberson's assertion of starting pay for these comparators.  Additionally, Roberson has previously explained that Exhibit 106 is a summary of pay data contained in Exhibit 105.[11]  (Doc. 353 at 17).  Exhibit 105 does not indicate these proposed comparators' starting pay.

Roberson has submitted no other evidence establishing that Allison was initially hired at the rate of $12.50/hour. (Doc. 314 at 9).  The record reveals also that Scarborough was initially hired at a starting wage of $13.50/hour (Doc. 339-6 at 13 (Employment Application)), and thus, he was hired at a _lower_ starting pay rate than that of Roberson ($.50/hour lower).  And the only evidence Roberson cites to, for the claim that Johnson was hired at the initially starting pay rate of $14/hour, is Roberson's own deposition testimony, which is based on inadmissible hearsay. (Doc. 203-1 (Dep. Roberson at 190); Doc. 285-20 (Dep. Roberson at 228)).  In fact, the only proposed comparator for which the evidence definitively establishes an initial starting rate higher than that of Roberson is Rowell, who was hired at a starting rate of $15/hour.  (Doc. 339-6 at 9 (Employment Application)).

---

[10]  (Doc. 295 at 19, 32, 33 (Exhibit 105-Sealed)).

[11]  As noted in the Order regarding Earaton Adams (Doc. 364 at 19 at note 14), the Court previously ruled that Doc. 286-3 (Exhibit 105 (Sealed)), also filed as Doc. 295, can be reduced to a form admissible at trial and thus Austal's objection to Exhibit 105 was overruled; however, to the extent Exhibit 106 has no foundation in Exhibit 105, Austal's objection was sustained.

However, there is no evidence that any of the proposed comparators were hired for the same initial starting job position of Fitter/Trades Assistant in the Aluminum Fabrication Department. Rather, the record reveals that while Allison "applied for a Trades Assistant/Welder position" (Doc. 339-6 (Decltn. Combs at 4)), the only position indicated in connection with Allison is the job title of Fitter A-Class in Fabrication[12] and there is no information as to his starting position.  (Doc. 295 at 2 (Exhibit 105-Sealed)).  Similarly, there is no evidence that Scarborough was hired as a Trades Assistant; instead, the record reveals only that he is presently a Fitter A-Class in Fabrication. (Id. at 33 (Exhibit 105-Sealed)). Likewise, Rowell was initially hired as a Trades Assistant in HVAC (not Fabrication).[13]  (Id. at 32).  Moreover, there is no evidence that Johnson was initially hired as a Trades Assistant; the record reveals only that he is presently a Fitter in the Fabrication.  (Id. at 19).  And no evidence has been presented that Roberson's starting position as Trades Assistant in the Aluminum Fabrication Department, and a Fitter A-Class in the Fabrication Department, a Fitter in the Fabrication Department, and a Trades Assistant in the HVAC Department, are substantially similar jobs.

It cannot be said then, that any of these proposed comparators are substantially similar to Roberson in terms of job duties, particularly as Roberson has failed to present any evidence of the similarities of the duties for these job positions in different departments.  This lack of evidence undermines Roberson's starting hourly rate claims as to Allison, Johnson, Scarborough and Rowell, as within each department pay rates are based on a number of factors including

---

[12] The record reveals that there are two (2) Fabrication Departments (Aluminum Fabrication and Aluminum Components) at Austal.  (Doc. 283-48 at 4 (Austal's 3/7/07 EEOC Statement)).

[13]  The record reveals that the HVAC job positions are within the Fit Out Department.  (Doc. 283-48 at 4 (Austal's 3/7/07 EEOC Statement)).

15

experience (at Austal or elsewhere), education/training, productivity (quantity and quality), and attendance and "[t]he difference in pay scales is well known to the employees[]" as some employees have transferred from one department to another to qualify for higher pay or different working conditions. (Doc. 283-38 at 4-5, 11 (Austal's 3/3/07 EEOC Statement)).   Indeed, "Austal established different job titles for its employees – such as Trades Assistant, Fitter, Welder, etc. – due to the different skill sets, training, experience, and qualifications needed to perform the *job duties that are unique to each job title*."   (Doc. 339-6 (Decltn. Combs at 3) (emphasis added)).  Even when the threshold focus is only on job similarity, Roberson must still establish basic job similarities between his job and that of his purportedly higher paid comparators.  Roberson has failed to do this because he "relies merely on a comparison of generic job titles [and inaccurately so relies at times] and points to…no evidence regarding the actual job functions and the skill and effort required to perform those functions." See, e.g., Hooper v. Total System Servs., Inc., 2011 WL 2604752, *8 (M.D. Ga. Jun. 30, 2011).  See also e.g., Mulhall, 19 F.3d at 590 (finding that a plaintiff must show "equal work on jobs the performance of which requires equal skill, effort, and responsibility[]"). In sum, Roberson has not established what he asserts is the only requirement -- "job similarity."  Accordingly, Austal's motion for summary judgment on Roberson's starting pay rates claims as compared to Johnson, Allison, Scarborough and Rowell, is **GRANTED.**

**B.    Pay Raises**

Roberson alleges that Caucasian co-workers received raises sooner than he did, and in higher amounts, including Chris Johnson, Kenneth Allison and William Rowell.  Specifically, Roberson alleges that he only received a $.50/hour raise "[w]hen everybody else got $2.00 [per

hour] raise." (Doc. 203-1 (Dep. Roberson at 160, 190, 226); Doc. 285-20 (Dep. Roberson at 161-162)). Roberson complained to supervisor Guyette, who responded "it was up to Scott [Pearson]." (Id. (Dep. Roberson at 162-163)). Roberson asked Guyette to talk to Pearson and he said he would "see what he can do[]" and Roberson "[n]ever heard anything[]" except Pearson told him "that's all I'm going to get right now." (Id. (Dep. Roberson at 163)). On another occasion, Roberson assets that he realized that Chris Johnson was making $17/hour when he was only making $14.50/hour; thus, he complained to his supervisor Wescovich and coordinator Kevin Lewis, who both in response, "started laughing." (Id. (Dep. Roberson at 165-168)). However, Roberson testified as well, "[t]he money didn't mean anything to me. It was about the learning." (Id. (Dep. Roberson at 168)).

As detailed *supra*, Roberson has submitted no evidence that these proposed comparators were hired at the same time for the same position in the same department yet received raises sooner than he did and in higher amounts (as measured from their initial starting pay rates). Accordingly, Austal's motion for summary judgment on Roberson's disparate pay claim concerning pay raises is **GRANTED.**

## VII.   Punitive Damages

Roberson seeks an award of punitive damages against Austal. Upon consideration, the Court finds that resolution of the punitive damages issue is a matter better suited for trial. Thus, it is **ORDERED** that Austal's motion for summary judgment regarding Roberson's punitive damages claim is **DENIED** as his request for punitive damages is **CARRIED TO TRIAL.**

17

**VIII.   Conclusion**

Accordingly, it is **ORDERED** that Austal's partial[14] motion for summary judgment is **DENIED** as to Roberson's hostile work environment claims; **GRANTED** as to Roberson's disparate pay claims; and **GRANTED** as to Roberson's retaliation claim, constructive discharge, denial of equipment (welding machine), training, and evaluations claims.  Roberson's punitive damages request is **CARRIED TO TRIAL.**

**DONE** and **ORDERED** this the **23**rd day of **September 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[14] See *supra* Footnote 1.