**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **BEVERLY THOMAS,** *et al.*,      ) | |
|     **Plaintiffs,**      ) | |
| **v.**      ) | **CIVIL ACTION 08-00155-KD-N** |
|      ) | |
| **AUSTAL, U.S.A., L.L.C.,**      ) | |
|     **Defendant.**      ) | |

**ORDER**

This matter is before the Court on Defendant's motion for summary judgment (Docs. 187, 188, 217), Plaintiff's Opposition (Doc. 317) and Defendant's Reply (Doc. 334).

**I.**     <u>**Factual Background**</u>

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race.[1]  (Doc. 1).  Beverly Thomas ("Thomas") asserts claims for hostile work environment and racial discrimination (pay (hourly wages) and promotions) and retaliation (race) under 42 U.S.C. § 1981 and Title VII; and hostile work environment and gender discrimination (pay (hourly wages) and promotions) and retaliation (gender) under Title VII.  (Doc. 37 at 142-149; Doc. 317 at 2).[2]

---

[1] While initiated as a purported class action, this is no longer a class action case.  (Doc. 293).  Additionally, some of the Plaintiffs allege gender and disability discrimination in addition to asserting Title VII claims.  Moreover, any and all disparate impact claims against Austal have been dismissed from this litigation. (Doc. 366).

[2] Originally, Thomas alleged a separate claim for denials of training (Doc. 37 at 145-147, 149 at ¶¶774-776, 780-781, 796).  Thomas did not argue this claim (except as noted *infra* in relation to her promotion claim) in response to Austal's motion and moreover, in her opposition brief now specifically represents that he "is *pursuing* claims against Austal for hostile work environment and racial discrimination in regards to pay and promotions, and retaliation under 42 U.S.C. Section 1981 and Title VII, and gender discrimination under Title VII."  (Doc. 317 at 2 (emphasis added)).  Accordingly, the Court construes Thomas' intentional exclusion of her training claim as a concession of that claim.  Thus, (Continued)

### A.   Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 188 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4).

### B.   Thomas' Employment

Thomas began working for Austal on February 25, 2005 as a Fitter in the Aluminum Fabrication Department, at the rate of $12/hour. (Doc. 295 at 37 (Exhibit 105-Sealed); Doc. 217-1 at 2; Doc. 217-2 at 12 (Decltn. Lindley)). Thomas received six (6) pay raises dated December 28, 2005 (to $13/hour); March 7, 2006 (to $14.50/hour--"consistent improvement"); May 22, 2006 (to $17/hour); December 19, 2006 (to $17.50/hour); January 12, 2007 (to $18.50/hour --

─────────────────────

it is **ORDERED** that Austal's motion for summary judgment, as to Thomas' denials of training claims, is **GRANTED.**

Further, Austal moved for summary judgment on claims not included in the Third Amended Complaint including race claims for evaluations, pay raises, unwarranted counseling and claims that she was denied pay raises and was denied training based on her gender (Doc. 188 at 4-5, 19-23, 25-26). Similarly, in Opposition Thomas alleges new claims of retaliation which were not included in the Third Amended Complaint including blaming her for the noose and termination. In Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1357 (11th Cir. 1998), the Court held that the "parties frame the scope of the litigation at the time the complaint is filed." Moreover, in Davis v. Coca-Cola Bottling Co., Consol., 516 F.3d 955 (11th Cir. 2008), the court highlighted the difficulty in appellate review of voluminous pleadings involving multiple defendants. In so doing it is clear that the 11th Circuit expects the District Court to "strip the case down and identify each claim and defense." Id. at 982. In an effort to do so the court must rely on the claims asserted in the Third Amended Complaint. Thus, claims not included in the complaint have not been considered and will not be addressed. See Smith v. Books-A-Million, 398 Fed. Appx. 437 (11th Cir. 2010) (Claims not included in the complaint were not required to be considered).

"continued improvement"); and October 1, 2007 (to $19/hour --"Beverly is a good worker and completes all tasks given to her"). (Doc. 217-1 at 4-8, 10; Doc. 295 at 37 (Exhibit 105-Sealed); Doc. 217-2 at 12 (Decltn. Lindley)). Thomas was terminated on August 6, 2008, after Austal discovered false information on her employment application (criminal history). (Doc. 217-2 at 12 (Decltn. Lindley); Doc. 217-3 (Dep. Thomas at 125-126, 136); Doc. 334-16 (8/6/08 Letter)).

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (Dec. 2010). The recently amended Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010). Defendant, as the party seeking summary judgment, bears

the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.  Timeliness of Title VII Claims[3]

A plaintiff may not sue under Title VII unless she first exhausts administrative remedies by filing a timely charge of discrimination with the appropriate agency. See, e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "In a non-deferral state such as Alabama, the deadline for filing is 180 days after the alleged discriminatory act." Carter v. University of South Alabama Children's & Women's Hosp., 510 F. Supp. 2d 596, 606 (S.D. Ala. 2007). See also Tipp v. AmSouth Bank, 76 F. Supp. 2d 1315, 1327 (S.D. Ala. 1998). "If the victim of an

---

[3] Austal contends, *inter alia*, that the following claims are untimely: Thomas' allegations that Robert Sheppard did not assign her jobs, improperly denied her raises and improperly wrote her up for leaving her post before the lunch bell. (Doc. 188 at 8). However, these claims were not alleged by Thomas in the Third Amended Complaint and thus, are not at issue in this case.

employer's unlawful employment practice does not file a timely complaint, the unlawful practice ceases to have legal significance, and the employer is entitled to treat the unlawful practice as if it were lawful." City of Hialeah, Fla. v. Rojas, 311 F.3d 1096, 1102 (11th Cir. 2002). See also Sheffield v. United Parcel Service, Inc., 2010 WL 4721613, *2 (11th Cir. Nov. 22, 2010) (unpublished); Jordan v. City of Montgomery, 2008 WL 2529573, *1 (11th Cir. Jun. 26, 2008) (unpublished). A failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge. Id.

Austal moves for summary judgment on the untimeliness of certain Title VII claims. (Doc. 188 at 7-8). Thomas signed her EEOC Charge (for race, sex, retaliation and "continuing action") on December 26, 2006 and it was "received" on an unknown date in December 2006. (Doc. 217-3 at 90-92). While the EEOC "Received" Stamp is illegible, apart from December 2006, the Court construes all factual allegations in the light most favorable to Thomas on summary judgment, and thus, will assess the timeliness issue as though the EEOC Charge was received as filed on December 26, 2006 (i.e., the earliest date possible). Calculating from December 26, 2006, Austal contends that "[a]ll alleged acts" occurring between Thomas' hire date of February 28, 2005 and June 29, 2006 (180 days prior to December 26, 2006) are time barred under Title VII. (Doc. 188 at 8).

Thomas contends that Austal's interpretation is incorrect and contrary to well established law, as although many acts upon which a plaintiff's Title VII claims rely may occur outside the 180 filing period, "they are part of the same actionable hostile environment claim." (Doc. 317 at 22 (citing McKenzie v. Citation Corp., LLC, 2007 WL 1424555 (S.D. Ala. 2007)). Thomas is correct as it relates to her hostile work environment claim. The U.S. Supreme Court has clarified

that there are different standards for claims involving "discrete acts" versus "hostile environment" allegations. <u>See</u> <u>generally</u> <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002). Under the continuing violation doctrine, a plaintiff's charge of discrimination regarding a hostile work environment is considered timely if "an act contributing to the claim occurs within the filing period," even if "some of the component acts of the hostile work environment fall outside the statutory time period." <u>Id</u>. at 117. As explained in <u>Smiley v. Alabama Dept. of Transp.</u>, Slip Copy, 2011 WL 1188506, *5 (M.D. Ala. Mar. 30, 2011):

> Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion. Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 106.

Thomas' EEOC Charge alleges not just "at least one of the events" but a variety of "events contributing to the hostile work environment" -- sufficient to have placed Austal on notice that such a claim (and various incidents tied to same) exists in the litigation so that Austal could have investigated the details during discovery. Accordingly, Austal's motion on the untimeliness of these Title VII hostile work environment claims (race and gender) is **DENIED.**

Concerning Thomas' Title VII failure to promote claims (race and gender) – as part of the "[a]ll alleged acts" -- the Court finds as follows. Failure to promote claims are "discrete acts." <u>See</u>, <u>e.g.</u>, <u>Morgan</u>, 536 U.S. at 114: "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." <u>Id</u>. (emphasis added). In <u>Morgan</u>, the U.S. Supreme Court drew a distinction between

discrete acts of discrimination and hostile work environment claims, noting that "discrete acts such as…failure to promote….are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." Morgan, 536 U.S. at 114. Additionally, the Eleventh Circuit has held that the denial of a promotion is a one time violation, the present consequences of which only are felt at the present time, and not a continuing violation. See, e.g., Roberts v. Gadsden Memorial Hosp., 835 F.2d 793 (11th Cir. 1988), *modified*, 850 F.2d 1549 (11th Cir. 1988) and Price v. M & H Valve Co., 177 Fed. Appx. 1 (11th Cir. Apr. 7, 2006) (unpublished)).

Thomas asserts that Caucasian co-workers Jason Clark, "Preston," Bryce Goram, William Weaver and Chuck Villagran were promoted over her; she was denied a supervisor promotion on December 21, 2006; and she was denied a supervisor position some time after May 2008. (Doc. 317 at 13-16; Doc. 217-3 (Dep. Thomas at 312, 314-316)). At the outset, there is no information as to "Preston" including even his last name and thus, the record is insufficient to determine the timeliness of this promotion claim. Additionally, Thomas' purported denial of a supervisor position on December 21, 2006 occurred before she signed her EEOC Charge and thus is timely as within the 180 day time frame. Moreover, the denial of a supervisor position some time after May 2008 would not be untimely as it occurred after Thomas signed her December 26, 2006 EEOC Charge. Further, as to Jason Clark, Bryce Goram, William Weaver and Chuck Villagran, the Court finds as follows. Thomas alleges in the Third Amended Complaint that she asked to be trained as a supervisor in August 2006 but that instead, Bryce Goram was trained to be a supervisor (Doc. 37 at 146 at ¶780). As alleged, this failure to promote claim *appears* to have occurred in August 2006, which would be within the 180 day

time frame. If so, the claim would be timely. However, as to Thomas' failure to promote claims regarding William Weaver, Chuck Villagran and Jason Clark, the parties have submitted no evidence as to precisely when these promotions occurred so the Court cannot discern whether they are timely; and the same holds true for the Goram promotion (if not actually occurring in August 2006). Thus, Austal's motion for summary judgment, on the untimeliness of Thomas' Title VII failure to promote claims, is **DENIED.**

With regard to Thomas' disparate pay claims (race and gender), Thomas alleges that she "continually received lower wages than less experienced Caucasian employees." (Doc. 37 at 147 at ¶788). Thus, the claim is framed by Thomas as a discriminatory compensation decision claim (*i.e.*, paychecks received as a periodic implementation of a previously made discriminatory employment decision).[4] As such, Austal's motion for summary judgment on these Title VII pay claims, based on untimeliness, is **DENIED.**

IV. **Austal's Reply**

Austal asserts new arguments in its Reply concerning the timeliness of additional Title VII claims and for other Section 1981 claims. (Doc. 334 at 2-3). The Court will not consider these "new" claims. Austal cannot assert new allegations or arguments raised for the first time on Reply. As set forth recently in New Hampshire Ins. Co. v. Wiregrass Const. Co., Slip Copy, 2011 WL 206191, *2 at note 2 (S.D. Ala. Jan. 20, 2011):

---

[4] As set forth in 29 U.S.C.A. § 626(d)(3): "….an unlawful practice occurs, with respect to discrimination in compensation in violation of this Act, when a discriminatory compensation decision or other practice is adopted, when a person becomes subject to a discriminatory compensation decision or other practice, or when a person is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice."

*See Park City Water Authority v. North Fork Apartments, L.P*., 2009 WL 4898354 at *1 n. 2 (S.D.Ala.2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir.2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc*., 2008 WL 906455 at *8 (S.D.Ala.2008).

In sum, because Austal failed to raise these arguments in its motion for summary judgment, they are impermissible and will not be considered. <u>See</u> <u>also</u> <u>e.g.</u>, <u>Abrams v. Ciba Specialty Chemicals Corp</u>., 663 F. Supp. 2d 1220, 1232 at note 16 (S.D. Ala. 2009) (providing that "new arguments are impermissible in reply briefs"); <u>Evans v. Infirmary Health Services, Inc</u>., 634 F. Supp. 2d 1276, 1285 at note 14 (S.D. Ala. 2009) (instructing that "this Court's general practice is not to consider new arguments raised in a reply brief").

## V.      <u>Section 1981/Title VII – Hostile Work Environment</u>

Racial or sexual harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. <u>See</u>, <u>e.g.</u>, <u>Freeman v. City of Riverdale</u>, 330 Fed. Appx. 863, 865 (11th Cir. 2009) (unpublished).[5]  To establish a prima facie case of hostile work environment and/or racial or sexual harassment under Section 1981 or Title VII, the plaintiff must prove that:

---

[5]  This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.  The Court notes this same rule applies to other Fed. Appx. cases cited herein.

1) she belongs to a protected group; 2) she has been subject to unwelcome (racial or sexual) harassment; 3) the harassment was based on a protected characteristic of the employee (such as race or gender); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010) (unpublished); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002); Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000). See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999); Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1300 (11th Cir. 2007); Hulsey v. Pride Restaurants, LLC, 367 F.3d 1238, 1245 (11th Cir. 2004).

Moreover, to state an actionable Title VII case, plaintiff must establish that the alleged conduct was based on her sex. See, e.g., Blue Cross/Blue Shield, 480 F.2d 1287. "[T]here may be cases when a supervisor makes sexual overtures to workers of both sexes or where the conduct complained of is equally offensive to male and female workers[] . . . .[i]n such cases, the sexual harassment would not be based upon sex because men and women are accorded like treatment." Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982). See also Fitzpatrick v. Winn-Dixie Montgomery, Inc., 153 F. Supp. 2d 1303, 1305-1306 (M.D. Ala. 2001).

Austal contends that: 1) Thomas' evidence of sporadic and isolated incidents of comments and/or conduct during the time she was employed do not meet the severe or pervasive threshold; 2) Thomas makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with her ability to work on a day-to-day basis; 3) Austal

maintained a policy establishing how an employee should report discriminatory conduct, but Thomas failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at 546.

After consideration of the evidence presented by Thomas, the Court finds that there is sufficient evidence, if believed by a jury, that Thomas subjectively perceived her work environment to be racially hostile. Moreover, the Court finds when viewing the facts in the light most favorable to Thomas, that there is an issue of fact whether the harassment was severe and pervasive. The Court also finds that there are issues of fact remaining as to whether Austal is responsible for the alleged hostile environment. Accordingly, summary judgment is **DENIED**

on this claim.

## VI.    Title VII/Section 1981 – Disparate Treatment (Race & Gender)

Thomas contends that she was intentionally discriminated against with respect to "terms and conditions of her employment" because of her race and gender in violation of Title VII and Section 1981.   Specifically, Thomas asserts that based on her race and gender: 1) she "continually received lower wages than less experienced Caucasian employees[]"  (Doc. 37 at 147 at ¶788); and 2) Caucasian co-workers Jason Clark, "Preston," Bryce Goram, William Weaver and Chuck Villagran were promoted over her, she was denied a supervisor promotion on December 21, 2006 and was denied a supervisor position some time after May 2008 (Doc. 317 at 13-16; Doc. 217-3 (Dep. Thomas at 312, 314-316)).

In individual disparate treatment claims, "the plaintiff bears the burden of proving that the employer discriminated against him because of his race."  Cooper v. Southern Co., 390 F.3d 695, 723 (11th Cir. 2004), *overruled on other grounds,* Ash v. Tyson Foods, Inc., 546 U.S. 454, 456-457 (2006).  See also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Where there is no direct evidence of discrimination or a statistical pattern of discrimination, the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies.  Under this framework, the plaintiff must establish a prima facie case of intentional race discrimination.[6] Id. at 802.  See also e.g., E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  If a prima facie case is established, the burden shifts to the employer to articulate a legitimate, nondiscriminatory

---

[6] "Claims of race discrimination under § 1981 are analyzed in the same manner as claims brought under Title VII."  DeLeon v. ST Mobile Aerospace Eng'g, Inc., 2010 WL 500446, *15 (S.D. Ala. Feb. 9, 2010).

reason for its actions.  Id.  Once the employer satisfies its burden, the burden shifts back to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for unlawful discrimination.  Id. at 1272-1273.

## A.    Pay (Race & Gender)[7]

In order to establish a prima facie case of disparate pay, Thomas must establish that she held a position "similar to that of a higher paid employee who is not a member of [his] protected class." Crawford v. Carroll, 529 F.3d 961, 974-975 (11th Cir. 2008) (citing Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994)).  The employee whom the plaintiff identifies as a comparator "must be similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).  See also e.g., Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc., 330 Fed. Appx. 795, 803 (11th Cir. 2009) (unpublished).  It is necessary that a comparator must be "nearly identical" to the plaintiff "to prevent courts from second-guessing a reasonable decision by the employer." Wilson, 376 F.3d at 1091.  See also e.g., Head v. Pitts Enterp., Inc., Slip Copy, 2010 WL 2773376, *13 (M.D. Ala. Jul. 14, 2010); Drake-Sims, 380 Fed. Appx. at 803; Sylva-Kalonji v. Board of School Comm'rs of Mobile Cty., 2009 WL 1418808, *5-6 (S.D. Ala. May 20, 2009); Hill v. Emory Univ., 346 Fed. Appx. 390, 395 (11th Cir. 2009); Beard v. 84 Lumber Co., 206 Fed. Appx. 852, 857 (11th Cir. 2006) (finding the plaintiff and a proposed comparator had different numbers of years of experiences such that they were not similarly situated in all relevant respects).

Thomas asserts that she was paid less than similarly situated Caucasian employees due to

---

[7] While Thomas alleges on summary judgment that she was also denied specific pay raises, no pay raise claims are alleged in the Third Amended Complaint and thus, pay raise claims are not at issue on summary judgment.

her race and gender: "Plaintiff has continued to be unlawfully discriminated against based on her sex and race by Austal USA. She has continually received lower wages than less experienced Caucasian employees." (Doc. 37 at 147 at ¶788). Specifically, Thomas alleges that she was paid less per hour than Jeremy Guy, "Bobby" (LNU), "Preston" (LNU), Jason Clark, Chuck Villagran, Bryce Goram, Joseph Adams, Donald Slover, Jared Kerr and Kevin Lewis.

Austal contends that Thomas cannot establish a prima facie case of race discrimination because in each instance where Thomas has attempted to identify a comparator, she has either failed to submit information to sufficiently identify the employee or failed to demonstrate that the employee is similarly situated in all respects.

Thomas does not submit any evidence or argument regarding subjective similarity of the comparators, such as experience, education, previous salary, or salary demand. Rather, Thomas relies on Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (finding that the plaintiff established a prima facie case of sex discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males) and Mulhall v. Advance Sec., Inc., 19 F.3d 586 (11th Cir. 1994). Based on these cases, Thomas then contends that she has met her burden of producing evidence of a similarly situated comparator "through evidence that job titles are the same or that plaintiff performed the same types of tasks [and job duties] as his/her comparator." (Doc. 317 at 37-38).

However, as the Eleventh Circuit has counseled "[t]he methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." Wilson, 376 F.3d at 1087. In more recent Eleventh Circuit precedent, we have seen the application of this flexibility. Specifically, the Court has pointed to the absence of relevant

similarities amongst comparators, outside of job similarity, and held that plaintiff failed to meet his/her prima facie case.   For example, in Cooper, 390 F.3d 695,  the Court determined that the comparators for purpose of a disparate pay claim were not appropriate, *i.e.* similarly situated, when the plaintiff did not establish: 1) "that the proposed comparators had similar levels of experience or education" id. at 745; 2) "similar levels of seniority" id. at 743; and 3) similar disciplinary records, id. at 741.

When the Eleventh Circuit has reached beyond job similarities in its similarly situated analyses, unrebutted evidence was in the record to show that there existed a relevant factor (*e.g*., experience, education, starting pay demand) which rendered the comparators dissimilar.   For example, in Mack v. ST Mobile Aerospace Eng., Inc., 195 Fed. Appx. 829 (11th Cir. 2006) (unpublished), the court stated "[w]e affirm the court's entry of summary judgment as to this claim because MAE produced uncontroverted evidence that Frye and Wicks were paid more than Mack because each had specialized experience and training in aeronautics and avionics, while Mack had only general electronic training. Consequently, Mack failed to show that they were 'similarly situated in all relevant respects.'"   Id. at 843.   Thus, although the burden of production at the prima facie stage does not shift to the defendant to produce any evidence, the failure of the defendant to point to other traits that are "relevant" to the particular employment situation dictates that the Court should look strictly to job similarities. Therefore, the Court will first examine the record to determine if Thomas has submitted evidence of basic job similarities, and if so, whether there is evidence that the comparators are dissimilar in other relevant respects.

As detailed *supra*, Thomas was hired on February 25, 2005 as a Fitter in the Aluminum Fabrication Department, at the rate of $12/hour. Thomas received six (6) pay raises dated

December 28, 2005 (to $13/hour); March 7, 2006 (to $14.50/hour--"consistent improvement");

May 22, 2006 (to $17/hour); December 19, 2006 (to $17.50/hour); January 12, 2007 (to

$18.50/hour --"continued improvement"); and October 1, 2007 (to $19/hour --"Beverly is a good

worker and completes all tasks given to her").  (Doc. 217-1 at 4-8, 10; Doc. 295 at 37 (Exhibit

105-Sealed); Doc. 217-2 at 12 (Decltn. Lindley)).  Thomas was terminated on August 6, 2008 for

not accurately reporting information, concerning a criminal conviction, in her employment

application. (Doc. 217-2 at 12 (Decltn. Lindley); Doc. 217-3 (Dep. Thomas at 125-126, 136);

Doc. 334-16 (8/6/08 Letter)).

At the outset, concerning "Bobby" (LNU) and "Preston" (LNU), Thomas has failed to

provide any information regarding these proposed comparators to support her disparate pay

claim including even their last names.  In fact, there is no evidence that either Bobby or Preston

are outside of Thomas' protected class (race or gender).  Concerning proposed comparators

Jeremy Guy and Jason Clark, they held different positions than Thomas, who was a fitter.

Specifically, Guy was a welder and Clark was a fabricator. (Doc. 334-6 at 3 (Decltn. Dr.

Steward); Doc. 334-6 at 6). Additionally, the evidence reveals that Chuck Villagran was not paid

more than Thomas during his employment and moreover, he was hired as a welder (not a fitter);

thus, Villagran is not a proper comparator.  (Doc. 334-6 at 4 (Decltn. Dr. Steward); Doc. 334-6 at

6).  Moreover, the record reveals that Joseph Adams made $15/hour as of January 2007, which

was actually $3.50/hour less than Thomas, and he was hired as a Trades Assistant (not a fitter).

(Id.)  Moreover, as for Bryce Goram, Jared Kerr and Donald Slover, the only position indicated

by the evidence in connection with their employment, is the position of Supervisor in the

Fabrication Department. (Doc. 295 at 14, 20, 34 (Exhibit 105-Sealed)).  While there is no

16

evidence indicating what position either Kerr or Goram were initially hired as at Austal, they both applied to be welders, not fitters like Thomas. (Doc. 334-9 at 11, 16). Thomas has not presented any evidence of record indicating that either Kerr or Goram were hired as fitters. Further, while there is no evidence indicating what position Slover was initially hired as at Austal, he did apply to be a Fitter. (Doc. 334-9 at 24). Slover was hired on February 28, 2005. (Doc. 295 at 34 (Exhibit 105-Sealed)). Even assuming that Slover was hired as a fitter, he was hired _at an unknown starting hourly rate_. Thomas has submitted no admissible evidence as to Slover's starting rate (_i.e._, that he was hired as a Fitter in the Fabrication Department at $13.50/hour as she claims (Doc. 317 at 12 at note 10)).

As such, Austal's motion for summary judgment as to Thomas' claim for disparate pay, based on proposed comparators Bobby," "Preston," Clark, Guy, Villagran, Adams, Goram, Kerr and Slover, is **GRANTED.**

Concerning Lewis, the only position indicated from the evidence, in connection with his employment, is the position of LCS Foreman in the Fabrication Department. (Doc. 295 at 22 (Exhibit 105-Sealed)). Lewis was hired on June 27, 2005. (Id.) Lewis applied for any "open" position. (Doc. 334-9 at 20). A notation on Lewis' employment application indicates that he was hired at $15.25/hour. (Doc. 334-9 at 23). Austal does not dispute the assertion that he was hired as a fitter. As such, Lewis would have been hired approximately four (4) months after Thomas at a rate which was $3.25/hour _more_ than Thomas _for the same position_. The record reveals further, that Thomas received a $1 raise to $13/hour on December 28, 2005; and that Lewis received no raises in 2005. (Doc. 295 at 22, 37 (Exhibit 105-Sealed)). By the end of February 2006, Thomas had not received any additional raises and was still earning $13/hour, whereas

Lewis had received two raises to $17.50/hour and $20.50/hour (combined a $5.25 raise). (Id.) On March 7, 2006, Thomas received a $1.50 raise to $14.50/hour. (Id.) As of the end of May 2006, both Thomas and Lewis again received raises: Lewis, a $2.50 raise, to $23/hour; and Thomas, a $2.50 raise, to $17/hour. (Id.) While Thomas continued to receive raises (January 12, 2007 to $18.50/hour and October 1, 2007 to $19/hour), there is no evidence indicating that Lewis received any additional raises after May 2006. (Id.) In sum, even after more than 2½ years of employment, Thomas still earned $5/hour *less* than Lewis. It appears then, that Lewis received pay raises more frequently, and in higher amounts, than Thomas.

Given the foregoing, the Court turns to whether Thomas and Lewis were similar in other relevant respects (*i.e.*, work experience and training). According to Austal's Manager of the Fabrication Department Harley Combs, Lewis "was more educated and more experienced" than Thomas. (Doc. 334-9 at 4 (Decltn. Combs at ¶9)). According to Combs, Lewis had an industrial electrician degree from Faulkner AVC; had prior supervisor experience and could read blueprints and drawings. (Id.) Combs notes that at the time he was hired, Lewis had seven (7) years experience in sheet metal fabrication and modifications with Mobile Aerospace Engineering, where he was leading a 10-35 man crew and earning $15.05/hour. (Id.) See also Doc. 334-9 at 20-23 (Lewis' Employment Application)). In contrast, according to Combs, Thomas had most recently worked four years earlier for a construction company where she "put up moulding," and had 18 months of fitter experience at Bender shipyard five (5) years before she applied at Austal. (Doc. 334-9 at 3 (Decltn. Combs at ¶6)). Thomas' employment application reveals that she had completed two (2) years of college at "NYC" in New York; she could operate saws and a jig and had her own tools; she was employed by B.T Express Clearing & Construction, Co. as a lead

18

man in 1999; she worked at Bender shipyard for 20 months as a shipfitter/welder from 2000-2001; she worked at J&J Construction in metal studding and pulling up moulding for approximately 1½ years from 1999-2001; and she had worked for 6 months as a scaffold builder for Hoffman Marine in 1999.  (Doc. 334-9 at 8-9).

Given the foregoing, the Court finds there is an issue of fact as to whether Thomas' lower wage was based on race and/or gender discrimination.  As such, Austal's motion for summary judgment is **DENIED** on this claim.

## B.    Promotion (Race & Gender)

To establish a prima facie case of failure to promote, Thomas must show that: 1) she is a member of a protected class; 2) who sought and was qualified for positions that the employer was attempting to fill; 3) despite her qualifications he was rejected; and 4) the employer either continued to attempt to fill the positions or in fact filled the positions with persons outside the plaintiff's protected class.  See, e.g., Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872 (11th Cir. 2007) (citing Crawford v. Western Electric Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980)).  A plaintiff claiming that he was discriminatorily denied a promotion usually must show that he actually applied for the position as part of his prima facie case.  Taylor v. Runyon, 175 F.3d 861, 866 (11th Cir. 1999); Combs v. Plantation Patterns, 106 F.3d 1519, 1539 at n. 11 (11th Cir. 1997).  Where an employer has an informal promotion procedure (i.e., job openings are not posted or applications are not required), however, an employee may establish this element by showing that the position was available and that the employer had some reason or duty to consider him for same. Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-1134 (11th

Cir. 1984).

Thomas asserts that Caucasian co-workers Jason Clark, "Preston,"[8] Bryce Goram,[9] William Weaver[10] and Chuck Villagran[11] were promoted over her; that she was denied a supervisor promotion on December 21, 2006; and that she was denied a supervisor position some time after May 2008. (Doc. 317 at 13-16; Doc. 217-3 (Dep. Thomas at 312, 314-316)).[12]

---

[8] Thomas testified that "Preston" worked at Austal and within six (6) months became a supervisor; "[h]e worked under me. I taught him. The next thing you know, he was a supervisor. Didn't know shit when he was under me and didn't do nothing when he was after me." (Doc. 217-3 (Dep. Thomas at 312)). He "came from a restaurant[.]" (Doc. 285-25 (Dep. Thomas at 315)).

[9] Thomas testified that he was 19 years old and he "came in trying to show folks what to do, which he didn't' know what he was doing. Eventually he did. I can't take from him, eventually he learned….but he came in because they wanted to make him a supervisor, you know." (Doc. 285-25 (Dep. Thomas at 195-196, 198)).

[10] Thomas testified that he was an "excellent welder, excellent. I couldn't take that from him. Fitting, he never knew nothing about. Most supervisors or lead person that take over the position of a crew…have knowledge of..welding and fitting." (Doc. 285-25 (Dep. Thomas at 210-211)). One day, Thomas' supervisor Robinson pulled her aside and said "I'm sorry, but we going to have to take the lead position from you and give it to William Weaver, but we want you to continue to show everybody what to do…no explanation, no anything…When they took it from me, they gave him..his white hat, his radio, and his raise….I eventually went on..left his crew….I was angry. I went and I complained to him…to human resources….to Scott Pearson…to all of them, and nothing was done." (Id. (Dep. Thomas at 211-212, 224-225)). "Mr. Weaver didn't' know how to do nothing…he was an excellent welder. But a supervisor, we build ships…didn't nobody know what to do…I…figured it out and did it myself…" (Id. (Dep. Thomas at 226)).

[11] Thomas testified that "he didn't know nothing…he didn't know how to read a blueprint…to put up a..simple gusset. Measure…All he knew how to do was sweep…" (Doc. 285-25 (Dep. Thomas at 233)). When Thomas was moved to work under Supervisor Ron Moore, "all the supervisors…most of the supervisors on the ship knew my skills and ability. As soon as I got with him, he gave Chuck the lead man position. He came to me….I couldn't give it to you because you just came on my crew. I was like, that's fine. I understand that." (Id. (Dep. Thomas at 236)). Thomas "started taking over the crew…little by little because Chuck really didn't know that much…eventually…I became…Ron's lead person." (Id. (Dep. Thomas at 236-237)).

[12] In so doing, Thomas summarily adopts and incorporates "the arguments and evidentiary citations" contained on pages 31-34 of Plaintiff George Wells' opposition to summary judgment. (Doc. 317 at 39 at note 37). There is no basis for such "adoption and incorporation," particularly given that each plaintiff's evidence is considered in isolation. Further, even if the Court permitted same, the pages
(Continued)

Austal contends that Thomas is unable to establish a case of discrimination because she has failed to provide any evidence concerning her proposed comparators. Austal explains that Thomas has failed to identify Caucasian employees who are "nearly identical" in all relevant respects including experience, background, and disciplinary history.

As to the prima facie case, Austal conflates the prima facie requirements of a discriminatory pay claim with those for a failure to promote claim. Similarly situated comparators are not necessary to establish a prima facie claim of failure to promote, rather plaintiff must only show that the position was filled with a person outside his protected class. See Harrington v. Disney Regional Ent., Inc., 276 Fed. Appx. 863, 872-873 (11th Cir. 2007) (providing that "[t]he elements are different for disparate pay and promotion claims…").

The Court finds that Thomas has established a prima facie case for the proposed comparators and for the promotions at issue, except for "Preston" as there is no evidence of record relating to him – particularly whether he is even outside of her protected class. However, Austal has articulated a legitimate non-discriminatory reasons for promoting Clark, Goram, Weaver and Villagran to supervisory positions over Thomas: Thomas lacked the same qualifications and "cannot show that she was qualified for the job." As support, Austal relies upon the Declaration of Manager Harley Combs which reveals as follows: Clark had "significant experience"–namely, 10 years of construction and fabrication experience erecting steel buildings (Doc. 334-9 at 5 (Decltn. Combs)); Goram had more experience, as when he applied he had 1½ years of steel welding experience, and once hired, was given responsibility "for a small project,"

referenced and relied upon by Thomas actually relate to disparate pay, not failure to promote and thus, are irrelevant to the promotion claim.

was promoted to supervisor in 2006, and later was promoted to foreman (Id. at 3 (Decltn. Combs)); Weaver had "extensive prior experience" that Thomas lacked, with 8 years of welding experience at Northrop Grumman and "was one of the most experienced welders[]" and had completed 2 years of training at Jefferson Davis Community College (Id. at 4-5 (Decltn. Combs)); and Villagran was attending aluminum welding school when hired and had prior experience as a team leader and thus "had more leadership experience[]" (Id. at 4 (Decltn. Combs)).

Thomas' Employment Application reveals that when she applied at Austal in 2005, she had 20 months of experience at Bender's shipyard (as a ship fitter/welder) and other shipyard and construction experience (metal studding and pulling apart molding and working as a scaffold builder since February 1999), as well as had a high school degree and had attended two (2) years of college at New York College. (Doc. 217-8 at 3-4). Thomas's prior job was also working as a lead man for a construction company (since September 1999). (Id. at 4).

Given Thomas' work experience and repeated requests for supervisory positions, as well as actual experience leading crews at Austal, the Court finds that there is an issue of fact as to whether the decision not to promote Thomas was based on gender and/or race discrimination. As such, Austal's motion as to these comparators for failure to promote is **DENIED.**

Regarding Thomas' requests for supervisory positions in December 21, 2006 (Doc. 317 at 16), in May 2008 to supervise a library (Id. at 17) and "at numerous other times during her employment," the Court finds as follows. First, as to the December 21, 2006 promotion (Doc. 285-25 (Dep. Thomas at 371-375)), Thomas has not submitted evidence that the employee hired for this promotion was outside of her protected class, or even identified who filled this position.

Thomas then, has not established her prima facie case as to this promotion. As such, Austal's motion for summary judgment as to the December 21, 2006 promotion is **GRANTED.**

Second, as to the May 2008 promotion, Thomas testified that she applied to be a supervisor for a "little library" at Austal, but was denied, "[b]ut at that time I didn't get a reason. It wasn't my attitude, it wasn't my skills and ability, they just didn't give it to me." (Doc. 217-3 (Dep. Thomas at 284)). Thomas has not submitted evidence that the employee hired for this promotion was outside of her protected class, or even identified who filled this position. Rather, Thomas then, has not established her prima facie case as to this promotion. As such, Austal's motion for summary judgment as to the May 2008 promotion is **GRANTED.**

Thomas also testified that some time after May 1, 2008, Austal posted a supervisor position and for this posting, Austal made every Caucasian supervisor who had received their position without applying for it, reapply for their jobs. (Doc. 185-25 (Dep. Thomas at 284-286)). Thomas was interviewed for the supervisor position but did not receive it, but claims that all of the less qualified Caucasian males were rehired into their positions and that even though she was as qualified or more qualified than these Caucasian males, she was not given a reason as to why she was denied the promotion. (Id. (Dep. Thomas at 284, 286, 301)). However, some time later, Matt Farringdon told Thomas that she had not been promoted because the Caucasian males did not like the way she spoke to them. (Id. (Dep. Thomas at 379-380)).

The Court finds that there is an issue of fact regarding whether the failure to promote Thomas at this point was based on race and/or gender discrimination such that Austal's motion for summary judgment is **DENIED.**

## VII.   <u>Retaliation</u>

Thomas' retaliation claims, as alleged in the Third Amended Complaint, consist of the following specific allegations:

> After complaining about the racially and sexually discriminatory conduct, graffiti and epithets, B. Thomas was retaliated against in the terms and conditions of her employment, including having her supervisory "fill-in" status taken away. Furthermore, Defendant has continued to retaliate against B. Thomas by refusing to provide her any compensation despite the recommendation of her doctor, a doctor chosen by Austal USA, to take time off from work to recover from the emotional harm caused by the incident of seeing the noose hanging from the break room on May 21, 2008, as well as other racial and sexual harassment experienced on a continued and repeated basis by B.Thomas and other African-American employees of Defendant.
>
> * * *
>
> Thomas has been subjected to further retaliation by Austal USA through allegations of alleged time theft. In addition, Thomas has been threatened with arrest by Austal USA management in connection with the alleged time theft.
>
> Furthermore, despite numerous attempts by Thomas, she has continued to be retaliated against by being denied any of her wages Austal USA withheld, although properly due to her, after these allegations of time theft were determined to be completely unwarranted.

(Doc. 37 at 144-145 at ¶¶770, 772, 773).

To establish a prima facie case of retaliation, a plaintiff must prove that: 1) she engaged in statutorily protected activity; 2) she suffered a materially adverse action; and 3) there was a causal connection[13] between the protected activity and the materially adverse action.[14] <u>Goldsmith</u>

---

[13] To establish a causal connection, a plaintiff must show that the decision maker was aware of the protected conduct at the time of the adverse action.  <u>See</u>, <u>e.g.</u>, <u>Goldsmith</u>, 513 F.3d at 1278; <u>Brungart v. BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000); <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1220 (11th Cir. 2004).

[14] An action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington Northern</u>, 548 U.S. at 68 (quotation omitted).

v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008) (citing Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)); Nichols v. CSG Sys., Inc., 245 Fed. Appx. 937, 940 (11th Cir. 2007); Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006).

The Court finds that there is an issue of fact regarding whether Austal retaliated against Thomas such that Austal's motion for summary judgment on this claim is **DENIED.**

## VIII.  Punitive Damages

Thomas seeks an award of punitive damages against Austal.  Upon consideration, the Court finds that resolution of the punitive damages issue is a matter better suited for trial.  Thus, it is **ORDERED** that Austal's motion for summary judgment regarding Thomas' punitive damages claim is **DENIED** as her request for punitive damages is **CARRIED TO TRIAL.**

## IX.  Conclusion

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **DENIED** as to Thomas' hostile work environment claims; **DENIED in part** and **GRANTED in part** as to Thomas' failure to promote claims; **GRANTED** as to Thomas' training claims; **DENIED in part** and **GRANTED in part** as to Thomas' disparate pay claims; and **DENIED** as to Thomas' retaliation claims. Thomas' punitive damages request is **CARRIED TO TRIAL.**

**DONE** and **ORDERED** this the **7th** day of **November 2011.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**