# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NELSON BUMPERS, *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| v. | ) | CIVIL ACTION 08-00155-KD-N |
| | ) | |
| AUSTAL, U.S.A., L.L.C., | ) | |
| **Defendant.** | ) | |

## SUMMARY JUDGMENT ORDER ON REMAND

This matter is before the Court is Defendant's motion for summary judgment (Docs. 166, 167), Plaintiff's Opposition (Doc. 302), Defendant's Reply (Doc. 350), and the Eleventh Circuit's remand (Doc. 821).

## I.     Factual Background[1]

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination/harassment on the basis of race.  (Doc. 1). Plaintiff Nelson Bumpers ("Bumpers") asserts a claim for hostile work environment in violation of 42 U.S.C. § 1981 and Title VII.  (Doc. 37 at 54-59).[2]

On May 26, 2011, this Court issued summary judgment in favor of Austal as to Bumpers' hostile work environment claim, denial of training claim, retaliation claim, and termination claim, but carried to trial Bumpers' failure to promote claim.  (Doc. 375).   Bumpers' case was set for a March 2012 jury trial; however, in February 2012, Bumpers voluntarily dismissed his

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] All other claims have been previously dismissed, abandoned, or judgment granted for the defendant.

promotion claim and his trial was cancelled. (Docs. 709, 717). Bumpers' summary judgment ruling was appealed (USCA#12-11507-EE) (Doc. 753), and on June 17, 2014, the Eleventh Circuit vacated the summary judgment order as to the claim of a racially hostile work environment. (Doc. 821 at 31). The Eleventh Circuit found that a reasonable jury could find that Bumpers' work environment was objectively hostile, and remanded his claims of a racially hostile work environment with instructions for this Court "to determine whether Austal is entitled to summary judgment on the ground that it was not directly or vicariously liable for the harassment or whether the employees' claims should proceed to trial." (Id. at 3, 31, 38). The mandate issued August 8, 2014. (Doc. 826).

### A.    Austal

Defendant Austal USA, L.L.C. ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 167 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4). Job classifications within Fabrication include Trade Assistant (trainee), Apprentice, Welders, Fitters and Fabricators. (Id. at 4).

### B.    Bumpers' Employment

Nelson Bumpers began working for Austal on November 13, 2000 as a Welder in the Aluminum Fabrication Department at the rate of $12/hour. (Doc. 167-1 (Dep. Bumpers at 48, 77); Doc. 167-2 at 6 (Decltn. Lindley)). Prior to being hired by Austal, Bumpers was a first class flux core Welder. (Doc. 285-7 (Dep. Bumpers at 83-84)). Once hired, Bumpers went to school

at Austal to become a first class welder in aluminum and subsequently became a shipfitter/welder. (Id. (Dep. Bumpers at 82-84)). Initially Bumpers was paid $12/hour. (Doc. 167-1 (Dep. Bumpers at 77)). By June 2006, Bumpers earned $19/hour. (Doc. 167-1 (Dep. Bumpers at 77-78); Doc. 167-2 at 6 (Decltn. Lindley)). On June 21, 2006, Bumpers was fired for misconduct -- fighting on the job. (Doc. 167-1 at 52-53; Doc. 167-1 (Dep. Bumpers at 12, 13, 27-28, 35); Doc. 285-7 (Dep. Bumpers at 89)); Doc. 167-2 at 6 (Decltn. Lindley)).

### C.      Austal's Anti-Harassment & Non-Discrimination Policy

Austal submitted evidence of two (2) anti-harassment and non-discrimination policies: an "April 2006 Issue F" policy, and a "November 2007" policy.[3] See, e.g. Doc 167-2 at 3 at note 1 (Decltn. Lindley); Doc. 167-2 at 15-45 (the April 2006 Issue F policy); Doc. 167-2 at 46-66 (the November 2007 Issue A policy). Bumpers submitted Austal's pre-April 2006 policies: a "November 2005 Issue E" policy and an "April 2004 Issue D" policy. (Docs. 283-55 at 11 and 283-56 at 25).[4]

The April 2004, November 2005, April 2006 policies all instruct employees to report complaints to his/her supervisor or, if not comfortable doing so, to the Departmental Manager:[5]

> Any employee suspecting a violation of this policy, or who in any way feels uncomfortable with the actions of Company Supervisors, employees or outsiders is urged to inform his or her Supervisor. If for any reasons the employee does not feel comfortable discussing the situation with his or her immediate Supervisor, he or she should report the matter to the Departmental Manager…Supervisors are **required** to report suspected harassment and any allegations of harassment to the Departmental

---

[3] Which Austal describes as in effect since November 2007 through the present.

[4] As Bumpers was terminated in June 2006, the Court has limited its review to the policies in effect during his employment.

[5] Based on the record and as indicated by Austal, the Departmental Managers (or Coordinators) manage specific departments, such as Aluminum Fabrication, and within those departments, there are Supervisors who supervise the employees working with said department. (Doc. 283-48 (Austal's 3/7/07 EEOC Position Statement)).

Manager.

(Doc. 167-2 at 37, Doc. 283-56 at 25, Doc. 283-55 at 11 (emphasis in original)).  (Doc. 284-3 (Dep. Lindley[6] I at 238-240, 245-246) (testifying that such was the procedure as to the 2004, 2005 and 2006 policies, and confirming that nothing in those policies identifies HR as an avenue for complaints).  No evidence has been submitted to the Court that Bumpers signed any policy when he was first employed, rather Bumpers signed _a_ policy on December 1, 2005.  (Doc. 167-1 (Dep. Bumpers at 52)).

Bumpers testified that he understood the policies' complaint procedure at Austal was to report up the chain of command and report harassment/discrimination to his supervisors.  (Doc. 167-1 (Dep. Bumpers at 54)).  Bumpers reported some incidents of racial harassment to his supervisors.[7]  Specifically, Bumpers asserts that some time after 2005, he heard a Caucasian supervisor "Big Joe" in conversation with "one of them Australian guys" (a Caucasian co-worker) both use the phrase "blue gums."  (Doc. 167-1 (Dep. Bumpers at 54-58)).  Bumpers reported the incident to his supervisor Jeremy Gainous (the racial comment and that they were talking about "blue gums, black people and stuff like that[]").  (Id. (Dep. Bumpers at 55-58)).  Supervisor Gainous told Bumpers "he'd look into it[]" and that "blue gum" was a reference to black people.  (Id. (Dep. Bumpers at 57, 59-60)).  Bumpers never heard back from Gainous.  (Id. (Dep. Bumpers at 58)).  Bumpers was also subjected to racially offensive slurs in graffiti in the

---

[6] Austal's Rule 30(b)(6) representative and HR Benefits Coordinator.

[7] Bumpers testified that he was regularly subjected to displays of the Confederate flag, which he finds racially offensive.  (Doc. 167-1 (Dep. Bumpers at 110, 113-114)).  Bumpers saw the flag displayed on Caucasian co-workers' "rebel shirts[]" -- "shirts and all kind of stuff[]" and nothing was ever done about it. (Id.); Doc. 285-7 (Dep. Bumpers at 110)).  However, Bumpers did not report the Confederate flag imagery.  (Doc. 167-1 (Dep. Bumpers at 114)).

bathrooms on the walls "all over the walls[]" "all the time." (Doc. 167-1 (Dep. Bumpers at 55, 110)). Bumpers reported the graffiti to Caucasian supervisors Ricky McQueen and "Big Joe." (Id. (Dep. Bumpers at 55)). While Austal would "blacken[] the wall out" the graffiti continued. (Id. (Dep. Bumpers at 110)). According to Austal's HR Benefits Coordinator and Rule 30(b)(6) representative Lindley, she has no evidence to dispute that Bumpers complained to supervisors regarding racial discrimination. (Doc. 284-5 (Dep. Lindley III at 352)).

Austal appears to argue that Bumpers did not report as required by the policy because he was required to report any alleged incidents to HR. (Doc. 167 at 13). There is no evidence to support this position. In the policies, an employee was only "urged to inform" his supervisor, who was then required to report to the Department Manager. There is no mention of HR in the applicable policies. (Doc. 167-2 at 36-37). (See, e.g., Doc. 284-3 (Dep. Lindley I at 256, 258-260); Doc. 285-1 (Dep. Keeler at 29, 61); Doc. 284-9 (Dep. Carver I at 55-58)). Further, Austal's Rule 30(b)(6) representative and HR Benefits Coordinator Lindley testified that employees are instructed to follow the chain of command and were not allowed to go to HR until they had given each person at each step, time to address the complaint. (Doc. 284-3 (Dep. Lindley I at 258, 260)). Lindley testified that this was the company policy, as far as the complaint procedures are concerned. (Id. (Dep. Lindley I at 238-239)). Lindley also testified that nothing that Austal covers in orientation mentions HR, as far as it being a reporting mechanism. (Id. (Dep. Lindley I at 243, 245-246)).

Additionally, according to those responsible for enforcement of the policies at Austal (Senior Management, Security, and HR), during the relevant time period there was no oversight or monitoring of supervisors' handling of complaints, there was no training of supervisors with

regard to complaints, and there was no policy/procedure as to how supervisors should handle complaints.  (See, e.g., Doc. 284-9 (Dep. Carver I at 60); Doc. 284-10 (Dep. Carver II at 77, 244); Doc. 285-2 (Dep. Browning at 15, 56-57); Doc. 284-3 (Dep. Lindley I at 174, 179, 243-245, 262, 275-277, 315-317); Doc. 284-4 (Dep. Lindley II at 74); Doc. 284-7 (Dep. Friedlieb I at 45-46, 50); Doc. 284-8 (Dep. Friedlieb II at 122-123, 127)).

Moreover, while there is evidence of Bumpers' complaints about harassment for being called "blue gums" and racial graffiti/imagery in the bathrooms, Austal submitted no evidence of its response *to his complaints* while he was employed.  Rather, Austal submitted evidence with regard to responses it took, in general, to racial/harassment complaints *after* Bumpers was terminated.

## II.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (Dec. 2010).  Amended Rule 56(c) governs Procedures, and provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.

> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

## III.    Section 1981/Title VII – Hostile Work Environment (Race)

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th

Cir. 2009).[8]   To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability.  See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).  See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

The first three (3) prima facie elements of a hostile work environment are satisfied and not disputed by the parties. However, as to remaining elements, Austal contends that: 1) Bumpers' evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Bumpers makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal's policy established that an employee must report discriminatory conduct to Human Resources, but Bumpers failed to report certain conduct to anyone, as well as failed to report generally to Human Resources; and 4) Austal took reasonable preventative and corrective/remedial measures.

---

[8] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2.  The Court notes this same rule applies to other Fed. Appx. cases cited herein.

A.     <u>**Severe or Pervasive**</u>

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." <u>Miller</u>, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. <u>McCann</u>, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. <u>Reeves</u>, 395 Fed. Appx. at 546. <u>See also</u> <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787-788 (1998); <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 647 (11th Cir. 1997) (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." <u>Reeves</u>, 395 Fed. Appx. at 546. There is sufficient evidence, if believed by a jury, that Bumpers subjectively perceived his work environment to be racially hostile.

As established by the Eleventh Circuit in its remand:

The record presents a genuine dispute of material facts that Bumpers's work environment was objectively hostile. Bumpers worked for Austal for five and a half years. He saw racist graffiti "all the time" when he used the men's restrooms, and he saw his white coworkers wear shirts with Confederate flag apparel "numerous times." He also twice heard his supervisor call black people "blue gums." *See, e.g.*, *Sherpell v. Humnoke Sch. Dist. No. 5*, 619 F. Supp. 670, 678 (E.D. Ark. 1985) (recognizing "blue-gums" as a racial slur). The second time, the supervisor approached him directly and asked if he knew that "there was a tree called blue gum." Bumpers was aware of the noose in the breakroom, but was not one of the employees who discovered it.

Bumpers raises a disputed issue that the harassment he experienced was frequent, severe, and humiliating. He frequently saw the racist graffiti in the men's restrooms and also

frequently saw white employees wearing a Confederate flag shirt. He also heard his supervisor call black people "blue gums," and his supervisor asked him specifically about the derogatory term. That harassment, although infrequent, was severe and humiliating. He heard about the noose, which is a severe form of racial harassment, but his experience was less severe because he did not see it firsthand. Although it is a closer question than Hollis, Reed, Pettibone, and Law, a reasonable jury could find that his work environment was objectively hostile.

(Doc. 821 at 21-22).

### B.     Employer Liability- Faragher/Ellerth Affirmative Defense

With the fourth element satisfied, this Court turns to the fifth element: "…the employer[]…[Austal] is responsible for the hostile work environment under…a theory of vicarious or direct liability[]"[9] unless Austal can avail itself of the Faragher/Ellerth affirmative defense.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), the Supreme Court held that employer liability is automatic when the supervisor's harassment culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 807, 808; Ellerth, 524 U.S. at 762, 763. Where no such action has occurred, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 745. But an employer may avoid vicarious liability by raising as an affirmative defense that it: 1) exercised reasonable care to prevent and correct promptly any harassing behavior, and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, 524

---

[9] Miller, 277 F.3d at 1278.

U.S. at 807, 809; <u>Miller</u>, 277 F.3d at 1278.  This is known as the <u>Faragher/Ellerth</u> affirmative defense.  For an employer to avail itself of this defense and be found not liable, "[*b*]*oth elements must be satisfied*…the *defendant bears the burden of proof on both elements*." <u>Frederick v. Sprint/United Mgmt. Co.</u>, 246 F.3d 1305, 1313 (11th Cir. 2001) (citations omitted) (emphasis added) (holding that factual issues existed regarding employer's complaint procedure and employee's use of it, precluding summary judgment on <u>Faragher/Ellerth</u>).  If, however, neither element is satisfied, the employer is liable for the harassment.  <u>See</u> *supra*.  <u>See also</u> <u>Joens v. John Morrell & Co.</u>, 243 F.Supp.2d 920, 933 (N.D. Iowa 2003) (providing a helpful flow chart).

Austal's liability is automatic if a supervisor's harassment culminated in a tangible employment action as to Bumpers (*e.g.*, discharge, demotion, undesirable reassignment).   There is no dispute that Bumpers was fired in June 2006.  Austal asserts that Bumpers was terminated for fighting with co-workers.   In the operative complaint, Bumpers alleged that he was terminated due to his race and in retaliation for his good faith complaints about the racial discrimination and harassment at Austal.  (Doc. 37 at 57 at ¶261, 263).  Bumpers testified that he believes he was terminated because of his race.   (Doc. 167-1 (Dep. Bumpers at 47)).  Nevertheless, while there is evidence of supervisor harassment, on summary judgment Bumpers submitted no evidence of any harassment *by a supervisor connected to and/or culminating in a tangible employment action* (including his June 2006 firing).   Additionally, Bumpers does not allege as such on summary judgment.  Moreover, this Court previously concluded that Bumpers waived his retaliation and termination claims, and those rulings were not vacated by the Eleventh Circuit.   Thus, there is no evidence before the Court showing a *causal* relationship between Bumpers' termination and any alleged racial harassment by a supervisor, and as such, no

evidence of a tangible employment action on summary judgment. See, e.g., Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005) (discussing a similar situation where a plaintiff failed to show the causal relationship on summary judgment).

When there is no evidence that a harassing supervisor took a tangible employment action against an employee, courts assess whether the harassment is nevertheless severe or pervasive enough to constitute a hostile work environment. Joens, 243 F.Supp.2d at 933. If yes, *as is the case here (see supra)*, the employer is vicariously liable for a supervisor's harassment unless the employer can prove both elements of the Faragher/Ellerth affirmative defense. Id.

First, for "prevention," there is no uniform test for determining whether an employer's policy demonstrates that it exercised reasonable care, and the mere existence of a formal anti-harassment policy does not satisfy this first prong. See, e.g. Frederick, 246 F.3d at 1313 (noting that the employer failed to establish that its policy contained reasonable complaint procedures); Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1237, 1251 (M.D. Ala. 2001) (concluding that the employer failed to establish the affirmative defense that it was diligent in preventing and correcting harassment, and that complaining employees had not taken advantage of opportunities for redress provided by employer). An employer's policy fulfills its "prevent harassment" obligation if the employer promulgates a policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress[;] and the policy must not be administered "in bad faith" or be otherwise "defective or dysfunctional." Dinkins, 133 F. Supp. 2d at 1251 (citing Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997) and Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1298 (11th Cir. 2000)). "A policy is 'defective' if those responsible for its enforcement lack training and knowledge

sufficient to recognize, prevent and correct workplace discrimination." Id. Essentially then, an employer can establish that it exercised reasonable care to prevent harassment by showing that it promulgated and effectively disseminated a clear anti-harassment policy with complaint procedures to its employees, see Faragher, 524 U.S. at 807-808 and Ellerth, 524 U.S. at 765, *so long as* the complaint procedures "meet the minimum requirements for the *Faragher* affirmative defense…[and do] not require…the employee to complain to the offending supervisor or through the supervisor's chain of command and…provide[] multiple avenues of lodging a complaint to assessable, designated representatives." Madray, 208 F.3d at 1299 (determining the policy was sufficient "because the procedures did not require that the employee complain to the offending supervisor or through the supervisor's chain of command and the procedures provided multiple avenues of lodging a complaint to assessable, designated representatives[]"). See also e.g., Olson v. Lowe's Home Ctrs. Inc., 130 Fed. Appx. 380, 389 (11th Cir. 2005) (finding satisfaction of the first prong as the policies enabled employees to bypass harassing supervisors and provided several different avenues for employees to report harassment); Reyna v. ConAgra Foods, Inc., 506 F. Supp. 2d 1363, 1375 (M.D. Ga. 2007) (holding that material issues of fact, as to whether employer took reasonable care to prevent and properly correct harassment, precluded summary judgment for employer, based on existence of procedures for addressing discrimination issues not utilized by claimants). This "requires…a clear and known policy against workplace harassment…[including] permit[ting] employees to bypass supervisors and retain some vestige of anonymity." Bury v. Sky Chefs, 2011 WL 197383, *6 (S.D. Fla. Jan. 20, 2011) (defining the first prong of Faragher/Ellerth). Inherent defects exist when a policy's complaint procedures do not "meet the minimum requirements" for the Faragher affirmative defense: provide employees

13

"*multiple* avenues of lodging a complaint *to assessable, designated representatives*" *outside* of the supervisory chain of command (do not require an employee complain to the offending supervisor or through the supervisor's chain of command).  Madray, 208 F.3d at 1299 (emphasis added).  Moreover, "a policy is [considered] 'defective' if those responsible for its enforcement lack training and knowledge sufficient to recognize, prevent, and correct workplace discrimination."  Dinkins, 133 F. Supp. 2d at 1251.

Concerning the second prong of "prevention" -- whether the employer took reasonable care to "correct promptly" any harassment -- "the employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment...then it is liable unless it took prompt corrective action."  Madray, 208 F.3d at 1299 (citing Dees v. Johnson Controls World Services, 168 F.3d 417, 422 (11th Cir. 1999)).  An employer is directly liable for co-worker harassment if the employer knew or should have known of the conduct but failed to take prompt remedial action.  See, e.g., Miller, 277 F.3d at 1278; Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000).  "Actual notice is established by proof that management knew....constructive notice will be found where the harassment was so severe and pervasive that management should have known of it."[10]  Miller, 277 F.3d at 1278.  "This inquiry is facilitated by the identification of the 'appropriate Company representative' to whom employees should register their complaints" in the employer's policy.  Madray, 208 F.3d at 1299-1300.  Once it is determined that the employer had adequate notice, whether the employer

---

[10]  For constructive notice, courts also consider: 1) the remoteness of the location of the harassment as compared to the location of management; 2) whether the harassment occurs intermittently over a long period of time; 3) whether the victims were employed on a part-time or full-time basis; and 4) whether there were only a few, discrete instances of harassment.  See, e.g., Miller, 277 F.3d at 1278; Allen, 121 F.3d at 647.

took timely corrective action depends upon whether it responded in a reasonably prompt manner to the employee's harassment complaint. See, e.g., Frederick, 246 F.3d at 1316. Thus, when the employer had notice is key "to determine the alacrity of its response[;]" the employer is liable unless it took "prompt corrective action." Madray, 208 F.3d at 1299; Dees, 168 F.3d at 422. See also e.g., Coates v, Sundor Brands, Inc., 164 F.3d 1361, 1364 (11th Cir. 1999) (noting that the appropriate inquiry at this stage is to ask is what measures an employer (in that case via an HR Manager) reasonably believed had been taken to address the problem).

Second, courts assess whether the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm.[11] Joens, 243 F.Supp.2d at 933. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the [affirmative] defense." Madray, 208 F.3d at 1301 (citing Faragher, 524 at 807-808 and Ellerth, 524 U.S. at 765). However, "employees of such companies who believe they are victims of harassment need not be concerned with whether they pursued their complaints far enough up the company ladder." Breda, 222 F.3d at 890 (explaining that the question of whether an employee followed the procedures established in the company's policy in a reasonable manner is an issue of fact to be

---

[11] Austal references Bumpers' failure to report *each and every* single instance of harassment as a failure to fulfill this prong. (Doc. 167 at 13). Austal then cites Faragher as follows: "Bumpers failure to utilize a preventive or corrective opportunity provided by Austal precludes Austal from being held vicariously liable of the alleged actions of its employees." (Id.) However, Faragher does not state as such. Faragher provides: "[i]f the plaintiff *unreasonably* failed to avail herself of the employer's preventive or remedial apparatus, she *should* not recover damages that *could have been avoided if she had done so*." Faragher, 524 U.S. at 807 (emphasis added).

determined by a jury). "In defining the contours of what it means to reasonably use the complaint procedures and, thereby, properly report…harassment," the Eleventh Circuit has identified criteria that "must be satisfied[:]" 1) the employee must have complained to the appropriate person; and 2) if yes, the employee's conversations with such person must be sufficient to place the employer on notice. Olson, 130 Fed. Appx. at 389-390 (citing Madray, 208 F.3d at 1300, Breda, 222 F.3d at 889 and Coates, 164 F.3d at 1364).

Concerning co-workers, an employer is liable for co-worker harassment if the employer knew (actual notice) or should have known (constructive notice) of the harassing conduct but failed to take prompt remedial action. See, e.g., Miller, 277 F.3d at 1278; Breda, 222 F.3d at 889. Once notice is established, a plaintiff must show that the employer "failed to take immediate and appropriate action." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1259 (11th Cir. 2003). See also Frederick, 246 F.3d at 1314; Minix v. Jeld-Wen, Inc., 237 Fed. Appx. 578, 583 (11th Cir. 2007). The action must be "reasonably likely to prevent the misconduct from recurring." See, e.g., Kilgore v. Thompson & Brock Mgt., Inc., 93 F.3d 752, 754 (11th Cir. 1996). The employer's action must be "effective action in order to exempt an employer from liability[]" Saville v. Houston Cty. Healthcare Auth., 852 F. Supp. 1512, 1528 (M.D. Ala. 1994), and "must be 'reasonably calculated to end the harassment,' and the promptness and adequacy of the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the…harassment ended after the remedial action was taken[]" Munn v. Mayor and Aldermen of City of Savannah, Ga., 906 F. Supp. 1577, 1583 (S.D. Ga. 1995).

Even though it bears the burden of proof, Austal's motion minimally addresses the fifth element of employer liability and the related Faragher/Ellerth affirmative defense.

Bumpers asserts the applicable policies were deficient/ineffective and that Austal's remedial action was insufficient and occurred mostly after he was fired. The Court finds that Bumpers has submitted sufficient evidence to establish that genuine issues of material fact exist questioning Austal's ability to shield itself with Faragher/Ellerth. See *supra* Section I.C.

Accordingly, Austal's motion as to Bumpers' hostile work environment claim is **DENIED**.

IV.     **Conclusion**

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **DENIED** as to Bumpers' hostile work environment claim.[12]

**DONE** and **ORDERED** this the **3rd** day of **September 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[12] Bumpers seeks an award of punitive damages against Austal. It is **ORDERED** that Austal's motion for summary judgment regarding Bumpers' punitive damages claim is **DENIED** at this time.