# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NATHANIEL REED, *et al.*, | ) |
|     Plaintiffs, | ) |
| v. | )     CIVIL ACTION 08-00155-KD-N |
| | ) |
| AUSTAL, U.S.A., L.L.C., | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on Defendant's motion for summary judgment (Docs. 198, 199), Plaintiff's Opposition (Doc. 307), Defendant's Reply (Doc. 336), and the Eleventh Circuit's remand (Doc. 821).

## I.    Factual Background[1]

On March 20, 2008, multiple Plaintiffs initiated this action against Austal for legal and equitable relief to redress unlawful discrimination and harassment on the basis of race. (Doc. 1). Nathaniel Reed ("Reed") asserts claims for hostile work environment based on race, in violation of Title VII and 42 U.S.C. § 1981. (Doc. 37 at 103-108).[2]

On September 23, 2011, this Court issued summary judgment in favor of Austal as to Reed's claims for hostile work environment and retaliation, denied summary judgment as to Reed's discriminatory pay claims, and carried Reed's punitive damages request to trial. (Docs.

---

[1] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

[2] All other claims have been previously dismissed, abandoned, or judgment granted for the defendant. Additionally, the prior rulings with regard to Defendant's motion to strike, sustaining the objections, remain intact.

493, 720). Reed's discriminatory pay claim was set for trial in March 2012. (Doc. 520). Reed then voluntarily dismissed his claim and his trial was canceled. (Docs. 713, 717). Reed's summary judgment ruling was appealed (USCA#12-11507-EE) (Doc. 753), and on June 17, 2014, the Eleventh Circuit vacated the summary judgment order as to the claim of a racially hostile work environment. (Doc. 821 at 31). The Eleventh Circuit found that a reasonable jury could find that Reed's work environment was objectively hostile, and remanded his claims of a racially hostile work environment with instructions for this Court "to determine whether Austal is entitled to summary judgment on the ground that it was not directly or vicariously liable for the harassment or whether the employees' claims should proceed to trial." (Id. at 3, 31, 38). The mandate issued August 8, 2014. (Doc. 826).

### A. Austal

Defendant Austal USA ("Austal") is an Australian shipbuilding company dedicated to the design and construction of customized aluminum commercial and military vessels, located in Mobile, Alabama. (Doc. 199 at 2; Doc. 283-48 at 2-3 (Austal's 3/7/07 EEOC Position Statement)). The Operations Division has four (4) major Departments (Aluminum (divided into Fabrication and Components), Electrical, Engineering, and Fit Out (divided into HVAC, Insulation and Fit Out)). (Doc. 283-48 at 3-4).

### B. Reed's Employment

Nathaniel Reed was hired by Austal as a Fitter on November 29, 2004, in the Aluminum Fabrication Department at the rate of $11/hour. (Doc. 295 at 30 (Exhibit 105-Sealed); Doc. 213-1 (Dep. Reed at 32-33); Doc. 213-1 at 40; Doc. 213-2 (Decltn. Lindley at 10)). In June 2007, Reed resigned. (Doc. 213-1 (Dep. Reed at 33); Doc. 213-2 (Decltn. Lindley at 10)).

2

C.  **Austal's Anti-Harassment & Non-Discrimination Policy**

Austal submitted evidence of two (2) anti-harassment and non-discrimination policies: an "April 2006 Issue F" policy, and a "November 2007" policy. (Doc. 213-2 at 2-3 and note 1 (Decltn. Lindley); Doc. 213-2 at 36-37, 50 (the April 2006 Issue F policy and the November 2007 Issue A policy)). However, there were three (3) policies in effect during Reed's employment: the "April 2004 Issue D," "November 2005 Issue E" and April 2006 policies, and the November 2007 policy was not in effect while Reed was employed.

The April 2004, November 2005, and April 2006 policies "urge" employees to report complaints to his/her supervisor or, if not comfortable doing so, to the Departmental Manager:[3]

> Any employee suspecting a violation of this policy, or who in any way feels uncomfortable with the actions of Company Supervisors, employees or outsiders is urged to inform his or her Supervisor. If for any reasons the employee does not feel comfortable discussing the situation with his or her immediate Supervisor, he or she should report the matter to the Departmental Manager… Supervisors are **required** to report suspected harassment and any allegations of harassment to the Departmental Manager.

(Doc. 213-2 at 37; Doc. 283-56 at 25; Doc. 283-55 at 11) (emphasis in original)). (Doc. 284-3 (Dep. Lindley[4] I at 238-240, 245-246; (testifying that such was the procedure as to the 2004, 2005, and 2006 policies, and confirming that nothing in the policies identifies HR as an avenue for complaints). No evidence has been submitted to the Court of Reed having signed all of these policies. The evidence submitted indicates only that Reed signed *a* policy at an unknown date. (Doc. 213-1 (Dep. Reed at 38, 40)).

Reed testified that he understood the complaint procedure at Austal was to report up the

---

[3] Based on the record and as indicated by Austal, the Departmental Managers (or Coordinators) manage specific departments, such as Aluminum Fabrication, and within those departments, there are Supervisors who supervise the employees working with said department. (Doc. 283-48 (Austal's 3/7/07 EEOC Position Statement)).

[4] Austal's Rule 30(b)(6) representative and HR Benefits Coordinator.

chain of command as follows: "[t]alk to my supervisor. Everything we do goes to our supervisor, chain of command." (Doc. 213-1 (Dep. Reed at 40)). If his supervisor was discriminating against him, he would go to a manager. (Id.)

Regarding racially and hostile discriminatory comments, Reed alleges that his supervisor Ron Moore told him to "hurry up, boy" in front of another supervisor; "I thought he think it was a joke." (Doc. 285-18 (Dep. Reed at 73, 134-135)). Reed complained to supervisor Moore; in response, Moore "just laughed it off and walked away." (Id. (Dep. Reed at 135)). This was the only verbal racial comment he was subjected to while employed at Austal. (Id. (Dep. Reed at 140)). Moore "called me a boy that day[]" and there were "[n]o other instance[s], not with me." (Id. (Dep. Reed at 76-78, 134-135, 139-140)). However, Reed was aware that his co-workers heard the word "nigger" at Austal. (Doc. 285-19 (Decltn. Reed at 2)).

Reed was subjected to displays of the Confederate flag "almost every day that I worked at Austal[,]" as worn by a Caucasian co-workers on t-shirts, the back of trucks, toolboxes, welding hats and drawn on the bathroom walls. (Doc. 213-1 (Dep. Reed at 73, 90-92); Doc. 285-19 (Decltn. Reed at 2-3 at ¶3)). Some of the Caucasian co-workers and supervisors who wore the flag include "Wayne," "Bryce," Robert Sheppard, and "others." (Doc. 213-1 (Dep. Reed at 91)). Reed found the imagery "very disturbing." Reed complained to his supervisor Robert Hall, who responded "there was nothing he could do about it." (Doc. 285-19 (Decltn. Reed at 3 at ¶3)).

On a daily basis, Reed saw racial graffiti on the bathroom walls at Austal. (Doc. 213-1 (Dep. Reed at 72-73, 80-81, 140, 158); Doc. 285-19 (Decltn. Reed at 2 at ¶2)). "I saw the word 'nigger' at Austal so frequently, it unfortunately became part of my work environment. I could not use the restroom without seeing a racial slur or remark on the wall." (Doc. 285-19 (Decltn.

Reed at 2 at ¶2)). The graffiti included: "I hate niggers," "if a nigger--something about food stamps in their boot," "why niggers do not like using aspirin because they don't like picking the cotton out of the top," "how do you get an nigger not to go to work, put food stamps in their work boots," and Confederate flag drawings. (Doc. 213-1 (Dep. Reed at 80-81); Doc. 285-18 (Dep. Reed at 84-86, 139-140); Doc. 285-19 (Decltn. Reed at 2 at ¶2)). Reed complained -- "my only complaint[]" -- about the racial graffiti, to one of his supervisors Robert Hall. (Doc. 285-18 (Dep. Reed at 80-81, 86)). Hall responded "when you're bored, there's nothing to do but sit on the toilet and write little things on the wall. You can't control that." (Id. (Dep. Reed at 81-82)). The racial graffiti "was up there for a long period of time…[and only] after the [EEOC] complaints [and after the lawsuit]…they [Austal] started taking action[;]" at some point Reed also photographed the offensive graffiti and drawings and showed them to supervisor Hall. (Id. (Dep. Reed at 82, 84-86, 167); Doc. 213-1 (Dep. Reed at 83))). "I showed it [the photographs] to them [Hall and others in a safety meeting] and they just laughed it off." (Doc. 285-18 (Dep. Reed at 86)). Reed also saw racial graffiti on the ship at Austal "every now and then[,]" including "I hate niggers." (Doc. 285-18 (Dep. Reed at 139-140)).

While there is evidence of Reed's complaints about harassment, Confederate flag imagery, and racial graffiti/imagery in the bathrooms, Austal submitted no evidence of its response *to his complaints* while he was employed. Rather, Austal submitted evidence with regard to responses it took, in general, to racial/harassment complaints during its history, and primarily related to a time *after* Reed was no longer employed at Austal.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine

5

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.
R. CIV. P. 56(a) (Dec. 2010). Amended Rule 56(c) governs Procedures, and provides as follows:

> ***(1) Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c) (Dec. 2010).

Defendant, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the

moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).

### III.   Title VII/Section 1981 – Hostile Work Environment (Race)

Racial harassment is actionable under Section 1981 or Title VII where the conduct is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. See, e.g., Freeman v. City of Riverdale, 330 Fed. Appx. 863, 865 (11th Cir. 2009).[5] To establish a prima facie case of hostile work environment and/or racial harassment under Section 1981 or Title VII, the plaintiff must prove that: 1) he belongs to a protected group; 2) he has been subject to unwelcome harassment; 3) the harassment was based on a protected characteristic of the employee (such as race); 4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under a theory of vicarious or direct liability. See, e.g., Reeves v. DSI Sec. Servs., Inc., 395 Fed. Appx. 544, 545-546 (11th Cir. 2010) (unpublished); McCann v. Tillman, 526 F.3d 1370, 1378 (11th Cir. 2008); Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). See also e.g., Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

---

[5] This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36-2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

The first three (3) prima facie elements of a hostile work environment are satisfied and not disputed by the parties. However, as to remaining elements**,** Austal contends that: 1) Reed's evidence of sporadic and isolated incidents of racially hostile comments, conduct and graffiti during the time he was employed do not meet the severe or pervasive threshold; 2) Reed makes no allegations and presents no evidence that the allegedly hostile environment unreasonably interfered with his ability to work on a day-to-day basis; 3) Austal maintained a policy establishing how an employee should report discriminatory conduct, but Reed failed to report certain conduct; and 4) Austal took reasonable preventative and corrective/remedial measures to prevent a hostile work environment.

### A. Severe or Pervasive

To be actionable as severe or pervasive, the harassment "must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s]…to be abusive." Miller, 277 F.3d at 1276 (internal citation and quotation marks omitted). In other words, the severe or pervasive element has an objective and subjective component. McCann, 526 F.3d at 1378. To determine the objective severity of the harassment, courts look at the totality of the circumstances and consider: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's job performance. Reeves, 395 Fed. Appx. at 546. See also Faragher v. City of Boca Raton, 524 U.S. 775, 787-788 (1998); Allen v. Tyson Foods, 121 F.3d 642, 647 (11th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). "The conduct is considered cumulatively instead of in isolation." Reeves, 395 Fed. Appx. at

8

546. There is sufficient evidence, if believed by a jury, that Reed subjectively perceived his work environment to be racially hostile.

As to the fourth element, the objective severity of the harassment, as established by the Eleventh Circuit in its remand:

> The record also presents a genuine dispute of material facts that Reed's work environment was objectively hostile. Reed worked for Austal for two and a half years, during which he heard racial slurs and saw racist graffiti in the men's restrooms "every[ ]day." He "could not use the restroom without seeing a racial slur or remark on the wall," and "every now and then," he saw racist graffiti, such as "I hate niggers," on a boat that he helped build. His supervisor, who is white, called him "boy" on "several" occasions. *See Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 897 (11th Cir. 2011) ("[T]he decision maker[] used the word 'boy' in a racially demeaning way."). Reed also saw Austal employees, including supervisors, wear apparel with Confederate flags "every day." And he learned that a white coworker called a black coworker a "black bitch."
>
> Reed raises a disputed issue that the harassment he experienced was frequent and severe. Even though Austal cleaned the racist graffiti regularly, it filled the walls of the restroom that he used daily, and he also saw racist graffiti on the ship where he worked. He also heard racial slurs every day and saw employees and supervisors wear Confederate flags every day. And his supervisor called him "boy" on "several" occasions. A reasonable jury could find that his workplace was objectively hostile.

(Doc. 821 at 18-19).

### B. Employer Liability- Faragher/Ellerth Affirmative Defense

With the fourth element satisfied, this Court turns to the fifth element: "…the employer[]…[Austal] is responsible for the hostile work environment under…a theory of vicarious or direct liability[]"[6] unless Austal can avail itself of the Faragher/Ellerth affirmative defense.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), the Supreme Court held that employer liability is automatic when

---
[6] Miller, 277 F.3d at 1278.

9

the supervisor's harassment culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 807, 808; Ellerth, 524 U.S. at 762, 763. Where no such action has occurred, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 745. But an employer may avoid vicarious liability by raising as an affirmative defense that it: 1) exercised reasonable care to prevent and correct promptly any harassing behavior, and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Faragher, 524 U.S. at 807, 809; Miller, 277 F.3d at 1278. This is known as the Faragher/Ellerth affirmative defense. For an employer to avail itself of this defense and be found not liable, "[*b*]*oth elements must be satisfied*…the *defendant bears the burden of proof on both elements*." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1313 (11th Cir. 2001) (citations omitted) (emphasis added) (holding that factual issues existed regarding employer's complaint procedure and employee's use of it, precluding summary judgment on Faragher/Ellerth). If, however, neither element is satisfied, the employer is liable for the harassment. See *supra*. See also Joens v. John Morrell & Co., 243 F.Supp.2d 920, 933 (N.D. Iowa 2003) (providing a helpful flow chart).

Austal's liability is automatic if a supervisor's harassment culminated in a tangible employment action as to Reed (*e.g.*, discharge, demotion, undesirable reassignment). There is no dispute that Reed left Austal in June 2007. Austal asserts that Reed voluntarily resigned. In the operative complaint, Reed alleged that he was retaliated against after complaining of racially discriminatory conduct and was treated differently from Caucasian co-workers with regard to

10

pay raises and disciplinary actions. (Doc. 37 at 103-108). Reed testified that he left Austal for his own reasons. (Doc. 213-1 (Dep. Reed at 33)). Nevertheless, while there is evidence of supervisor harassment, on summary judgment Reed submitted no evidence of any harassment *by a supervisor connected to and/or culminating in a tangible employment action* (including his resignation or discipline). Additionally, Reed does not allege as such on summary judgment. Moreover, this Court previously concluded that Reed waived his retaliation claim, and that ruling was not vacated by the Eleventh Circuit. Thus, there is no evidence before the Court showing a *causal* relationship between Reed's resignation (or other event) and any alleged racial harassment by a supervisor, and as such, no evidence of a tangible employment action on summary judgment. See, e.g., Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005) (discussing a similar situation where a plaintiff failed to show the causal relationship on summary judgment).

When there is no evidence that a harassing supervisor took a tangible employment action against an employee, courts assess whether the harassment is nevertheless severe or pervasive enough to constitute a hostile work environment. Joens, 243 F.Supp.2d at 933. If yes, *as is the case here (*see *supra)*, the employer is vicariously liable for a supervisor's harassment unless the employer can prove both elements of the Faragher/Ellerth affirmative defense. Id.

First, for "prevention," there is no uniform test for determining whether an employer's policy demonstrates that it exercised reasonable care, and the mere existence of a formal anti-harassment policy does not satisfy this first prong. See, e.g. Frederick, 246 F.3d at 1313 (noting that the employer failed to establish that its policy contained reasonable complaint procedures); Dinkins v. Charoen Pokphand USA, Inc., 133 F. Supp. 2d 1237, 1251 (M.D. Ala. 2001)

11

(concluding that the employer failed to establish the affirmative defense that it was diligent in preventing and correcting harassment, and that complaining employees had not taken advantage of opportunities for redress provided by employer). An employer's policy fulfills its "prevent harassment" obligation if the employer promulgates a policy that is "comprehensive, well-known to employees, vigorously enforced, and provides alternate avenues of redress[;] and the policy must not be administered "in bad faith" or be otherwise "defective or dysfunctional." Dinkins, 133 F. Supp. 2d at 1251 (citing Farley v. American Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997) and Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1298 (11th Cir. 2000)). "A policy is 'defective' if those responsible for its enforcement lack training and knowledge sufficient to recognize, prevent and correct workplace discrimination." Id. Essentially then, an employer can establish that it exercised reasonable care to prevent harassment by showing that it promulgated and effectively disseminated a clear anti-harassment policy with complaint procedures to its employees, see Faragher, 524 U.S. at 807-808 and Ellerth, 524 U.S. at 765, *so long as* the complaint procedures "meet the minimum requirements for the *Faragher* affirmative defense…[and do] not require…the employee to complain to the offending supervisor or through the supervisor's chain of command and…provide[] multiple avenues of lodging a complaint to assessable, designated representatives." Madray, 208 F.3d at 1299 (determining the policy was sufficient "because the procedures did not require that the employee complain to the offending supervisor or through the supervisor's chain of command and the procedures provided multiple avenues of lodging a complaint to assessable, designated representatives[]"). See also e.g., Olson v. Lowe's Home Ctrs. Inc., 130 Fed. Appx. 380, 389 (11th Cir. 2005) (finding satisfaction of the first prong as the policies enabled employees to bypass harassing supervisors and provided

several different avenues for employees to report harassment); Reyna v. ConAgra Foods, Inc., 506 F. Supp. 2d 1363, 1375 (M.D. Ga. 2007) (holding that material issues of fact, as to whether employer took reasonable care to prevent and properly correct harassment, precluded summary judgment for employer, based on existence of procedures for addressing discrimination issues not utilized by claimants). This "requires…a clear and known policy against workplace harassment…[including] permit[ting] employees to bypass supervisors and retain some vestige of anonymity." Bury v. Sky Chefs, 2011 WL 197383, *6 (S.D. Fla. Jan. 20, 2011) (defining the first prong of Faragher/Ellerth). Inherent defects exist when a policy's complaint procedures do not "meet the minimum requirements" for the Faragher affirmative defense: provide employees "*multiple* avenues of lodging a complaint *to assessable, designated representatives*" *outside* of the supervisory chain of command (do not require an employee complain to the offending supervisor or through the supervisor's chain of command). Madray, 208 F.3d at 1299 (emphasis added). Moreover, "a policy is [considered] 'defective' if those responsible for its enforcement lack training and knowledge sufficient to recognize, prevent, and correct workplace discrimination." Dinkins, 133 F. Supp. 2d at 1251.

Concerning the second prong of "prevention" -- whether the employer took reasonable care to "correct promptly" any harassment -- "the employer's notice of the harassment is of paramount importance [because] if the employer had notice of the harassment...then it is liable unless it took prompt corrective action." Madray, 208 F.3d at 1299 (citing Dees v. Johnson Controls World Services, 168 F.3d 417, 422 (11th Cir. 1999)). An employer is directly liable for co-worker harassment if the employer knew or should have known of the conduct but failed to take prompt remedial action. See, e.g., Miller, 277 F.3d at 1278; Breda v. Wolf Camera &

13

Video, 222 F.3d 886, 889 (11th Cir. 2000). "Actual notice is established by proof that management knew….constructive notice will be found where the harassment was so severe and pervasive that management should have known of it."[7] Miller, 277 F.3d at 1278. "This inquiry is facilitated by the identification of the 'appropriate Company representative' to whom employees should register their complaints" in the employer's policy. Madray, 208 F.3d at 1299-1300. Once it is determined that the employer had adequate notice, whether the employer took timely corrective action depends upon whether it responded in a reasonably prompt manner to the employee's harassment complaint. See, e.g., Frederick, 246 F.3d at 1316. Thus, when the employer had notice is key "to determine the alacrity of its response[;]" the employer is liable unless it took "prompt corrective action." Madray, 208 F.3d at 1299; Dees, 168 F.3d at 422. See also e.g., Coates v, Sundor Brands, Inc., 164 F.3d 1361, 1364 (11th Cir. 1999) (noting that the appropriate inquiry at this stage is to ask is what measures an employer (in that case via an HR Manager) reasonably believed had been taken to address the problem).

Second, courts assess whether the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm. Joens, 243 F.Supp.2d at 933. "[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the [affirmative] defense."

---

[7] For constructive notice, courts also consider: 1) the remoteness of the location of the harassment as compared to the location of management; 2) whether the harassment occurs intermittently over a long period of time; 3) whether the victims were employed on a part-time or full-time basis; and 4) whether there were only a few, discrete instances of harassment. See, e.g., Miller, 277 F.3d at 1278; Allen, 121 F.3d at 647.

Madray, 208 F.3d at 1301 (citing Faragher, 524 at 807-808 and Ellerth, 524 U.S. at 765). However, "employees of such companies who believe they are victims of harassment need not be concerned with whether they pursued their complaints far enough up the company ladder." Breda, 222 F.3d at 890 (explaining that the question of whether an employee followed the procedures established in the company's policy in a reasonable manner is an issue of fact to be determined by a jury). "In defining the contours of what it means to reasonably use the complaint procedures and, thereby, properly report…harassment," the Eleventh Circuit has identified criteria that "must be satisfied[:]" 1) the employee must have complained to the appropriate person; and 2) if yes, the employee's conversations with such person must be sufficient to place the employer on notice. Olson, 130 Fed. Appx. at 389-390 (citing Madray, 208 F.3d at 1300, Breda, 222 F.3d at 889 and Coates, 164 F.3d at 1364).

Concerning co-workers, an employer is liable for co-worker harassment if the employer knew (actual notice) or should have known (constructive notice) of the harassing conduct but failed to take prompt remedial action. See, e.g., Miller, 277 F.3d at 1278; Breda, 222 F.3d at 889. Once notice is established, a plaintiff must show that the employer "failed to take immediate and appropriate action." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1259 (11th Cir. 2003). See also Frederick, 246 F.3d at 1314; Minix v. Jeld-Wen, Inc., 237 Fed. Appx. 578, 583 (11th Cir. 2007). The action must be "reasonably likely to prevent the misconduct from recurring." See, e.g., Kilgore v. Thompson & Brock Mgt., Inc., 93 F.3d 752, 754 (11th Cir. 1996). The employer's action must be "effective action in order to exempt an employer from liability[]" Saville v. Houston Cty. Healthcare Auth., 852 F. Supp. 1512, 1528 (M.D. Ala. 1994), and "must be 'reasonably calculated to end the harassment,' and the promptness and adequacy of

the employer's response must be evaluated on a case-by-case basis. Of special importance is whether the…harassment ended after the remedial action was taken[]" Munn v. Mayor and Aldermen of City of Savannah, Ga., 906 F. Supp. 1577, 1583 (S.D. Ga. 1995).

Even though it bears the burden of proof, Austal's motion minimally addresses the fifth element of employer liability and the related Faragher/Ellerth affirmative defense. Austal submitted evidence (some of which appears irrelevant) that it characterizes as examples of "responses" taken, *in general*, to racial/harassment incidents during its history. (Doc. 199 at 13-14). Regardless, factual issues exist for element five, including whether Austal's response to complaints was adequate. In sum, the Court finds that Reed has submitted sufficient evidence to establish that genuine issues of material fact exist questioning Austal's ability to shield itself with Faragher/Ellerth. Accordingly, Austal's motion as to Reed's hostile work environment claim is **DENIED**.

## IV. Conclusion

Accordingly, it is **ORDERED** that Austal's motion for summary judgment is **DENIED** as to Reed's hostile work environment claim.[8]

**DONE** and **ORDERED** this the **3rd** day of **September 2014.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[8] Reed seeks an award of punitive damages against Austal. It is **ORDERED** that Austal's motion for summary judgment regarding Reed's punitive damages claim is **DENIED** at this time.