# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **NELSON BUMPERS, *et al.*,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.: 08-0155-KD-N** |
| | ) | |
| **AUSTAL, USA, L.LC.,** | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on "Plaintiffs' Motion to Reconsider and/or Objections to the Court's *Sua Sponte* Order of Bifurcation" (Doc. 855) and Defendant's Response (Doc. 857).[1]

## I.    Standard of Review

As to the motion to reconsider, the Court construes Plaintiffs' motion to reconsider the Court's Order (Doc. 851) as filed pursuant to Rule 60(b)(1) for mistake of law and/or Rule 60(b)(6) for any reason that justifies relief.  The decision to grant or deny a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transp.,* 229 F.3d 1012, 1023–1024 (11th Cir. 2000) (en banc). "In the interest of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Gougler v. Sirius Prod., Inc.,* 370 F.Supp.2d 1185, 1189 (S.D. Ala. 2005) (citation omitted). Generally, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct

---

[1]    While not specifically referenced in the Order, the Defendant had previously requested bifurcation/severance of plaintiffs' claims.  (Doc. 857 at 1 (citing Doc. 363)).  This issue was extensively briefed (Docs. 363, 371, 372, 387, 389), lengthy oral argument was held on the matter, and the bifurcation ruling was the result of much careful consideration and deliberation by the undersigned (Doc. 399, 520).  Eventually, all of the prior trials of the plaintiffs' in this case were bifurcated in part (*e.g.*, grouped).  (Doc. 399, 520).  In short, bifurcation was not a new concept or surprise aspect of this case to the parties, as Plaintiffs' motion appears to suggest.

clear error or manifest injustice." Summit Med. Ctr. of Ala., Inc. v. Riley, 284 F.Supp.2d 1350, 1355 (M.D. Ala. 2003). See also *Douglas Asphalt Co., v. QORE, Inc.,* 657 F.3d 1146, 1151–1152 (11th Cir. 2011). However, "[m]otions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued[ ]" *Sanderlin v. Seminole Tribe of Fla.,* 243 F.3d 1282, 1292 (11th Cir. 2001) (citations omitted), and "cannot be brought solely to relitigate issues already raised [,]" *Harris v. Corrections Corp. of America,* 2011 WL 2672553, *1 (11th Cir. Jul. 22, 2011). Further, "'a motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind.'" *King v. Farris,* 357 Fed. Appx. 223, 225 (11th Cir. 2009).

## II.   **Discussion**

On August 12, 2014, this matter was set for a November 18, 2014 Final Pretrial Conference, trial in December 2014, and December 3, 2014 jury selection.  (Doc. 827).  At the November 18, 2014 Final Pretrial Conference, the Court notified the parties that the already scheduled December 2014 trial of the seven (7) plaintiffs, would be bifurcated into two (2) trials as follows: Trial One (Bumpers, Reed, Williams) and Trial Two (Hollis, Laffiette, Law and Pettibone).   Plaintiffs' counsel objected, both to the December 2014 trial setting and to bifurcation, and orally moved for a continuance of the Final Pretrial Conference and Trial. Upon consideration, but reluctantly because of the untimeliness of the motion,[2] the Court granted Plaintiffs' counsel's motion to continue but kept the trials bifurcated.   (Doc. 851).   The bifurcated trials were then scheduled for the March 2015 civil trial term.  (Id.) On December 17, 2014, Plaintiffs filed objections to bifurcation and a motion to reconsider the Court's ruling.

---

[2] There was no explanation by counsel for Plaintiffs for waiting until the November 2014 pretrial conference to object (for the first time) to the December 2014 trial setting, even though counsel had over three (3) months to raise the objection before the conference.

(Doc. 855).  Defendant opposes Plaintiffs' motion.  (Doc. 857).

In their motion, Plaintiffs do not raise any arguments based on, or present any evidence of, an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.  Rather, Plaintiffs contend that bifurcation of the trial of the seven (7) plaintiffs violates Fed.R.Civ.P. Rule 42 and "severely harms" plaintiffs.

Specifically, citing Rule 42 as grounds ("[i]f actions before the court involve a common question of law or fact, the court *may*:…join for….trial *any or all* matters at issue in the actions[]"), Plaintiffs claim that bifurcation contradicts the rule and "severely harms" them due to "significant, if not complete, overlap of witnesses, documentary evidence and legal issues." Fed.R.Civ.P. Rule 42 (emphasis added)).  Plaintiffs assert that they all have testimony "relevant to all of the other plaintiffs['] claims and all trial plaintiffs, as well as most other witnesses, [and] will have to testify at both trials regardless of the bifurcation."  (Doc. 855 at 2-3).

As explained and emphasized to the parties throughout the course of this litigation, *which is not a class action*, the Court has made sincere efforts to avoid the combining of each plaintiffs' alleged discriminatory experiences into a potentially overwhelming and/or prejudicial "me too" trial.  According to Eleventh Circuit precedent, each plaintiff's discrimination experiences stand on their own and cannot be lumped together with other plaintiffs' experiences, unless a plaintiff was made aware of the other plaintiffs' experiences while employed.  This is at the heart of the need for bifurcation now in this case, just as it has been previously.  On appeal, the Eleventh Circuit acknowledged the correctness of the undersigned's rulings with regard to "me too" evidence.

Additionally, the Court finds perplexing Plaintiffs' position.  During the final pretrial conference, Plaintiffs' counsel stated that all seven (7) plaintiffs were subject to the same Austal

3

policies.  Plaintiffs further assert in the present motion that all of their claims are "identical" and that they "all worked in the same work environment during overlapping time periods[]" and "the plaintiffs were subject to the same employment policies."  (Doc. 865 at 4).  This appears to be factually incorrect.  As explained during the conference (and in detail in the summary judgment orders on remand, *see*, *e.g.*, Doc. 828 at 3-6, 10-17), the Plaintiffs were only subject to the Austal policies in effect during the time each of them was employed, and they were not all employed at the same time.[3]   Indeed, this Court went to great lengths to explain such in the summary judgment orders on remand for these plaintiffs, to clarify each plaintiff's status vis-à-vis the Faragher/Ellerth defense.[4]

Specifically, Plaintiffs Bumpers, Reed, and Williams *were not* subject to the November 2007 Austal policy, which effected a change to the reporting procedure and for the first time made reference to HR and added the condition that two (2) steps had to be completed before contacting HR.  In contrast, Plaintiffs Hollis, Laffiette, Law, and Pettibone *were* subject to the November 2007 policy and so had different reporting requirements/procedures.[5]  This was the

---

[3]   Specifically, the policies applicable to each remaining plaintiff based on the dates of their employment, are as follows: Bumpers and Reed (April 2004, November 2005, April 2006); Williams (November 2005, April 2006); Hollis (April 2006 and November 2007); Laffiette and Pettibone (November 2005, April 2006, November 2007); and Law (April 2004, November 2005, April 2006, November 2007).

[4]  The Court notes Plaintiffs' assertion that "Austal failed to plead the *Faragher* defense in a timely manner."  (Doc. 855 at 5 at note 4).  This issue has already been fully litigated and moreover, appealed by Plaintiffs.  The Eleventh Circuit denied Plaintiffs' appeal and upheld the Court's ruling that Austal had preserved its Faragher defense in its Answer.  The Court finds Plaintiffs' counsel's misrepresentation, to the contrary, troublesome.

[5] For example, for the **April 2004, November 2005, April 2006 policies** (*urges* but not requires reporting to supervisor, or to Department Manager, and supervisors are required to report then to Department Manager, nothing about HR):

Any employee suspecting a violation of this policy, or who in any way feels uncomfortable with the actions of Company Supervisors, employees or outsiders is urged to inform his or her Supervisor.  If for any reasons the employee does not feel comfortable discussing the situation with his or her immediate Supervisor, he or she should report the matter to the Departmental Manager…Supervisors are **required** to report suspected harassment and any allegations of harassment to the Departmental Manager.

(Continued)

primary reason the court bifurcated the trials.

Moreover, Rule 42(a) does not *require* consolidation, but rather provides such as an *option* within the Court's discretion.  And as stated *supra*, consolidation is tied to the existence of common questions of law or fact.  Here, there are different facts that prompt different applications of the legal <u>Faragher/Ellerth</u> claims -- insofar as such are explicitly tied to a particular policy in effect during each plaintiff's employment.   Also, Plaintiffs fail to reference the other half of Rule 42, Rule 42(b), which provides for separate trials of one or more separate issues and/or claims "[f]or convenience, to avoid prejudice, or to expedite and economize" Fed.R.Civ.Proc. 42(b).  It is more convenient for the Court to bifurcate the plaintiffs into separate trials rather than litigating all seven (7) at once.  The potential for prejudice is reduced with bifurcation, as one plaintiff's contentions about his/her reporting requirements as to a particular Austal policy, will not cloud (or be confused with) another plaintiff's contentions about his/her reporting requirements when/if that particular policy was inapplicable.  Bifurcation will also

---

**For the November 2007 policy** (employees *should* report but not required to report to supervisor, or to Department Manager, but an employee *must* complete both steps (report to both) *before being allowed to even contact HR*, and also, not required to talk to HR):

> 1.3   Reporting an Incident of Harassment or Workplace Violence
> It is the employee's responsibility to report any incident of harassment or workplace violence.  The employee should report any incident of this nature to his/her supervisor. If the employee is not comfortable reporting the incident to his/her supervisor you may talk to the department coordinator or manager. If you need to talk with someone *after you have completed <u>both</u> steps,* you may contact the Human Resources Department. Any reported allegations of harassment or workplace violence will be Investigated confidentially and promptly.

In other words, there will be no testimony or evidence allowed at trial about the November 2007 policy, for Bumpers, Reed and Williams, because this policy was not in effect during their employment and it is thus irrelevant to their claims.  In sum, the only trial testimony and evidence which will be permitted regarding Austal's policies and reporting procedures, will be for those specific policies in effect during the time a particular plaintiff was employed.  And Plaintiffs' allegation, along with Terri Lindley's claim that "these policies are essentially the same[]" and "contain similar reporting procedures" (if that is set forth in the record), does not make them so.  Even the briefest reading of the policies, as set forth *supra*, reveals different reporting procedures and requirements, and both did not involve HR.  And again, similar is not identical, and when it comes to <u>Faragher/Ellerth</u>, the specific reporting requirements are crucial matters of distinction.

limit confusion about the applicability of the specific Austal policies.

Thus, the Court finds no basis to reconsider its ruling.  The issue of bifurcation has been dealt with throughout this case and the parties have had the opportunity to address same. Additionally, this case has been appealed, and while the Eleventh Circuit did not speak directly to the issue of bifurcation, it ruled that "an employee alleging a hostile work environment cannot complain about conduct of which he was oblivious for the purpose of proving that his work environment was objective hostile."  (Doc. 821 at 3 and 13-14).  Moreover, the Eleventh Circuit did note that the trials had been bifurcated, relating to an appeal concerning the limitation of "me too" evidence during trial, and found that this Court properly limited the "me too" evidence at trial.  (Doc. 822 at 4).  In sum, despite Plaintiffs' contentions, the trials are not "carbon copies," and it will be the responsibility of counsel to appropriately tailor the testimony and evidence for each trial accordingly.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Reconsider and/or Objections to the Court's *Sua Sponte* Order of Bifurcation" (Doc. 855) is **DENIED.**

**DONE** and **ORDERED** this the **13**[th] day of **January 2015.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**