**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CYNTHIA BUMPERS,** Administrator | ) | |
| *Ad Litem* for the Estate of Nelson Bumpers, | ) | |
| *et al.*, | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-00155-KD-N** |
| | ) | |
| **AUSTAL U.S.A., L.L.C,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant's Bill of Costs (Doc. 951), Plaintiffs'

Objection (Doc. 951), Costs Taxed by the Clerk (Doc. 961), Defendant's Motion to Retax Costs

(Doc. 962) and Plaintiffs' response in opposition (Doc. 964).

I.    <u>Background & Applicable Law</u>

On April 3, 2015, Judgment was entered as to the remaining Plaintiffs' claims, in favor of

Austal.  (Doc. 950).   On April 16, 2015, Austal filed a Bill of Costs seeking to recover

**$63,744.79** ($50.00 for Clerk fees (Pro Hac Vice admissions); $518.21 for summons/subpoena

fees; $37,585.65 for copies of transcripts necessarily obtained for use in the case; $10,614.68 for

printing; $1,272.45 for witness fees/mileage/meals/lodging; $177.50 for exemplification and

copies of materials necessarily obtained for use in the case; and $13,526.30 in "other" costs

(mediation, production of emails, expert related documents, and travel expenses for counsel)).

(Doc. 951-1).  Plaintiffs filed an objection.  (Doc. 951).  On August 7, 2015, **$6,190.70** in costs

were taxed by the Clerk in Austal's favor (comprised of $4,978.25 for transcripts necessarily

obtained for use in the case and $1,212.45 for witness fees).  (Doc. 961).  On August 17, 2015,

1

Austal moved to retax costs, seeking recovery of **$63,744.79**.  (Doc. 962).

Austal is the prevailing party in this case.  "In the exercise of sound discretion, trial courts are accorded great latitude in ascertaining taxable costs."  Loughan v. Firestone Tire & Rubber Co., 749 F.2d 1519, 1526 (11th Cir. 1985).  A court's power to award costs to a prevailing party is grounded in part in Rule 54(d)(1) of the Federal Rules of Civil Procedure which provides: "[u]nless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Thus, absent explicit statutory authorization, federal courts are limited to those costs enumerated in 28 U.S.C. § 1920. Crawford Fitting Co. v. J.T. Gibbins, Inc., 482 U.S. 437, 445 (1987).

Specifically, the following may be taxed as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

At first blush, there may appear to be such explicit statutory authorization for recovery of non-taxable costs in this case.  Austal is a prevailing party in a Section 1981/Title VII action through which a court *may* award costs incurred in defending the case even when not expressly listed in Section 1920.  See, e.g., Gay v. Airtrain Airways, Inc., 427 Fed. Appx. 743, 744 (11th Cir. 2011).  That said, as Plaintiffs have highlighted, this Court has already ruled, in its discretion, that Austal is not entitled to recovery of such costs: "…this case is simply not an

2

appropriate case to award…nontaxable expenses to Austal based on frivolity. While Austal was ultimately successful with regard to all of the plaintiffs' claims, it was not because Austal had an airtight defense with settled law and facts securely on its side." (Doc. 749). This ruling was affirmed by the Eleventh Circuit. (Doc. 810). That portion of Austal's motion asserting that "statutory authorization" exists to recover non-taxable expenses essentially ignores the rulings of this Court and that of the Eleventh Circuit. Nonetheless, that portion of Austal's motion to retax premised on "statutory authorization" is **DENIED** in its entirety.

## II. <u>Discussion</u>

### A. <u>Pro Hac Vice</u>

Austal requests **$50.00** for the Pro Hac Vice admissions of two (2) attorneys. (Doc. 951-3). Pro Hac Vice fees are an expense of counsel, not recoverable under section 1920. <u>Lane v. Accredited Collection Agency, Inc</u>., 2014 WL 1685677, *9 (M.D. Fla. Apr. 28, 2014); <u>Covington v. Arizona Bev. Co., LLC</u>, 2011 WL 810592, *3 (S.D. Fla. Jan. 25, 2011) (citing <u>Exhibit Icons, LLC v. XP Cos., LLC</u>, 2009 WL 3877667, *1 (S.D. Fla. Nov. 18, 2009) (citing <u>Eagle Ins. Co. v. Johnson</u>, 982 F. Supp. 1456, 1459-1460 (M.D. Ala. 1997), *aff'd*, 162 F.3d 98 (11th Cir. 1998)). Thus, Austal's request is **DENIED**.

### B. <u>Videography</u>

Austal requests **$5,993.35** for videotaping/video-synching (non-stenographic) costs for certain depositions ($625 Myron Barnes, $148.75 Myron Barnes, $710 Nelson Bumpers, $832.25 Frederick Carter, $157.50 Frederick Carter, $530 Nathaniel Reed, $755 Charles Stills,

$2,234.85 Jeff O'Dell).  (Doc. 951-5 at 5-6, 8, 10-11, 23, 44-45).[1]  Austal seeks these costs in addition to recovery of the costs for the deposition transcripts by stenographic means.

Rule 30(b)(3) provides as follows:

**(3) Method of Recording.**
**(A)** *Method Stated in the Notice.* The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition.

**(B)** *Additional Method.* With prior notice to the deponent and other parties, any party may designate another method for recording the testimony in addition to that specified in the original notice. That party bears the expense of the additional record or transcript unless the court orders otherwise.

Fed.R.Civ.P. 30(b)(3)(A)-(B).   When a party notices a deposition to be recorded by: 1) non-stenographic means, or 2) by both stenographic and non-stenographic means, and no objection is raised at that time by the other party as to the method of recordation, it is appropriate to award the cost of conducting the deposition in the manner noticed.  Morrison v. Reichhold Chem., Inc., 97 F.3d 460, 464-465 (11th Cir. 1996) (deposition noticed as only videotape); Preis v. Lexington Ins. Co., 2007 WL 3120268, *3 (S.D. Ala. Oct. 22, 2007) (depositions noticed as both videotape and stenographic).   If videotaped, the prevailing party must explain why it was necessary to obtain a videotape of the deposition in question.  Morrison, 97 F.3d at 464-465.  If the deposition notice does not state the method of recordation, and if there is no evidence that the party noticed a deposition to be videotaped instead of transcribed, the prevailing party may only recover costs for the stenographic transcript.  Caribbean I Owners' Ass'n, Inc. v. Great Am. Ins. Co. of N.Y., 2009 WL 2150903, *6 (S.D. Ala. Jul. 13, 2009).

---

[1] Calculated by the Court based on the documents provided by Austal.

With its pending motion, Austal did not submit the deposition notices for consideration. However, according to Plaintiffs,[2] Austal noticed the depositions to be recorded via videotape **or** stenographer -- not videotaped **and** transcribed by a stenographer.   (Doc. 964 at 3).   Austal's notice was apparently *in the alternative – either* by video *or* by stenographer.   Austal's notice of recordation method was thus neither 1) by non-stenographic means, nor 2) by both stenographic and non-stenographic means. Moreover, Austal has failed to sufficiently explain why it was necessary to obtain videos of the depositions *in addition to stenographic transcripts*, stating only summarily that "several of the video depositions of the Plaintiffs or other key witnesses were used at trial." (Doc. 962 at 7 at n.6).  Accordingly, Austal's request is **DENIED.**

## C.   Transcripts

Austal requests **$37,585.65** for trial and deposition transcripts of the 23 plaintiffs and members of its Human Resources Department and management.  (Docs. 951-2 at 1-3; 962 at 5-7).  Of these costs, **$4,978.25** in deposition transcripts were previously taxed as recoverable.

### 1.   Trial Transcripts

Austal requests **$5,297.80** for trial transcripts,[3] asserting that these costs were incurred to prepare for a successful cross-examination of witnesses who testified in one trial and then testified in subsequent bifurcated trials:

---

[2] Asserted and submitted in a pleading subject to Rule 11, including but not limited to the following: "[b]y presenting to the court a pleading...or other paper….an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances…..the factual contentions have evidentiary support…." Fed.R.Civ.P. Rule 11(b)(3).

[3] Per Doc. 951-2 at 2-3, this sum also includes "download from PACER" charges, an audiotape transcription, and certified transcript excerpt.  This sum was calculated by the Court based on the documents provided by Austal.

…the expenses Austal incurred to obtain portions of the trial transcripts were necessary because the trials were severed and scheduled over a 2½ year period. All of the Plaintiffs who testified in Trial I were identified as witnesses in Trials II-V.  Austal could not effectively prepare its cross-examination of these witnesses without the benefit of their prior trial testimony. Indeed, as an example, in Trial I, the jury was unable to reach a verdict with respect to the claims of Plaintiffs Adams, Barnes, and Johnson.  (Docs. 515-1, 515-2, 515-5.)  Their claims were tried again in Trial III, which commenced several months later. (Doc. 560 at 2).  Obtaining their prior trial testimony was crucial for Austal to successfully cross-examine these Plaintiffs in their subsequent trials.  (See, e.g., Doc 803 at 160 (impeaching Adams in Trial III with prior trial testimony from Trial I; see also Doc. 803 at 235 (publishing transcript of Johnson tape recording to jury).)…

(Doc. 962 at 7).

The cost of trial transcripts _may_ be recovered when such transcripts are necessarily obtained for use in the case.  28 U.S.C. § 1920(2).  "Trial transcription costs may also be taxable …but again only if truly necessary for presentation of the case at trial, and not solely for convenience of counsel[]"…This determination is made "on a case-by-case basis…"  Crouch v. Teledyne Cont. Motors, Inc., 2013 WL 203408, *4 (S.D. Ala. Jan. 17, 2013).  "[W]hile the cost of daily trial transcripts should not be allowed as a matter of course, a district court may award the cost of daily trial transcript where the length and complexity of a trial make the daily transcripts necessary."  Kearney v. Auto–Owners Ins. Co., 2010 WL 1856060, *4 (M.D. Fla. May 10, 2010); Maris Distrib. Co. v. Anheuser–Busch, Inc., 302 F.3d 1207, 1226 (11th Cir. 2002)).  As enunciated in Goodwall Const. Co. v. Beers Const. Co., 824 F. Supp. 1044, 1064 (N.D. Ga. 1992) (disallowing trial transcripts as costs as not indispensible and necessary):

…Both the statute and interpreting case law permit a prevailing party to recover costs for daily copies of the trial transcript where the transcript is "indispensable." _Farmer_, 379 U.S. at 415–416, 85 S.Ct. at 555; 28 U.S.C. § 1920(2). By indispensable, the Court means that the transcripts were not obtained primarily for the convenience of the attorneys, but were necessarily obtained for use in the case. _Id._; _Studiengesellschaft Kohle mbH v. Eastman Kodak Co._, 713 F.2d 128, 132 (5th Cir.1983); _In re Nissan Antitrust Litigation_, 577 F.2d 910, 918 (5th Cir.1978). Factors to be considered are the complexity

6

of the issues tried, the length of the trial, and whether the attorneys are required to submit briefs and proposed findings to the court during trial. *Farmer*, 379 U.S. at 416, 85 S.Ct. at 555. This is true even after the *Crawford* holding restricted the district court's ability to interpret the provisions under § 1920. *See J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 760 F.2d 613, 615–16 (5th Cir.1985), *vacated and reinstated in relevant part*, 790 F.2d 1193, 1194 (5th Cir.1986), *aff'd*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) (leaving undisturbed the lower court's holding permitting the taxing of costs for daily trial transcripts where necessarily obtained for use in the case)….

Additionally, there are courts within the Eleventh Circuit which recognize that *other* federal courts have allowed the recovery of trial transcript costs when necessary to prepare for the cross-examination of a technical expert at that trial and when the Court reviewed portions of the transcript in reaching its decision. Friends of the Everglades v. South Fla. Water Mgt. Dist., 865 F.Supp.2d 1159, 1164 (S.D. Fla. Sept. 20, 2011) and Woods v. Deangelo Marine Exhaust, Inc., 2010 WL 4116571, *7 (S.D. Fla. Sept. 27, 2010) (citing Charter Medical Corp. v. Cardin, 127 F.R.D. 111, 113 (D. Md. 1989)).  See also Sensormatic Elec. Corp. v. Tag Co. US, 2009 WL 3208649, *4 (S.D. Fla. Oct. 2, 2009), *report and recommendation*, awarded trial transcript costs as "used the transcript for preparing for direct and cross-examination[.]"[4]

There are also courts within the Eleventh Circuit which have disallowed recovery of trial transcript costs when used to prepare for cross-examination. See, e.g., Scottsdale Ins. Co. v. Wave Tech. Communications, Inc., 2012 WL 750317, *2–3 (M.D. Fla. Mar. 7, 2012) (declining to tax cost of daily trial transcript as trial was not excessively long, issues were not complex, and multiple attorneys were present to take notes); Habersham Plantation Corp. v. Art & Frame Direct, Inc., 2011 WL 6138740,*2–3 (S.D. Fla. Dec. 9, 2011) (disallowing cost of daily trial

---

[4] See also e.g., United Int'l. Holdings, Inc. v. Wharf (Holdings) Ltd., 174 F.R.D. 479 (D. Colo. 1997) (Portions of daily trial transcript ordered for use in direct and cross-examination, weekly "mini-closings," and summation were necessarily obtained in complex commercial trial, and were properly taxable as costs).

transcripts as trial was relatively short and counsel, therefore, could have relied on their own recollection for preparation); <u>Durden v. Citicorp Trust Bank, FSB</u>, 2010 WL 2105921, *2–3 (M.D. Fla. Apr. 26, 2010) (declining to award costs of expedited trial transcript, finding the transcript was not necessary for use in the case, but rather was primarily for the convenience of counsel).  Indeed, case law in the Eleventh Circuit suggests that counsel's note taking during trial should replace any necessity for a trial transcript obtained for cross-examination preparation.[5]

Moreover, other federal courts have disallowed such costs for cross-examination preparation.[6]

---

[5] <u>See</u>, <u>e.g.</u>, <u>Pickett v. Tyson Fresh Meats, Inc.</u>, 2004 WL 3712721, *4 (M.D. Ala. Aug. 3, 2004) ("defendant argues that the daily transcripts were necessary…to assist in the presentation of its case. '[C]ounsel's reference to the transcripts during the trial does not testify to the need for them.'…Considering the lengthy nature of the trial, counsel likely used the daily transcripts to refresh their recollection about past testimony. 'Any one of the lawyers sitting with trial counsel could have taken notes for that purpose.'… lead counsel…was assisted by numerous partners, associates, and paralegals who had ample opportunity to take notes, and…such note-taking would have served the same purpose as the daily transcripts[]"); <u>Abbott Care, Inc. v. Epocal, Inc.</u>, 2012 WL 7810970, *6 (N.D. Ala. Nov. 5, 2012) ("Epocal asserts that the daily trial transcripts were reasonably necessary to…prepare for examination of witnesses….There were multiple attorneys and litigation support personnel in the courtroom each day of trial. Any of those individuals could have taken, and likely did take, notes in order to anticipate cross examination questions and legal arguments. The trial transcript undoubtedly was more complete than any notes a non-court reporter could have taken, but that does not mean that the daily transcripts were "necessary[]").

[6] <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. General Dynamics Armament and Technical Prod., Inc.</u>, 775 F.Supp.2d 1217 (D. Hawai'i 2011) (requested costs for daily transcripts covering trial were not recoverable, as unnecessary for presentation of case even though contractor asserted that transcripts assisted in presenting accurate final argument and cross-examination of later witnesses, where contractor routinely ordered transcripts as matter of custom for mere convenience of having transcripts, and counsel's notes would traditionally be used to prepare final argument and examine later witnesses); <u>Bucalo v. East Hampton Union Free School Dist.</u>, 238 F.R.D. 126 (E.D.N.Y. 2006) (citing <u>Webb v. Bermudez</u>, 2000 WL 1523140 (S.D.N.Y. 2000) and noting that district court did not consider defense counsel's use of daily transcripts as justification for assessing costs against plaintiff -- rather than rely on transcripts, counsel can prepare for cross-examination and summation by taking notes during testimony); <u>John G. v Board of Ed. of Mt. Vernon Public Schools</u>, 891 F.Supp. 122, 123 (S.D.N.Y. 1995) (granting motion to strike daily transcript costs and noting, for cross-examination purposes, attorneys typically take notes and need not refer to "precise language of witnesses"); <u>Refuse & Environmental Sys., Inc. v. Industrial Serv. of Am.</u>, 732 F.Supp. 1209 (D.Mass.1990), *aff'd in part, rev'd in part on other grounds* 932 F.2d 37 (refrained from ordering defendants to bear entire cost of trial transcript, where district court, rather than parties, needed transcript to resolve post-trial motions and plaintiffs did not need transcript for cross-examination or any other trial purpose); <u>United Rubber, Cork, Linoleum and Plastic Workers of Am,, AFL-CIO v. Lee Nat. Corp.</u>, 62 F.R.D. 194 (S.D.N.Y. 1974) (transcripts taxable as costs where it was necessary that both defendant and the court be furnished a stenographic record, in that trial stretched over a four-week period and the court requested the parties to submit briefs and availability of transcript became more than a convenience for the court in ruling on motions, but costs of expedited transcript would not be taxed since case did not involve expert witnesses whose cross-examination required daily transcript of

(Continued)

8

However, the case law references the securing of daily trial transcripts, *during trial*, for use during *that* trial.  The situation before the Court is distinct.  Austal seeks the costs to obtain trial transcripts not on a daily basis during any particular trial, but rather from one trial to the next, in this bifurcated case, to prepare for a "successful" cross-examination of "repeat appearance" witnesses from trial to trial (*i.e*., for impeachment).  The undersigned has located case law which suggests that the trial transcript would have to be used in the second or subsequent trial, to even be *potentially* recoverable as a cost.  See, e.g., Taylor v. Westinghouse Elevator Co., 1989 WL 132840, *2 (E.D. La. Oct. 31, 1989) ("Plaintiff further argues…the transcription fees of the mistrial should not be included as costs…Defendant…argues that the transcripts were used to prepare testimony of necessary witnesses at the trial, and to use for impeachment purposes if the witnesses testified differently at the second trial…The defendant in this case did not use the transcript in the second trial although he may have used it to prepare for the second trial. Thus, the transcripts were not necessary for use at trial, and such costs should not be taxed against the plaintiff[]").

Austal asserts that the trial transcripts costs are recoverable because they were used to prepare for cross-examination.  Austal does not indicate if such transcripts were used in the subsequent trials.  Austal does not even indicate which trial transcripts are at issue – simply seeking recovery for all of them.  At best then, Austal may have used *some* trial transcripts to prepare for the other trials, but the Court is unable to independently recall to what extent.  And

---

their testimony and time was not of the essence); Cooke v. Universal Pictures Co, 135 F.Supp. 480 (S.D.N.Y.1955) (transcript while helpful was not necessary as prevailing party did not claim it assisted him in cross-examination).

Austal has not provided this necessary information.  Thus, upon consideration, Austal's request is **DENIED**.

## 2.   **Deposition Transcripts**

Austal seeks to recover deposition transcript costs as part of its **$37,585.65** request. Of this sum, **$4,978.25** in deposition transcripts was already taxed as recoverable (allowing for the depositions used at trial – namely Carver, Friedlieb and O'Dell).  (Docs. 951-2 at 1-2; 951-5).[7] Specifically, after reviewing Doc. 951-2 at 1-2 and deleting the trial transcripts, video entries and the amounts for Carver, Friedlieb and O'Dell, before the Court are **$23,542.10** in deposition transcript costs comprised of the following: 1) as to Plaintiffs -- $715.70 for Earaton Adams, $806.15 for Robert Adams, $922.00 for Barnes, $520.90 for Bumpers, $742.55 for Carter, $674.10 for Cunningham, $1,336.55 for Hedgeman, $1,096.00 for Hollis, $822.85 for Johnson, $869.45 for Laffiette, $630.55 for Law, $955.95 for Matthews (including a $49 charge for non-appearance), $1,051.90 for Pettibone, $514.10 for Pratt, $612.85 for Reed, $1,150.20 for Roberson, $916.00 for Slay, $949.85 for Stills, $1,031.80 for Sullivan (including a $49 charge for non-appearance), $1,390.75 for Beverly Thomas, and $460.25 for Franklin Thomas, $669.55 for Wells, and $603.10 for Williams; and 2) as to Others -- $547.50 for Browning, $331.95 for

---

[7] Costs associated with late fees, expedited transcripts, where it is not shown that expediting the transcripts is indispensable, and postage are not taxable.  Maris Distrib. Co. v. Anheuser–Busch, Inc., 302 F.3d 1207, 1225 (11th Cir. 2002); Knight v. Paul & Ron Enters., Inc., 2015 WL 2401504, *9 (M.D. Fla. May 19, 2015).  Likewise, the costs for digital and condensed deposition transcripts, summaries, and shipping of the transcripts are not recoverable. See, e.g., Ferguson v. Bombadier Servs. Corp. et al., 2007 WL 601921, *4 (M.D. Fla. Feb. 21, 2007) (denying recovery of condensed transcripts); Awwad v. Largo Med. Ctr., Inc., 2013 WL 6198856, *4 (M.D. Fla. Nov. 27, 2013) (denying recovery of shipping costs associated with deposition transcripts) (citing Watson v. Lake Cnty., 492 Fed. Appx. 991, 997 (11th Cir. 2012)). "Costs associated with delivering, shipping, or handling transcripts are ordinary business expenses and are not recoverable." Kerns v. Pro-Foam of South Ala., Inc., 2007 WL 2710372, *3 (S.D. Ala. Sept. 13, 2007) (internal quotes omitted).  In its submission, Austal has already subtracted the amounts on the deposition transcript invoices for condensed versions, depo drives and/or any delivery charges. As such, this is a non-issue on review of the motion to retax.

Combs, $327.60 for Koblas, $1,796.25 for Lindley, $646.75 for Pate, and $448.95 for Robinson.

In this Court Standing Order 13 requires the prevailing party to submit a "written representation ... that a substantial portion of the deposition was admitted in evidence on the trial of the case."  Otherwise the clerk may not tax the costs of either the original or a copy of a deposition unless otherwise ordered by the court.  Id.  Standing Order 13 provides that costs shall be taxed as follows:

> 1. Deposition Costs:
> (a) The Clerk may tax the cost of an original deposition upon the written representation of counsel for a party claiming the cost that a substantial portion of the deposition was admitted in evidence on the trial of the case.
> (b) The Clerk shall not otherwise tax the costs of either the original or a copy of the deposition (unless otherwise ordered by the court) and any party desiring to tax the cost of depositions other than those described in subparagraph (a) shall file in writing a motion to re-tax the costs pursuant to Fed.R.Civ.P. 54(d) [sic] and Local Rule 54.1 and present the matter to the court.

*However*, the court is not limited by Standing Order 13. As explained in Catanzaro v. Alabama State Port Auth., 2006 WL 3933275, *3 (S.D. Ala. Dec. 7, 2006) that:

> The court has discretion to award costs under Section 1920 regardless of the limitations of Standing Order 13. Standing Order 13 provides that "any party desiring to tax the cost of depositions other than those described in subparagraph (a) shall file in writing a motion to re-tax the costs pursuant to Fed.R.Civ.P. 45(d) [sic] and Local Rule 54.1 and present the matter to the court ." Local Rule 54.1 provides the procedure for taxation of costs by the clerk in this court. It specifically states that "This order limits only the authority of the clerk to assess costs for certain items otherwise taxable under Section 1920 but does not limit a prevailing party's ability to recover under the statute." Thus, if the expenses are specifically enumerated in § 1920, the court upon proper motion by the prevailing party, may tax the expenses although they were correctly disallowed by the clerk pursuant to Standing Order 13 .....

(Id. (emphasis added)). See also Coulter v. J.C. Penney Corp., Inc., 2007 WL 1521634, *1 (S.D. Ala. May 23, 2007).

Taxation of deposition expenses is authorized by 28 U.S.C. § 1920(2). United States

E.E.O.C. v. W&O, Inc., 213 F.3d 600, 620 (11th Cir. 2000).  However, "[w]here the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only, the costs are not recoverable." Id. Whether the costs for a deposition are taxable depends on "whether the deposition was wholly or partially 'necessarily obtained for use in the case." Id. at 621. While admission into evidence or use during cross-examination at trial tends to demonstrate that a deposition transcript was necessarily obtained, "[i]t is not necessary to use a deposition at trial to be taxable[.]" W&O, 213 F.3d at 621; Kolesar, 313 F.2d at 840 (stating that "the utility (and necessity) for a deposition is not alone measured by whether all or any part of it is formally offered in evidence as such[ ]").[8] "[O]btaining deposition transcripts for use during discovery may be taxable as long as it is necessary to the issues in the case when the deposition was taken." Lovett v. KLLM, Inc., 2007 WL 983192, *6 (N.D. Ga. Mar. 26, 2007). "[D]eposition costs are taxable even if a prevailing party's use of a deposition is minimal or not critical to that party's ultimate success[.]" Ferguson v. Bombardier Serv. Corp., 2007 WL 601921, *3 (M.D. Fla. Feb. 21, 2007).

The burden falls on the losing party to show that specific deposition costs or a particular court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition. W&O, 213 F.3d at 621; Helms v. Wal–Mart Stores, Inc., 808 F. Supp. 1568, 1571 (N.D. Ga. 1992) (providing that "since both parties should be aware of the reasons to take a deposition, the non-prevailing party should explain why the court should not grant that cost[]"). A deposition taken within the proper bounds of discovery

---

[8] The provisions of 28 U.S.C. § 1920(2) allow the taxation of fees of a court reporter who prepares a "stenographic transcript necessarily obtained for use in the case." The trial judge has discretion in determining whether costs of copies are taxable and must decide whether the copies were necessarily obtained for use in the case.

will normally be deemed to be "necessarily obtained for use in the case" and its costs will be taxed unless the opposing party interposes a specific objection that the deposition was improperly taken or unduly prolonged. See, e.g., Air Turbine Tech., Inc. v. Atlas Copco AB, 2008 WL 544731, *3 (S.D. Fla. Feb. 26, 2008).   As such, Plaintiffs must pose a specific objection to any deposition transcript that it believes is not taxable. Id. See, e.g., Dillon v. Axxsys Int'l., Inc., 2006 WL 3841809, *6 (M.D. Fla. Dec. 19, 2006).

Depositions have been found to be recoverable when witnesses were listed as trial witnesses but the depositions were not used or admitted at trial, as well as in other circumstances. Caribbean I, 2009 WL 2150903, *3-5.   As explained in Caribbean I, 2009 WL 2150903, *3 (footnote omitted):

> …While admission into evidence or use during cross-examination at trial tends to demonstrate that a deposition transcript was necessarily obtained, "[i]t is not necessary to use a deposition at trial to be taxable[.]" W & O, Inc., 213 F.3d at 621; U.S. v. Kolesar, 313 F.2d 835, 840 (5th Cir.1963)1 (stating that "the utility (and necessity) for a deposition is not alone measured by whether all or any part of it is formally offered in evidence as such[ ]"). "[O]btaining deposition transcripts for use during discovery may be taxable as long as it is necessary to the issues in the case when the deposition was taken." Lovett v. KLLM, Inc., 2007 WL 983192, *6 (N.D.Ga. Mar. 26, 2007). "[D]eposition costs are taxable even if a prevailing party's use of a deposition is minimal or not critical to that party's ultimate success [.]" Ferguson v. Bombardier Serv. Corp., 2007 WL 601921, *3 (M.D.Fla. Feb. 21, 2007). The burden falls on the losing party to show that specific deposition costs or a particular court reporter's fee was not necessary for use in the case or that the deposition was not related to an issue present in the case at the time of the deposition. W & O, Inc., 213 F.3d at 621; Helms v. Wal–Mart Stores, Inc., 808 F.Supp. 1568, 1571 (N.D.Ga.1992) (providing that "since both parties should be aware of the reasons to take a deposition, the non-prevailing party should explain why the court should not grant that cost [ ]"), aff'd, 998 F.2d 1023 (11th Cir.1993)….

And as enunciated by the Eleventh Circuit in W&O, 213 F.3d at 621 (citations omitted):

> Taxation of deposition costs of witnesses on the losing party's witness list is reasonable because the listing of those witnesses indicated both that the [prevailing party] might need the deposition transcripts to cross-examine the witnesses and that "the information

13

those people had on the subject matter of this suit was not so irrelevant or so unimportant that their depositions were outside the bound of discovery."

See also Murphy v. City of Flagler Beach, 761 F.2d 622, 631 (11th Cir. 1985); Preis, 2007 WL 3120268, *1-2. Additionally, while these depositions were not admitted into evidence at trial, these individuals testified at trial. See, e.g., Van Voorhis v. Hillsborough Bd. of Cty. Com'rs, 2008 WL 2790244, *4 (M.D. Fla. Jul. 18, 2008). Depositions have also been deemed recoverable where individuals were not listed as trial witnesses and their depositions were not admitted into evidence at trial, but testified at trial. Caribbean I, 2009 WL 2150903, *5. Depositions have been deemed recoverable where individuals' depositions were used at trial and the individuals were listed as trial witnesses, but the depositions were not admitted into evidence. Id. Finally, "[t]axation of deposition costs of witnesses on the losing party's witness list is reasonable…" W&O, Inc., 213 F.3d at 621; Murphy, 761 F.2d at 631; Preis, 2007 WL 3120268, *1-2.

Austal has asserted as follows in support of its request for the deposition transcripts:

… Obviously, the depositions of the Plaintiffs were necessary for Austal to effectively prepare to cross-examine the Plaintiffs, all of whom were either parties or listed as witnesses in each of the 5 trials. In fact, most of the Plaintiffs who testified were impeached on numerous occasions with their prior deposition testimony. Introduction of the deposition transcript into evidence is not the measure of whether the expense for obtaining the transcript was necessarily incurred. Kolesar, 313 F.2d at 839-40. Moreover, most of the Plaintiffs who were not called as witnesses at trial were those whose claims were dismissed on summary judgment. Austal could not possibly have obtained summary judgment against these Plaintiffs without their deposition transcripts.

Similarly, obtaining the transcripts of Austal's key HR and management witnesses was necessary for Austal to prepare its direct examination of these witnesses and to prepare the witness for cross-examination by the Plaintiffs. Additionally, some of the witnesses had moved outside of the subpoena power of the Court, and their testimony could only be presented by deposition. (E.g., Jeff O'Dell, Stephanie Pate.)…

(Doc. 962 at 6).  Plaintiffs object to taxation of the deposition transcript costs, citing Standing

Order 13(1)(a), and asserting that substantial portions were not admitted into evidence at trial. (Doc. 952 at 2-7; Doc. 964 at 3; Doc. 964-1 at 2-7, 12). However, the burden fell to Plaintiffs to show that specific deposition costs or court reporter's fees were not necessary for use in the case or that depositions were not related to an issue present in the case at the time of the depositions. Plaintiffs have neither articulated as much nor provided support for such a finding.

The Court agrees with Austal, that as the prevailing party it incurred costs for depositions that were necessary for its case – including but not limited to as part of discovery, for its multiple motions for summary judgment and/or for the multiple bifurcated trials (and various other motions). Plaintiffs' singular objection -- that a substantial portion of the depositions were not admitted into evidence at trial -- is unavailing. As explained in the case law set forth above, for deposition costs to be recoverable they do not necessarily have to be admitted (either in full or in part) at trial. Additionally, many of these deposed individuals were plaintiffs who testified live at trial or were listed as witnesses for the various trials; depositions costs have been awarded under such circumstances when necessarily incurred for the case. Caribbean I, 2009 WL 2150903, *3-5. Moreover, the Court has reflected upon the history of this case and how profusely the depositions were utilized by Austal during the course of this litigation. Further, Plaintiffs have not established the depositions were unnecessary or unrelated to issues in the case. Upon consideration and based on the unique circumstances of this complex case, Austal's request for the deposition transcript costs is **GRANTED** as to the recovery of certain deposition transcripts *supra*; and **DENIED** as to the full amount sought (video and trial transcripts are excluded). Thus, Austal is awarded *additional* deposition costs in the amount of **$23,542.10.**

15

D.      **Trial Subpoenas**

Austal seeks recovery of **$367.80**[9] incurred to serve one (1) trial subpoena ($70.00) on

Plaintiff Carlos Johnson (for the first trial) on September 26, 2011; and four (4) trial subpoenas

on former Austal HR Manager Andrew Carver (for all trials) (1 for $70 on September 15, 2011,

2 for $70 total on January 9, 2012, and 1 for $157.80 on March 12, 2015 ("two different

addresses attempted, some wait")).  (Doc. 951-2, 951-4).

As set forth in Section 1920(1), "[f]ees of the clerk and marshal" may be taxed as costs.

This includes trial subpoenas. While Section 1920(1) specifies "marshal," the Eleventh Circuit

has held service by a private process server to be compensable, provided that their rates do not

exceed the cost of having the U.S. Marshals Service effectuate service. W&O., 213 F.3d at 623-

624.   Thus, "private process server fees may be taxed" so long as they do not exceed the

statutory fee authorized under Section 1921 (i.e., the fee for service of process cannot exceed that

charged by the U.S. Marshal). Id.  See also 28 C.F.R. § 0.114(a)(3).  Additionally, a party may

recover the costs for service of a trial subpoena even when that party does not call the witness at

trial. See, e.g., Maris, 2001 WL 862642, *1 (awarding costs for service of subpoenas on two trial

witnesses who never testified); Barrera v. Weiss & Woolrich Southern, 900 F.Supp.2d 1328,

1333 (S.D. Fla. 2012) (same). Moreover, in order to determine whether recovery for trial

subpoena costs are appropriate, "the court need only determine whether the subpoenas were

reasonable and necessary when served in light of the facts known at the time of service[.]"

Movitz, 982 F.Supp. at 574; Powell, 548 F.Supp.2d at 1359 ("[i]n order to recover subpoena

---

[9] While the sum was not specified by Austal in its motion to retax, a review of Doc. 951-2 delineates the costs associated with these specific trial subpoenas.

costs for witnesses who did not ultimately testify at trial, the witnesses must have been reasonable and necessary[]").

At the outset, the rates for service of trial subpoenas when the foregoing subpoenas were served include the following: $55/hour in September 2011; $55/hour in January 2012; and $65/hour in March 2015.[10]  As such, those are the maximum recoverable rates (plus travel costs and any out of pocket expenses if requested) for the trial subpoenas.

Concerning Carver, Plaintiffs assert that they had served him with trial subpoena and called him to testify during their case in chief, such that Austal's additional subpoenas were unnecessary.  Plaintiffs add that Austal did not call on Carver to testify in their case.  Per Austal, however, Carver was vital to their case and a copy of Plaintiffs' subpoena was not provided so it "had no way of knowing whether Plaintiffs would elect to call Carver as a witness…[and] would have been grossly remiss to simply rely on Plaintiffs…."  (Doc. 962 at 5).  As for the duplicative nature of the subpoena, "Plaintiff, however, cites no authority in support of this argument, and the undersigned finds the argument unpersuasive." Cadle v. Geico Gen. Ins. Co., 2015 WL 4352048, *11 at note 6 (M.D. Fla. Jul. 14, 2015).   Moreover, Carver provided abundant testimony at the trials, and it does not matter that Austal did not call him to testify for their case. See, e.g., Maris, 2001 WL 862642, *1;  Barrera, 900 F.Supp.2d at 1333.  The Court finds it was reasonable and necessary for Austal to serve Carver with a subpoena.

As for Johnson, Plaintiff's' objection to the subpoena as a recoverable cost is because he

---

[10]  See, e.g., United States v. Miller, 2015 WL 1056015, *4 (M.D. Fla. Feb. 17, 2015) ($65/hour as the applicable rate); DuChateau v. Camp Dresser & McKee, Inc., 2012 WL 1069166, *3 (S.D. Fla. Mar. 29, 2012) ($55/hour as the applicable rate); Frazier v. Absolute Collection Serv. Inc., 767 F.Supp.2d 1354, 1369 at note 5 (N.D. Ga. 2011) (same).

was a plaintiff and so a subpoena was not necessary.  Plaintiffs add that Austal never sought to serve him through counsel.  Austal contends Johnson was still employed by the company during the first trial and prior to the trial starting, Austal adds that it learned that Johnson was interested in dismissing his lawsuit (i.e., that he may no longer be a party) and had been telling other employees at the company that he had not been racially harassed.  Austal states it anticipated calling Johnson as a defense witness even if he dismissed his case in advance of trial.  The Court finds it was reasonable and necessary for Austal to serve Johnson with a subpoena.

In sum, Austal's request for the costs of serving the trial subpoenas on Carver and Johnson is **GRANTED in part** and **DENIED in part** as follows: **GRANTED** as to the recovery of the trial subpoenas; and **DENIED** as to the full amount sought.  Specifically, the amounts are reduced to comply with the U.S. Marshals' cost in effect at the time (i.e., Johnson's September 26, 2011 $70 subpoena is reduce to $55, Carver's $70 September 15, 2011 subpoena is reduced to $55, and Carver's $70 January 9, 2012 subpoenas are reduced to $55).  Additionally, regarding Carver's $157.80 March 12, 2015 subpoena, as no explanatory information was provided by Austal as to "two addresses" and additional "wait time," said subpoena is reduced to $65, the U.S. Marshal's going rate at that time.  Thus, Austal is awarded **$230.00.**

**E.  Printing**

Austal seeks recovery of **$10,614.68** for printing expenses.  (Docs. 951-1; 951-2 at 3-5; 951-6; 962 at 8).  In support, Austal contends as follows:

This case was filed on March 20, 2008 (Doc. 1) and was actively litigated for more than 7 years through the date of the last trial which concluded in April 2015. In Trial I alone, between the parties, more than 500 exhibits, many of which were voluminous, were identified for use during trial. (Docs. 444, 468.) Further, there have been over 960 filings with the Court. (See docket.) Clearly, Austal necessarily incurred printing expenses.

18

> Merely complying with the Court's pretrial instructions required Austal to print many
> thousands of pages. Yet, Austal was not awarded any amount for its claimed printing
> expenses, even those to which Plaintiffs did not object (totaling $3,896.10, Doc. 952 at
> 9.) The printing expenses identified in Austal's Bill of Costs were necessarily incurred
> and should be taxed in Austal's favor.

(Doc. 962 at 8 (footnote omitted)).

Specifically, Austal seeks to recover printing expenses for courtesy copies of summary judgments ($896.50), trial exhibits (in bench binders) ($1,651.89, $687.08, $1,113.39, $1,170.73, $92.90, $222.29, $34.84, $1,071.24, $489.70), demonstrative trial exhibits/"blow ups" ($100.10, $150.16, $400.40, $396.76, $20.53)[11], trial exhibits placed on computer disk, copies of Beverly Thomas' state court case CV 2005-003745.51, copies of court pleadings/orders in this case, correspondence with counsel, and color copies of transcripts (presumably for highlighted deposition designation bench books provided to the Court).  Plaintiffs object to $3,896.10 of these requested costs (Doc. 952 at 8-9), contending that the demonstrative exhibits/blow-ups are not recoverable, bench binders were an unnecessary expense for plaintiffs Slay, Bumpers, Reed and Cunningham as those trials never took place, and copying the entire docket as well as correspondence with opposing counsel were unnecessary expenses.

Section 1920(4) provides for the taxation of copying costs and section 1920(3) provides for the taxation of "[f]ees and disbursements for printing." 28 U.S.C. § 1920(3) & (4).  While Austal need not provide "an accounting for each photocopy", it has the burden to provide "evidence showing the nature of the documents copied and how they were used." Dillon v. Axxsys Int'l, Inc., 2006 WL 3841809, *7 (M.D. Fla. Dec.19, 2006); Powell, 2010 WL 4116488,

---

[11] These include 24x36 color enlargements showing pay increases for the Hedgeman and Carter trials, pay rates for the Adams, Barnes and Johnson trials, "time lines," and "noose time line for closing."

at *17. As set forth in Weller v. Finger, 2010 WL 2465522, *9 (S.D. Ala. Jun. 15, 2010):

>…"[I]n evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *W & O*, 213 F.3d at 623. For example, the cost of copying documents produced by an adverse party may be awardable under this rule. *Id*. However, "[e]xtra copies or copies prepared for the convenience of counsel are not taxable...." *Biomedical Disposal, Inc. v. Mediq/PRN Life Support Services, Inc*., 2007 WL 2593075 at *3 (N.D.Ga. September 4, 2007); *accord Bates v. Islamorada, Village of Islands*, 2007 WL 2113586 at * 18 (S.D.Fla. July 23, 2007); *Pickett v. Tyson Fresh Meats, Inc*., 2004 WL 3712721 at *6 (M.D.Ala. August 3, 2004) (the first copy of opponent's trial exhibits was necessarily obtained, but the second and third copies were for the convenience of counsel and not taxable)…. Defendant, citing *Miller v. Kenworth of Dothan, Inc*., 117 F.Supp.2d 1247 (M.D.Ala.2000), also asserts that plaintiff failed to specify the purpose of the photocopies or explain the nature of the documents copied. In *Miller*, the court found that a claim for copying described only as "copying expense[s]" and "[g]eneral copying throughout file" was not sufficient documentation to demonstrate that the photocopying costs were necessary for use in the litigation. *Id*. at 1265….While not every page is described, it is apparent what is being copied and the court finds that, without any specific objections to particular documents, the descriptions are sufficient to demonstrate that they were necessary….

Additionally, costs "for copies of original documents possessed by the prevailing party are not taxable" and costs "for extra copies and for documents prepared for convenience, preparation, research, or for the records of counsel are not taxable." Scottsdale Ins. Co., 2012 WL 750317, *3; Gray v. Novell, Inc., 2012 WL 3886026, *2 (M.D. Fla. Sept. 6, 2012); Autry Petroleum Co. v. BP Products North America, Inc., 2010 WL 3239010, *2 (M.D. Ga. Aug. 16, 2010). Moreover, costs of physical exhibits like charts, models, or replicas and costs of foam board blow-ups are generally not allowed. Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc., 249 F.3d 1293, 1297 (11th Cir. 2001) ("[i]n this circuit, physical exhibits like models and charts simply may not be taxed as costs because there is no statutory authorization[]"); Moncus v. Johanns, 2006 WL 1180950, *6 (M.D. Ala. May 2, 2006) ("While the enlargements of these memoranda may have demonstrated counsel's points with increased clarity, enlargement of the

20

documents was not necessary within the meaning of § 1920. The government could have used the letter-size originals and the Elmo to achieve a similar effect.") (citation omitted); Powell, 2010 WL 4116488, at *21.  See also In re Scientific–Atlanta, Inc. Securities Litigation, 2011 WL 2671296, *1 (N.D. Ga. Jul. 6, 2011).  Further, copying costs "merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only" are not recoverable." W&O, 213 F.3d at 620–621.  This includes copies made for trial notebooks for counsel. These costs are not taxed because trial notebooks are generally prepared for convenience of counsel and not necessarily obtained for use in the case. Powell, 2010 WL 4116488, *16 (finding costs for creation of notebooks including binders and tabs was not taxable); Scottsdale Ins. Co., 2012 WL 750317, *3 (costs "for documents prepared for ... preparation ... are not taxable[]").

Austal submitted invoices for the costs incurred for preparing courtesy copies of the 22 summary judgments, trial exhibits (for the Court, for Plaintiffs, and for its own convenience), and demonstrative exhibits/blow ups for trial, but no invoices for the other requested items[12] (i.e., many of the printing costs only indicate – as support – Austal's  statement that it conducted a "manual count").   The Court cannot award costs for printing when Austal has provided no supporting invoice for having incurred said costs.   Additionally, the Court finds persuasive Plaintiffs' objections that: 1) demonstrative exhibits/blow-ups are not recoverable (Arcadian Fertilizer 249 F.3d at 1297 and Moncus, 2006 WL 1180950, *6)); 2) bench binders were an

---

[12] For example, while Austal references D7 for Thomas' trial exhibits "produced on disk", D7 (Doc. 951-6 at 8) is not an invoice documenting same; and Austal references D8 as showing the copying fees for Beverly Thomas' state court case but D8 (Doc. 951-6 at 9) shows no such charge.  As for the bench books (presumably deposition designations) Austal lists the copies "manual[ly] counted," submitting no invoices for same.  The same applies to Austal's request for certain bench binders for "March 16 and March 25 trials."  (Doc. 951-2 at 4).

unnecessary expense for plaintiffs Slay, Bumpers and Reed as those trials never took place; and 3) Austal has not explained the necessity for copying the entire docket record of pleadings and/or correspondence with opposing counsel.  Moreover, the Court finds that certain portions of the copies/printing labeled "trial exhibits" contained costs incurred for convenience of counsel and such are not recoverable.  See, e.g., Powell, 2010 WL 4116488, *16 and Scottsdale Ins. Co., 2012 WL 750317, *3.  As a result, the following are not recoverable: Doc. 951-6 at 3, noting "1 set in binders for work copies" and the cost "for originals" as $650.63; Doc. 951-6 at 10, noted as "original" at $555.97;  Doc. 951-6 at 11, noted as "original" at $541.98; Doc. 951-6 at 121, noted as "original" at $439.32; and Doc. 951-6 at 122, noted as "original" at $302.04.

Upon consideration, Austal's request is **GRANTED in part** insofar as it may recover a total of **$2,611.00** for printing costs for the costs incurred for the courtesy copies of the 22 summary judgments ($896.50) and for the trial exhibits for those trials which took place (excluding Slay, Bumpers, Reed and Cunningham costs and costs incurred for convenience of counsel -- thus including only $687.08 (Doc. 951-6 at 4), $268.82 (Doc. 951-6 at 10), $285.51 (Doc. 951-6 at 11), $349.23 (Doc. 951-6 at 121) and $123.86 (Doc. 956-1 at 122)); all other requested costs are **DENIED.**

F.    **Certified Copies**[13]

Austal seeks recover of **$177.50** for certified copies of materials necessarily obtained for use in the case.  (Docs. 951-1; 951-2 at 7; 951-8; 962 at 8).  Specifically, Austal seeks to recover the costs for certified copies of the District Clerk of Mobile County court records for Plaintiffs

---

[13] Per Standing Order 13, "[t]he trial judge has discretion in determining whether costs of copies are taxable[.]"

Hedgeman, Barnes, Hollis, Cunningham, Pratt and Reed.

Section 1920 permits costs to be taxed for certified copies of documents and copies of documents 'necessarily obtained for use in the case.'" Goodwall, 824 F.Supp. at 1063.  As specified in Butler v. Wright, 2010 WL 599387, *7 (M.D. Fla. Feb. 16, 2010):

> …Under § 1920(4), photocopying costs "necessarily obtained for use in the case" are compensable. General photocopying costs are not compensable. *Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir.1996). The party seeking to recover photocopying costs must come "forward with evidence showing the nature of the documents copied and how they were used." *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.,* 143 F.R.D. 292, 300 (N.D.Ga.1991)…without further documentation, the court is left to speculate as to the nature of the documents and how they were used….

See also PNC Bank Natl. Assoc. v. Orchid Group Invest. L.L.C., 2014 WL 4954779, *1 (M.D. Fla. Oct. 2, 2014) (awarding costs to obtain certified copies of state court records used as exhibits at trial); Exhibit Icons, 2009 WL 3877667, *5 (awarding costs for certified copies). Additionally, as set forth in W&O, 213 F.3d at 623,  "in evaluating copying costs, the court should consider whether the prevailing party could have reasonably believed it was necessary to copy the papers at issue." See also Loranger, 10 F.3d at 784 (the party seeking an award of costs bears the burden of submitting a request that enables the Court to determine whether those costs are recoverable). However, "[e]xtra copies or copies prepared for the convenience of counsel are not taxable...." Biomedical Disposal, Inc. v. Mediq/PRN Life Support Servs., Inc., 2007 WL 2593075, *3 (N.D. Ga. Sept. 4, 2007); *accord* Bates v. Islamorada, Village of Islands, 2007 WL 2113586, *18 (S.D. Fla. July 23, 2007); Pickett v. Tyson Fresh Meats, Inc., 2004 WL 3712721, *6 (M.D. Ala. Aug. 3, 2004) (the first copy of opponent's trial exhibits was necessarily obtained, but the second and third copies were for the convenience of counsel and not taxable). Moreover, per Miller v. Kenworth of Dothan, Inc., 117 F.Supp.2d 1247, 1265 (M.D. Ala. 2000), a

prevailing party's failure to specify the purpose of the photocopies or explain the nature of the documents copied is insufficient.

The Court is familiar with Austal's use of the certified copies of the court records of Plaintiffs Hedgeman, Barnes, Hollis, Cunningham, Pratt and Reed, as used at trial, and thus is not left to speculate as to their use.  Austal has also alleged that the copy costs were necessarily incurred for use in the case.  Upon consideration, Austal's request is **GRANTED.**

## G.     Other expenses

Austal initially sought recovery of **$13,526.30** in "other" costs (for mediation, production of emails/digital data, expert related documents, and attorney travel expenses).  Austal now appears to seek recovery of only **$8,801.97** (for expert witnesses, mediation, and travel) on the basis that it is a prevailing party in a Section 1981/Title VII case.  (Doc. 962 at 9-11).  Regardless of the amount, this Court has already ruled, with the Eleventh Circuit's affirmance, that there is no basis for Austal to recover non-taxable costs under the civil rights statutes.  As such, this Court will only address the requested costs with regard to Section 1920's applicability.

### 1.     Emails/electronic data

Austal seeks to recover **$4,723.83** for emails and electronic/digital data compiled by Plaintiffs' expert Dr. Bradley, as copying costs.  (Doc. 962 at 8-9 and n.9 (citing Doc. 951-9 at G2, G3, G5)).  Specifically, Austal seeks recovery to produce emails as part of discovery and to obtain already compiled electronic data to support its Daubert motion to exclude Dr. Bradley's testimony, characterizing them as "digital copies" necessarily obtained for use in the case under Section 1920(4).  However, the costs sought do not relate to a deposition transcript or a true "digital copy."  And creating an electronic database/compilation or enhanced digital files "goes

24

well beyond the statutory intent" for taxable digital copies.  Finnerty v. Stiefel Labs., Inc., 900 F.Supp.2d 1317, 1321-1322 (S.D. Fla. Oct. 16, 2012) (refusing to award the costs of an electronic database that was solely for the creating party's convenience).  See also e.g., Johnson v. Allstate Ins. Co., 2012 WL 4936598, *6 (S.D. Ill. Oct. 16, 2012) (refusing to award costs for creation of litigation database, processing of ESI, extraction of metadata, deduplication, electronic data hosting, or preparation for production of ESI); Abbott Point of Care, Inc. v. Epocal, Inc., 2012 WL 7810970, *2-4 (N.D. Ala. No. 5, 2012) (disallowing a Section 1940(4) (copies) request for "e-discovery costs" relating to e-discovery and database charges). Moreover, Austal has not sufficiently explained how this digital/electronic data was necessarily obtained for use in the case rather the convenience of counsel.  See, e.g, Cadle, 2015 WL 4352048, *6 ("Defendant provides no explanation why it was necessary to obtain the transcript exhibits in this case....Therefore, it appears that Defendant obtained the transcript exhibits merely for its convenience, and thus may not recover the costs associated with the exhibits. Likewise, the costs for digital and condensed deposition transcripts, summaries, and shipping of the transcripts are not recoverable[]"); Zarra v. Sun Sentinel Co., 2013 WL 704770, *1 (S.D. Fla. Feb. 26, 2013) (internal citations omitted) ("[u]nless shown to be necessary...digital copies are not recoverable under 28 U.S.C. § 1920(2)...[b]ecause Defendant has not explained why the disputed charges were necessary rather than just convenient, those costs are not taxable against Plaintiffs[]"); Powell, 2010 WL 4116488, *19 (disallowing costs for file folder captures, scans into email, etc.). Thus, Austal's request is **DENIED**.

### 2.    **Expert Witness**

Austal seeks to recover **$5,560.70** for its expert witness Dr. Dwight Steward, as necessary

to rebut Plaintiffs' expert Dr. Bradley and "instrumental in securing the dismissal of Plaintiffs' disparate impact claims and their withdrawal of Dr. Bradley's opinions."  (Doc. 962 at 9-10 (citing Doc. 951-9 at 5)).

"The general rule in civil litigation in federal courts is that expert witness fees are not taxable as costs beyond the statutory per diem fee, mileage and the subsistence allowance provided for under 28 U.S.C. § 1821." D.B. v. Orange Cty., Fla., 2015 WL 847293, *3 (M.D. Fla. Feb. 26, 2015).  As enunciated in Kerns, 2007 WL 2710372, *2 (emphasis added):

> …**It is black-letter law that expert witness fees cannot be taxed as costs**. *See, e.g., Morrison v. Reichhold Chemicals, Inc.,* 97 F.3d 460, 463 (11th Cir.1996) ("we find that the district court erred in taxing as costs any amount for expert witness fees in excess of the $40 per day allowed under § 1821, and, upon remand, the district court should reduce the taxable costs accordingly"); *L&W Supply Corp. v. Acuity,* 475 F.3d 737, 741 (6th Cir.2007) ("we hold that expert witness fees may not be taxed as costs at a court's discretion under Rule 54(d) because § 1920 does not provide for them"); *Walker v. Bozeman*, 243 F.Supp.2d 1298, 1308 (N.D.Fla.2003) ("Expert witness fees (above the $40 daily attendance fee applicable to any witness ... ) are not recoverable.")….

Additionally, pursuant to 28 U.S.C. § 1920(3), courts may tax costs for "fees and disbursements for ... witnesses."  Witness costs are set by 28 U.S.C. § 1821(b), through which "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  In short, these costs are limited to witness payments of $40/day.  PODS Ent., LLC v. U-Haul Int'l, Inc., 2015 WL 5021668, *1 (M.D. Fla. Aug. 24, 2015).  Expenses for expert witnesses which exceed $40 per day (the statutory per diem fee), mileage and subsistence allowance under Section 1821 are not taxable.  D.B., 2015 WL 847293, *3-4.  Moreover, this Court's Standing Order 13 provides "[n]o fees of expert witnesses in excess of the above

26

mentioned attendance, subsistence and travel fees shall be taxed."  Further, Dr. Steward was not a witness at trial such that even the $40/day cost is inapplicable.  The expert witness costs Austal seeks then, fall *outside* those costs which Section 1920 permits, and are "clearly nonrecoverable."  Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996); Kivi v. Nationwide Mut. Ins. Co., 695 F.2d 1285, 1289 (11th Cir. 1983) ("additional amounts paid as compensation, or fees, to expert witnesses cannot be allowed or taxed as costs in federal courts[]").  Finally, Austal's characterization of the import of Dr. Steward's expert report is unpersuasive as such is based on its own opinion rather than a ruling of this Court.[14]  Thus, Austal's request is **DENIED**.

### 3.   Mediation

Austal seeks recovery of **$2,044.50** for mediation costs.  (Doc. 951-9 at 2; Doc. 962 at 9-10).  Mediation costs are not recoverable under Section 1920.  Nicholas v. Allianceone Receivables Mgmt., Inc., 450 Fed. Appx. 887, 888 (11th Cir. 2012); D.B., 2015 WL 847293, *5; Tempay Inc. v. Biltres Staffing of Tampa Bay, LLC, 2013 WL 6145533,*6 (M.D. Fla. Nov. 21, 2013); Lane, 2013 WL 1881298, *2.  Thus, Austal's request is **DENIED**.

### 4.   Attorney Travel

Austal seeks recovery of **$1,197.27** for Thomas M. O'Hara, Esq.'s travel.  (Doc. 951-9 at 7-11; Doc. 962 at 9-11).  Attorney travel costs are not taxable under 1920.  Mock v. Bell Helicopter Textron, Inc., 456 Fed. Appx. 799, 802 (11th Cir. 2012); Gary Brown & Assocs., Inc.

---

[14] Those plaintiffs who asserted disparate impact claims, voluntarily dismissed them (Doc. 365), which prompted this Court to cancel the scheduled Daubert hearing (at which time the Court *would have* assessed the merits and import of Dr. Steward's report).

v. Ashdon, Inc., 268 Fed. Appx. 837, 845-846 (11th Cir. 2008); D.B., 2015 WL 847293, *5. Thus, Austal's request is **DENIED**.

## III.    Conclusion

Based upon the foregoing, it is **ORDERED** that Austal's motion is **GRANTED in part** and **DENIED in part** as follows: **GRANTED in part** as to the trial subpoenas as specified herein, **GRANTED** as to the certified copies of state court records, **GRANTED in part** as to the deposition transcript costs and printing costs as detailed *supra*; and **DENIED** as to the costs for Pro Hac Vice admission, videotape/video-synching depositions, trial transcripts, email/electronic/digital data, expert witnesses, mediation, attorney travel, and all other deposition transcript and printing costs requested.   Accordingly, Austal is entitled to a retaxed award of costs in the amount of **$32,751.30** (comprised of $28,520.35 for deposition transcripts,[15] $1,212.45 for witness fees,[16] $230.00 for trial subpoenas, $177.50 for certified copies and $2,611.00 for printing costs).

**DONE** and **ORDERED** this the **5th** day of **November 2015.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[15] The additional award of $23,542.10 plus the amount previously taxed by the Clerk.

[16] Previously taxed by the Clerk.